# EXHIBIT 2, Part 1

# LOCKHEED MARTIN CORPORATION
# SALARIED EMPLOYEE RETIREMENT PROGRAM

## MASTER PLAN DOCUMENT FOR

## SALARIED PLAN AND RIP COMPONENTS

**As Amended and Restated Effective**
**January 1, 2008**

EGTRRA RESTATEMENT

LMC 000265

**LOCKHEED MARTIN CORPORATION
SALARIED EMPLOYEE RETIREMENT PROGRAM**

**MASTER PLAN DOCUMENT FOR THE SALARIED PLAN AND RIP
COMPONENTS**

**TABLE OF CONTENTS**

ARTICLE I.................................................................................................1
Definitions

ARTICLE II .........................................................................................13
Effective Date; Classes of Benefits Provided; Entry into the Plan

ARTICLE III.............................................................................................15
Period of Employment; Hour of Service; Vesting Service; Credited Service
Benefit Eligibility Service; Transfers Between Plans and Classes; Persons
Re-Employed After Military Service

ARTICLE IV..........................................................................................24
Direct Retirement from Active Service

ARTICLE V............................................................................................25
Amount of Benefit

ARTICLE VI...........................................................................................30
Automatic and Optional Forms of Payment

ARTICLE VII..........................................................................................41
Pre-Retirement Surviving Spouse Benefit

ARTICLE VIII.........................................................................................43
Vesting; Termination of Employment

ARTICLE IX...........................................................................................50
Payment of Benefits

ARTICLE X............................................................................................56
Administration

ARTICLE XI...........................................................................................62
Plan Financing

LMC 000266

ARTICLE XII...................................................................................64
Non-Alienation of Benefits; Limitations Concerning 25 Highest
Paid Employees

ARTICLE XIII..................................................................................66
Amendment and/or Termination of Plan;
Allocation of Plan Pension Fund

ARTICLE XIV...................................................................................68
Miscellaneous

ARTICLE XV....................................................................................70
Medical Expense Account

ARTICLE XVI...................................................................................73
Retroactive Annuity Starting Dates

ADDENDUM I...................................................................................76

APPENDIX A.....................................................................................87

APPENDIX B.....................................................................................88

APPENDIX C.....................................................................................93

APPENDIX D.....................................................................................94

RIP ANNEX.....................................................................................A-1

SALARIED PLAN ANNEX...................................................................B-1

RIP II ANNEX.................................................................................C-1

LMC 000267

# LOCKHEED MARTIN CORPORATION

## SALARIED EMPLOYEE RETIREMENT PROGRAM

### As Amended and Restated Effective

### January 1, 2008

Effective January 1, 2008, LOCKHEED MARTIN CORPORATION (the "Corporation") amends and restates the Lockheed Martin Corporation Salaried Employee Retirement Program.

Prior to December 31, 2006, the Corporation maintained a number of separate and distinct retirement plans for salaried employees, including the following:

(1) the Lockheed Martin Corporation Retirement Plan for Certain Salaried Employees (the "Salaried Plan");

(2) the Lockheed Martin Corporation Retirement Income Plan ("RIP"); and

(3) the Lockheed Martin Corporation Retirement Income Plan III ("RIP III").

The Salaried Plan, RIP, and RIP III contained numerous terms and features which were common to all three plans, along with some "grandfathered "features unique to the particular plan (largely limited to participants who had service prior to 1997 or, in the case of RIP III, 1999).

Effective December 31, 2006, the Salaried Plan, RIP, and RIP III were merged into and with each other into the Salaried Plan, which was the surviving plan. The surviving plan was renamed the Lockheed Martin Corporation Salaried Employee Retirement Program (referred to herein as the "Merged Plan"). The Merged Plan consists of three parts or components:

(1) the Salaried Plan Component (consisting of the former Salaried Plan);

(2) the RIP Component (consisting of the former RIP, which includes the Lockheed Martin Corporation Retirement Income Plan II, which was merged into RIP effective December 31, 1997) ); and

(3) the RIP III Component (consisting of the former RIP III).

The merger did not change the benefits, rights, features or other substantive terms of the Salaried Plan, RIP, or RIP III, as set forth in the plan document for each plan component. However, the Merged Plan constitutes a single plan with the meaning of Treasury Regulations 1.414(e)-1(b)(1), and is a single plan for purposes of ERISA and the Code.

Effective January 1, 2006 (and prior to the plan merger), the Salaried Plan, RIP, and RIP III were amended so as to close each plan to new entrants. Pursuant to the freeze amendments, a person who was a participant in the Salaried Plan, RIP, or RIP III on December 31, 2005 remained a

LMC 000268

participant in the applicable plan after such date for as long as such participant met the requirements for membership in the plan (generally unbroken employment with a participating unit). Accordingly, Participants in the Merged Plan generally include only persons who were Participants in the Salaried Plan, RIP, or RIP III on or prior to December 31, 2005, and a person hired or rehired on or after January 1, 2006 does not become a Participant in the Merged Plan with respect to the period after January 1, 2006.

The Salaried Plan, RIP, and RIP III were previously amended and restated, effective as of January 1, 2001, to reflect legally required changes, including GATT, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, the Internal Revenue Service Restructuring and Reform Act of 1998, and the Consolidated Appropriations Act of 2001 (cumulatively the "GUST Amendments"). Each of the component plans were subsequently amended from time to time to reflect various other legally required changes, including changes made by the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"). RIP III was again amended and restated, effective January 1, 2005, to add provisions related to a Medical Expense Account. The Corporation now wishes to amend and restate the Merged Plan, generally effective January 1, 2008, so as to reflect all amendments to the Merged Plan or its components since the prior restatement.

Prior to the merger, the formal plan document for the Salaried Plan and RIP consisted of a single base document covering both plans, plus several Annexes covering particular grandfathered groups, and the formal plan document for RIP III consisted of two base documents plus 11 Annexes. For administrative considerations, this basic structure has been continued after the merger. Thus, the formal plan document for the Merged Plan consists of (i) this document (hereafter referred to as the Salaried Plan/RIP Master Plan Document), which describes the provisions for the Salaried Plan Component and the RIP Component of the Merged Plan; (ii) the RIP III Core or Master Document, which describes the provisions for the RIP III components of the Merged Plan, other than the Federal Systems sub-component; (iii) the Federal Systems Core Document, which describes the provisions applicable to the Federal Systems subcomponent of the RIP III Component; and (iv) the following 14 Annexes:

   (a) the Salaried Plan Annex, which describes special provisions applicable to certain Participants who were participants in the in the Salaried Plan prior to July 1, 1997;

   (b) the RIP Annex, which describes special provisions applicable to certain Participants who were participants in RIP prior to July 1, 1997;

   (c) the RIP II Annex, which describes special provisions applicable to certain Participants who were participants in the Lockheed Martin Corporation Retirement Income Plan II ("RIP II") prior to July 1, 1997 (the Retirement Income Plan II was merged into RIP effective December 31, 1997);

   (d) the Aerospace I Annex, which describes special provisions applicable to certain Participants who were participants in the Lockheed Martin Aerospace Plan Component

LMC 000269

(Part I) of RIP III (previously the Retirement Plan of Lockheed Martin Aerospace (Part I) prior to January 1, 1999;

(e) the Aerospace II Annex, which describes special provisions applicable to certain Participants who were participants in the Lockheed Martin Aerospace Plan Component (Part II) of RIP III (previously the Retirement Plan of Lockheed Martin Aerospace (Part II) prior to January 1, 1999;

(f) the Electro-Optical Systems Annex, which describes special provisions applicable to certain Participants who were participants in the Electro-Optical Systems Component of RIP III (previously the Lockheed Martin Electro-Optical Systems Retirement Plan) prior to January 1, 1999;

(g) the Fairchild Annex, which describes special provisions applicable to certain Participants who were participants in the Fairchild Component of RIP III (previously the Lockheed Martin Fairchild Retirement Plan) prior to January 1, 1999;

(h) the IR Imaging Annex, which describes special provisions applicable to certain Participants who were participants in the IR Imaging Component of RIP III (previously the Lockheed Martin IR Imaging Systems Retirement Benefit Plan) prior to January 1, 1999;

(i) the Tactical Defense Systems Annex, which describes special provisions applicable to certain Participants who were participants in the Tactical Defense Systems Component of RIP III (previously the Lockheed Martin Tactical Defense Systems Retirement Plan) prior to January 1, 1999;

(j) the Tactical Systems Annex, which describes special provisions applicable to certain Participants who were participants in the Tactical Systems Component of RIP III (previously the Lockheed Martin Tactical Systems Pension Plan) prior to January 1, 1999;

(k) the Tactical Defense Systems-Akron Annex, , which describes special provisions applicable to certain Participants who were participants in the Tactical Systems Retirement Plan for Salaried Employees-Akron Component of RIP III (previously the Lockheed Martin Tactical Systems Retirement Plan for Salaried Employees-Akron) prior to January 1, 1999;

(l) the Tactical Defense Systems-Arizona Annex, which describes special provisions applicable to certain Participants who were participants in the Tactical Systems Retirement Plan for Salaried Employees-Arizona Component of RIP III (previously the Lockheed Martin Tactical Systems Retirement Plan for Salaried Employees-Arizona) prior to January 1, 1999;

(m) the Vought Annex, which describes special provisions applicable to certain Participants who were participants in the Vought Component of RIP III (previously the Lockheed Martin Vought Systems Retirement Plan) prior to January 1, 1999; and

- iii -

LMC 000270

(n) the Federal Systems Annex, which describes special provisions applicable to certain Participants who were participants in the Federal Systems Component of RIP III (previously the Lockheed Martin Federal Systems Retirement Plan) prior to January 1, 1999.

Annexes (a) through (c) work in conjunction with this document; Annexes (d) through (m) work in conjunction with the RIP III Master Document; and Annex (n) works in conjunction with the Federal Systems Core Document. Unless otherwise indicated, references to Sections are to provisions of the Annex and references to Articles are to provisions in the Plan other than the Annex.

Certain provisions of this document refer to employees who terminated prior to January 1, 2008, and such provisions are included for historical reasons. Except as specifically provided in this document, the provisions of this document are not intended to enlarge the rights of any employee whose employment terminated prior to January 1, 2008. Except as otherwise expressly started herein, the rights of any such employee shall be governed by the applicable provisions of the plan as in effect at the time of his termination.

Nothing in the document shall be construed as providing for participation by any person hired on or after January 1, 2006, or for participation by any person re-hired on or after January 1, 2006 with respect to the period on or after such re-hire.

LMC 000271

# LOCKHEED MARTIN CORPORATION

## SALARIED EMPLOYEE RETIREMENT PROGRAM

## ARTICLE I

### DEFINITIONS

The following words and phrases shall have the following meanings when used with an initial capital letter, unless the context clearly indicates otherwise:

(1)     **ACCRUED BENEFIT:**

The retirement benefit that a Participant will be entitled to receive if such Participant begins receiving benefits at age 65 or at the Participant's current age if such Participant's age is greater than 65.

(2)     **BENEFICIARY:**

     (a)     The person or persons designated by a Participant, subject to the Participant's Spouse's Consent if the Participant is married, to receive any death benefit payable pursuant to the Plan.  If any Beneficiary shall predecease the Participant, any payments which such Beneficiary would have received will be payable to any remaining Beneficiaries who survive the Participant in equal shares, unless a Participant has otherwise provided by written notice to the Plan Administrator. Any designation or change in designation of a Beneficiary shall be effective only upon receipt by the Plan Administrator of such form and only if mailed or otherwise sent on a day preceding the date of the Participant's death, as determined by the date of a United States postmark in the case of a mailing, or in other cases, under rules established by the Plan Administrator.

     (b)     If no Beneficiary shall have been designated or if no designated Beneficiary shall have survived the Participant, then the Beneficiary shall be (a) the Participant's Spouse or (b) if there is no Spouse surviving the Participant, the Participant's estate.

(3)     **BENEFIT COMMENCEMENT DATE:**

The effective date on which the payment of a Participant's retirement benefit commences in accordance with the terms of the Plan, or in the case of a lump sum payment, the date the retirement benefit is paid to the Participant.

(4)     **BOARD OF DIRECTORS:**

The Board of Directors of the Corporation or its duly authorized delegate.

- 1 -

LMC 000272

(5)   **CODE**:

The Internal Revenue Code of 1986, as amended from time to time.

(6)   **CONTINGENT ANNUITANT**:

The person designated to receive the survivor annuity under Article VI(2).

(7)   **CONTROL GROUP**:

A group of entities that includes any of the Employing Companies and, as a group, is treated as a single employer under Code Sections 414(b), 414(c), 414(m), or 414(o).

(8)   **CORPORATION**:

Lockheed Martin Corporation, a Maryland corporation and sponsor of the Plan, or any successor thereto by consolidation, merger, transfer of assets or otherwise.

(9)   **EMPLOYEE**:

A regular employee or officer of an Employing Company or, for the RIP Component, such a person who is eligible to receive long-term disability benefits from the Employing Company's long-term disability group insurance plan (but only if such employee's absence due to disability began prior to July 1, 1997), or, for the Salaried Plan Component, any person who was laid off by the Employing Company prior to July 1, 1997 as long as such person is subject to recall as of June 30, 1997. The term Employee shall include any person who (i) was receiving long term disability benefits under a plan for former General Dynamics Space Systems employees, (ii) was not actively employed by an Employing Company on May 2, 1994, and (iii) returns to employment after June 30, 1997 with an Employing Company within 30 days following the last day such Participant was disabled.

Notwithstanding any provision of the Plan to the contrary, the term Employee shall exclude for any purpose of the Plan any individual except to the extent that such individual is designated on the Employing Company's records (or on the records of the Corporation on behalf of the Employing Company) contemporaneously as an employee for all purposes, including, without limitation, all purposes under Subtitle C of the Code. Thus, for example, an individual who for a Plan Year is not designated on the Employing Company's records (or on the records of the Corporation on behalf of the Employing Company contemporaneously as an employee for all purposes under Subtitle C of the Code shall not be an Employee for any part of such Plan Year by reason of the fact that at a later time the individual is retroactively treated as an employee of an Employing Company for such Plan Year for purposes of Subtitle C of the Code. As another example, an individual shall not be an Employee if such individual (i) is designated on the Employing Company's records (or on the records of the Corporation on behalf of the Employing Company) contemporaneously as an independent contractor or a leased employee (within the meaning of Code Section 414(n)), or (ii) is not contemporaneously designated as on the regular payroll of an Employing Company. The preceding three sentences of this Article I(9) shall apply to an individual without regard to whether an Employing Company provides remuneration to

LMC 000273

such individual and without regard to the manner in which an Employing Company calculates or provides any such remuneration.

The term Employee shall also exclude:

(a)     any employee who is not a citizen or resident of the United States and whose duties are primarily performed outside of the United States,

(b)     any resident of Puerto Rico,

(c)     any member of a unit of employees covered by a collective bargaining agreement identified in Appendix A hereto, unless such collective bargaining agreement provides for bargaining unit members to participate in the Plan and the terms of such collective bargaining agreement clearly and unmistakably waive the union's right to bargain over the terms and conditions of the Plan.

To the extent required by Code Section 414(n), a "leased employee" shall be treated as an Employee but shall not be eligible to participate in the Plan or otherwise be considered an Employee under the Plan. For the purposes of the preceding sentence, effective January 1, 1997, "leased employee" means any person (other than an employee of a recipient) who pursuant to an agreement between the recipient and any other person ("leasing organization") has provided services for the recipient (or for the recipient and related persons determined in accordance with section 414(n)(6) of the Code) on a substantially full time basis for a period of at least 1 year, and such services are performed under primary direction and control by the recipient. To the extent required by Code Section 414(o), individuals who are not otherwise Employees shall be treated as Employees but shall not be eligible to participate in the Plan or otherwise be considered an Employee under the Plan.

Notwithstanding any other provision of the Plan, no person who is hired by an Employing Company on or after January 1, 2006 shall be considered an Employee eligible to participate in the Plan.

(10)    **EMPLOYING COMPANY**:

A department, division, or other unit of the Corporation or subsidiary or affiliated company listed in Appendix B hereto (as applicable to a specific component of the Salaried Plan, RIP, or RIP II). Each Employing Company shall have been designated by the Board of Directors as an Employing Company. As used herein, the term "Employing Company" may be construed to mean all participating Employing Companies collectively or participating Employing Companies separately, as the case may be.

(11)    **EQUIVALENT ACTUARIAL VALUE**:

Having the same value, when comparing a benefit differing in time, period or manner as determined conclusively by, or under the direction of, the Plan Administrator subject to the following rules:

- 3 -

LMC 000274

(a)     General Rule:  Except as provided in subsection (b) below, Equivalent Actuarial Value shall be based on the mortality assumptions set forth in the Lockheed Martin Unisex Mortality Table and on an interest assumption of 8 percent per annum and determined with respect to the Participant's age in years and complete months as of the determination date.  The Lockheed Martin Unisex Mortality Table is based on an 85 percent male, 15 percent female blend of rates from the 1951 Group Annuity Mortality Table for males, projected to 1960 (by Scale C), and set back one year for males and six years for females.

(b)     Specific Forms of Benefit:  For the purposes described below, Equivalent Actuarial Value shall be determined as follows (where (i) in the case of a Benefit Commencement Date after December 31, 1999, $x$ is the Participant's age in years and complete months as of the Benefit Commencement Date and $y$ is the Participant's Contingent Annuitant's age in years and complete months as of the Benefit Commencement Date, and (ii) in the case of a Benefit Commencement Date prior to January 1, 2000 (or as a minimum joint and survivor benefit which must be protected with respect to a participant's accrued benefit as of December 31, 1999, in the case of a Benefit Commencement Date after December 31, 1999), $x$ is the Participant's age in complete years as of the Participant's birthday nearest the Benefit Commencement Date for purposes of the joint and survivor annuity and in years and complete months as of the Benefit Commencement Date for all other purposes, and $y$ is the Participant's contingent Annuitant's age in complete years as of the Contingent Annuitant's birthday nearest the Benefit Commencement Date):

**Five-Year Guaranteed Period Option**: For purposes of determining a monthly amount payable as a five-year guaranteed period option, the Equivalent Actuarial Value shall be determined by multiplying the monthly benefit payable as a lifetime of the Participant only annuity by the following factor (but in no event shall the factor exceed 0.995):

If the Participant's age at Benefit Commencement Date is less than or equal to 65:
$$.985 + .001(65 - x)$$

If the Participant's age at Benefit Commencement Date is greater than 65:
$$.985 - .002(x - 65),$$

**Ten-Year Guaranteed Period Option**: For purposes of determining a monthly amount payable as a ten-year guaranteed period option, the Equivalent Actuarial Value shall be determined by multiplying the monthly benefit payable as a lifetime of the Participant only annuity by the following factor (but in no event shall the factor exceed 0.98):

If the Participant's age at Benefit Commencement Date is less than or equal to 65:
$$.93 + .005(65 - x)$$

If the Participant's age at Benefit Commencement Date is greater than 65:
$$.93 - .01(x - 65),$$

- 4 -

LMC 000275

**Joint and 50 Percent Survivor Benefit**:  For purposes of determining the monthly amount of a joint and 50 percent survivor benefit, the Equivalent Actuarial Value shall be determined by multiplying the monthly benefit payable as a lifetime of the Participant only annuity by the following factor (but not greater than 1.0):

$$.9180 + .0045(60 - x) - .003(x - y)$$

**Joint and 75 Percent Survivor Benefit**:  For purposes of determining the monthly amount of a joint and 75 percent survivor benefit, the Equivalent Actuarial Value shall be determined by multiplying the monthly benefit payable as a lifetime of the Participant only annuity by the following factor (but not greater than 1.0):

$$.877 + .006(60 - x) - .0036(x - y)$$

**Joint and 100 Percent Survivor Benefit**:  For purposes of determining the monthly amount of a joint and 100 percent survivor benefit, the Equivalent Actuarial Value shall be determined by multiplying the monthly benefit payable as a lifetime of the Participant only annuity by the following factor (but not greater than 1.0):

$$.847 + .007(60 - x) - .0049(x - y)$$

**Social Security Level Income to Age 62**:  For purposes of determining the monthly amount of a Social Security level income to age 62, the Equivalent Actuarial Value of the benefits prior to age 62 shall be determined by multiplying the Participant's estimated Social Security Benefits (assuming prior earnings at the maximum Social Security wage base) by the following factor:

$$1 - ((.073 + (.004(x - 55))) (62 - x))$$

and then adding the resulting product to the monthly benefit payable as a lifetime of the Participant only annuity.  The amount payable to the Participant after age 62 shall be determined by subtracting the estimated Social Security Benefits (assuming prior earnings at the maximum Social Security wage base) from the amount payable to the Participant before age 62.  If the amount payable to the Participant before age 62 determined above is less than the estimated Social Security Benefits (assuming prior earnings at the maximum Social Security wage base), then no amount is payable after age 62 and the amount payable to the Participant before age 62 is determined by multiplying the monthly benefit payable as a lifetime of the Participant only annuity by the following factor:

$$1 / (1 - Z), \text{ where } Z =$$
$$1 - ((.073 + (.004(x - 55)))(62-x))$$

**Social Security Level Income to Age 65**:  For purposes of determining the monthly amount of a Social Security level income to age 65, the Equivalent Actuarial Value of the benefits prior to age 65 shall be determined by multiplying the Participant's estimated Social Security Benefits (assuming prior earnings at the maximum Social Security wage base) by the following factor:

LMC 000276

$$1 - ((.065 + (.004(x - 55)))(65 - x))$$

and then adding the resulting product to the monthly benefit payable as a lifetime of the Participant only annuity. The amount payable to the Participant after age 65 shall be determined by subtracting the estimated Social Security Benefits (assuming prior earnings at the maximum Social Security wage base) from the amount payable to the Participant before age 65. If the amount payable to the Participant before age 65 determined above is less than the estimated Social Security Benefits (assuming prior earnings at the maximum Social Security wage base), then no amount is payable after age 65 and the amount payable to the Participant before age 65 is determined by multiplying the monthly benefit payable as a lifetime of the Participant only annuity by the following factor:

$$1 / (1 - Z), \text{ where } Z =$$
$$1 - ((.065 + (.004(x - 55)))(65-x))$$

(12)   **ERISA**:

Public Law No. 93-406, the Employee Retirement Income Security Act of 1974, and the regulations promulgated thereunder, as the same may be amended from time to time.

(13)   **FINAL AVERAGE PENSIONABLE EARNINGS**:

The average of the highest three years' Pensionable Earnings amounts selected from the most recent ten years of the Employee's Period of Employment (as defined in Article III(1)). For purposes of this paragraph, the term "years" shall exclude any period during which such Employee received benefits under the Lockheed Martin Group Long Term Disability Plan or a similar plan maintained by an Employing Company and shall exclude pay while employed as a member of a collective bargaining unit, unless the bargaining unit has adopted this Plan. In the case of an Employee whose Period of Employment shall not include three years, or in the case where Pensionable Earnings of a Participant for a year are not available or there is an insufficiency of information to properly determine the Final Average Pensionable Earnings, then the Final Average Pensionable Earnings for such Participant shall be as determined in a non-discriminatory manner by the Plan Administrator based upon such information as is available.

For purposes of determining Final Average Pensionable Earnings of a "COMSAT Transferee," Period of Employment will include service with COMSAT Corporation and Pensionable Earnings will include Pensionable Earnings (using the definition in this Plan) while an employee of COMSAT Corporation. "COMSAT Transferee" means a Participant who became a Participant in this Plan as a result of a transfer from COMSAT Corporation to a Participating Business Unit (other than LMGT).

(14)   **INVESTMENT MANAGER**:

An "investment manager" as defined in ERISA Section 3(38).

- 6 -

LMC 000277

(15)   **MEMBER**:

A Participant who is also an Employee at the relevant point  in time.

(16)   **PARTICIPANT**:

An Employee, retired Employee, or former Employee, who has met all the participation requirements of the Plan, and has become included in the Plan as provided in Article II, and who continues to have rights or contingent rights to benefits under the Plan, or whose surviving Spouse, Contingent Annuitant or Beneficiary may be eligible to receive such benefits, and any other person actually receiving benefits under the Plan.

(17)   **PENSION FUND**:

The fund established pursuant to Article XI(2) in order to provide for the payment of the benefits specified in the Plan.

(18)   **PENSIONABLE EARNINGS**:

Subject to the limits on compensation in Code Section 401(a)(17), Pensionable Earnings means the annual base rate of pay determined as of the Rate Determination Date each year, plus the following amounts:

(a)   Amounts awarded by the Board of Directors under the Lockheed Martin Corporation Management Incentive Compensation Plan which are included as of the Rate Determination Date immediately preceding the award;

(b)   Lump-sum merit payments in lieu of a base salary increase and payments under the Special Recognition Awards (SRA) Program, each of which are included on the Rate Determination Date in the calendar year in which paid; and

(c)   Payments under the Integrated Business Solutions Sales Incentive Plan, the PRICE Systems Sales Incentive Plan, the Real 3-D Sales Commission Plan, and the Management and Data Systems Information Systems and Technologies Sales Commission Plan, and Owego sales commissions paid under the Sustaining Base Information Systems and General Savings Administration Plan.  Each of which are included on the Rate Determination Date in the calendar year in which paid.

Each Section 401(a)(17) Employee's Accrued Benefit under the Plan shall be determined in accordance with the "extended wear away method" described in Option 3 of Part II of the Appendix to Revenue Procedure 94-13, 1994-1 C.B. 566.  The term "Section 401(a)(17) Employee" means an Employee whose current Accrued Benefit as of a date on or after the first day of the first Plan Year beginning on or after January 1, 1994, is based on compensation for a year beginning prior to the first day of the first Plan Year beginning on or after January 1, 1994, that exceeded $150,000.  Notwithstanding the foregoing, the Accrued Benefit of each Section

- 7 -

LMC 000278

401(a)(17) Employee in the Salaried Plan shall be determined in accordance with the terms of Section 1.26(D)(2) of the Plan in effect on June 30, 1997.

Notwithstanding the above, Pensionable Earnings for any year prior to 1997 shall be equal to Transition Pensionable Earnings, as defined in Section 1(i) of the Annex, except that for 1996 for the RIP Component, Pensionable Earnings shall be the greater of Pensionable Earnings as described in the preceding paragraphs or Transition Pensionable Earnings, as defined in the Annex.

1.  Increase in limit. The annual compensation of each Participant taken into account in determining Pensionable Earnings or Transition Pensionable Earnings or otherwise taken into account in determining benefit accruals in any Plan Year beginning after December 31, 2001 shall not exceed $200,000. For this purpose, annual compensation means compensation during the Plan Year or such other consecutive 12-month period over which compensation is otherwise determined under the Plan (the determination period). In determining benefit accruals in Plan Years beginning on or after December 31, 2001, the annual compensation limit set forth in this paragraph 1, for determination periods beginning before January 1, 2002, shall be $200,000. Notwithstanding the foregoing, nothing herein shall operate to increase the benefits payable under the Plan of a Participant who commenced receiving Plan benefits prior to January 1, 2002.

2.  Cost of living adjustment. The $200,000 limit on annual compensation in paragraph 1 above shall be adjusted for cost-of-living adjustments accordance with Code Section 401(a)(17)(B). The cost-of-living adjustment in effect for a calendar year applies to annual compensation for the determination period that begins with or within such calendar year.

(19)  **PLAN:**

In addition to this document, each of the following components, each of which is described and defined by this document and the applicable Annex:

(a)  The Lockheed Martin Corporation Retirement Plan for Certain Salaried Employees ("Salaried Plan Component"); and

(b)  Lockheed Martin Retirement Income Plan ("RIP") (including the Lockheed Martin Retirement Income Plan II, which was merged into RIP effective January 1, 1997) ("RIP Component").

Individually, each of the above components may be referred to as the Plan or by name unless the context requires otherwise. Effective December 31, 2006, the Lockheed Martin Corporation Retirement Plan for Certain Salaried Employees (the "Salaried Plan"), the Lockheed Martin Corporation Retirement Income Plan ("RIP"), and the Lockheed Martin Corporation Retirement Income Plan III ("RIP III") were merged into a single plan (the "Merged Plan"). Unless the context requires otherwise, with respect to periods after December 31, 2006, references to, the Salaried Plan, RIP, or RIP III will mean the respective component (or, in the case of RIP III, the applicable subcomponent) of the Merged Plan. This document describes and defines the Salaried Plan Component and the RIP Component of the Merged Plan (including the

- 8 -

LMC 000279

applicable Annexes). The RIP III Component and its Federal Systems subcomponent are described and defined by two separate documents (including their Annexes).

(20) **PLAN ADMINISTRATOR**:

The Corporation, any other person or entity designated by the Board of Directors to serve as the Plan Administrator, or any agent of such Benefit Plan Committee, person, or entity appointed under Article X(7).

(21) **PLAN YEAR**:

The 12-month period beginning each January 1 and ending on the next following December 31.

(22) **RATE DETERMINATION DATE**:

The first day of a Participant's employment (or re-employment if not an Employee on the December 25 immediately preceding such re-employment) with an Employing Company and every December 25 thereafter.

(23) **SOCIAL SECURITY BENEFITS**:

Any benefits, except disability, medical and death benefits, payable under the Federal Social Security Act, as it may from time to time be amended.

(24) **SOCIAL SECURITY COVERED COMPENSATION**:

A Participant's Social Security Covered Compensation for a Plan Year is the average (without indexing) of the Social Security taxable wage bases in effect for each calendar year during the 35-year period ending with the last day of the calendar year in which the Participant attains (or will attain) Social Security Retirement Age. For purposes of this definition, the term "taxable wage base" is the contribution and benefit base in effect under Section 230 of the Social Security Act at the beginning of the year. In determining a Participant's Social Security Covered Compensation for a Plan Year, the taxable wage base in effect for the current Plan Year and any subsequent Plan Year will be assumed to be the same as the taxable wage base in effect as of the beginning of the Plan Year for which the determination is being made. A Participant's Social Security Covered Compensation for a Plan Year before the 35-year period ending with the last day of the calendar year in which the Participant attains Social Security Retirement Age is the Social Security taxable wage base in effect at the beginning of such Plan Year.

(25) **SOCIAL SECURITY RETIREMENT AGE**:

Age 65 for Employees born before 1938, age 66 for Employees born after 1937 and before 1955, and age 67 for Employees born after 1954.

(26) **SPOUSE**:

The lawful wife of a male Participant, or the lawful husband of a female Participant on a Participant's Benefit Commencement Date or on the date of the Participant's death, if earlier,

- 9 -

LMC 000280

except that (a) for purposes of all Plan provisions related to pre-retirement survivor benefits, an individual shall only be a Spouse if such individual was the lawful female wife of a male Participant or the lawful male husband of a female Participant throughout the one-year period ending on the date of the Participant's death, and (b) for purposes of all Plan provisions related to Qualified Joint and Survivor Annuities, an individual shall only be a Spouse if such individual was the lawful female wife of a male Participant or the lawful male husband of a female Participant as of the Benefit Commencement Date. If the Spouse and the Participant have not been married to each other for one-year on the Benefit Commencement Date and do not remain married for one-year, the Participant will be treated as not being married on the Benefit Commencement Date and the Spouse shall lose the right to the survivor benefits provided under Article VI(1). A former spouse will be treated as the Spouse and a current spouse will not be treated as the Spouse to the extent provided under a qualified domestic relations order (within the meaning of Code Section 414(p)). If pursuant to the preceding sentence, more than one individual is treated as a Spouse of a Participant, the total amount to be paid in the form of a pre-retirement survivor annuity, in the form of a survivor portion of a Qualified Joint and Survivor Annuity, or in any other form shall not exceed the amount that would be paid if there were only one Spouse, determined in accordance with Code Sections 401(a)(13) and 414(p).

(27)    **SPOUSE'S CONSENT**:

A Spouse's consent to the Participant's election to waive any Spouse's benefit provided under the Plan and/or the Participant's designation of a Beneficiary other than the Spouse that meets the requirements of this paragraph. Such consent will be valid only if (i) it is in writing, (ii) it acknowledges the effect of the election or designation, (iii) it is delivered to the Plan Administrator, and (iv) the Spouse's signature is witnessed by a Plan representative or a notary public and is acknowledged in writing by such witness on a form prescribed herefore by the Plan Administrator. Notwithstanding this consent requirement, if the Participant establishes to the satisfaction of the Plan Administrator that such written consent cannot be obtained because:

(a)     there is no Spouse;

(b)     the Spouse cannot be located;

(c)     of other circumstances that may be prescribed by Treasury Regulations, the Participant's election to waive Qualified Joint and Survivor Annuity coverage or Beneficiary designation will be considered valid. Any consent under this provision will be valid only with respect to the Spouse who signs the consent and only with respect to the Beneficiary designated in that consent. A Spouse's Consent may not be revoked. If the existence of a Spouse is uncertain or if the validity of Spouse's Consent is unclear, the Plan Administrator shall withhold payment of death benefits until such determination is made. The Plan Administrator in its sole and absolute discretion may refuse to recognize a Spouse's Consent if it believes for any reason that the consent is invalid.

- 10 -

LMC 000281

**(28)   TERMINATION OF EMPLOYMENT (OR TERMINATE EMPLOYMENT)**:

With respect to any Employee, the first to occur of the following events:

(a)      Death;

(b)      Resignation from the Employing Company and all members of the Control Group by the Employee at his own initiative;

(c)      Involuntary termination, at the initiative of the Employing Company or any member of the Control Group, occurring either while actively employed or while on leave of absence (active or inactive status), except that, for purposes of the Salaried Plan, an Employee who was laid off by the Employing Company prior to July 1, 1997 and is subject to protected recall rights shall not be considered to have a Termination of Employment until the expiration of the period of such protection; or

(d)      Becoming eligible to receive long-term disability benefits from an Employing Company's long-term disability group insurance plan, unless, for the RIP Component ,the disability from which such eligibility for long-term disability benefits arises began prior to July 1, 1997, in which case, for purposes of the Plan, Termination of Employment shall occur in the event of not returning to active employment with an Employing Company, at the expiration of the period of time for which an Employee received or was eligible to receive long-term disability benefits from the Employing Company's long-term disability group insurance plan.

**(29)   VALUE:**

The present value of a Participant's benefit based on the mortality and interest assumptions and methods in effect under 29 C.F.R. § 4044.52(b) at the beginning of the Plan Year in which the Value is determined for benefit distribution dates which occur prior to January 1, 2000.  For benefit distribution dates occurring on or after January 1, 2000, however, the present value of a Participant's benefit shall be based upon the Applicable Interest Rate prescribed under section 417(e)(3)(A)(ii)(II) of the Code and the Applicable Mortality Table prescribed by section 417(e)(3)(A)(ii)(I) of the Code (or, for benefit distribution dates occurring on or before December 31, 2002, the Applicable Mortality table as defined in Revenue Ruling 95-6).  Unless otherwise required under section 417(e)(e)(A)(ii)(II) of the Code, the interest rate shall be equal to the annual rate of interest on 30-year Treasury securities in effect for the calendar month preceding the beginning of the Plan Year.

In the event that, prior to January 1, 2000, the Pension Benefit Guaranty Corporation (PBGC) ceases to publish, in Table II of Appendix B to part 4044 of the PBGC's regulations (such Table II to include any successor Table thereto containing interest rates so published by the PBGC which are used to calculate lump sums on plan termination and which are determined by applying the same methodology used by the PBGC to calculate such interest rates under such Table II), interest rates for the purpose of computing the Value of benefits to be paid as a lump sum, the PBGC interest rates that are used in the Plan shall automatically cease to be used in any benefit calculation to be made as of any distribution date occurring after the cessation under the Plan (including any prior plan which has been merged into the Plan as identified in the

- 11 -

LMC 000282

Addendum attached hereto).  Upon such cessation, the Applicable Interest Rate shall be used in place of any such PBGC-derived interest rate and the Applicable Mortality Table shall be used in place of the mortality assumptions applied in conjunction with any such PBGC-derived rate.

LMC 000283

## ARTICLE II

## EFFECTIVE DATE; CLASSES OF BENEFITS PROVIDED; ENTRY INTO THE PLAN

(1) **EFFECTIVE DATE**:

This amendment and restatement of the Plan becomes effective as of January 1, 2008, except as otherwise provided herein, or such other later date as may be determined by the Board of Directors with respect to an Employing Company subsequently added to the Plan.

(2) **CLASSES OF BENEFITS PROVIDED**:

(a) The Plan provides for payment of a retirement benefit to each Participant who retires directly from active service in accordance with the provisions of Article IV.

(b) The Plan further provides for the payment of surviving Spouse benefits and death benefits on death before retirement, as provided in Articles VI and VII.

(c) The Plan further provides for the payment of benefits to certain classes of terminated Participants as provided in Article VIII, alternate payees under qualified domestic relations orders under Article XII(1), and survivors under Article VII.

(d) The Plan further provides for the payment of an alternative benefit for certain Participants in accordance with the Annex.

(3) **ENTRY INTO THE PLAN**:

(a) Each Employee who (i) was a Participant in the Plan as of January 1, 2008, (ii) had not Terminated Employment as of January 1, 2008, and (iii) continued in employment with an Employing Company thereafter is automatically included in the Plan as of January 1, 2008.

(b) Notwithstanding any other provision of the Plan (including any Annex thereto), including any provision relating to the re-hire of former employees, with respect to the Plan (i) no person who is first employed by an Employing Company on or after January 1, 2006 shall become a Participant in the Plan, and (ii) except as set forth in Article III(6)(c) (relating to certain transferred Employees who actively participate in a defined benefit plan immediately prior to the transfer), no person who is re-employed by an Employing Company on or after January 1, 2006 shall become an active Participant or earn Credited Service under the Plan with respect to any period commencing with such reemployment.

- 13 -

LMC 000284

(c)     No person shall be eligible to participate in the Plan if he is accruing a benefit based on current service under another defined benefit plan sponsored by the Corporation or any member of the Control Group.

LMC 000285

## ARTICLE III

## PERIOD OF EMPLOYMENT; HOUR OF SERVICE; VESTING SERVICE; CREDITED SERVICE; BENEFIT ELIGIBILITY SERVICE; TRANSFERS BETWEEN PLANS AND CLASSES; PERSONS RE-EMPLOYED AFTER MILITARY SERVICE

(1)   **PERIOD OF EMPLOYMENT:**

Subject to the remaining provisions of this Article III, the Period of Employment shall be:

(a)   The Participant's service with an Employing Company which has not previously terminated; plus

(b)   If any, the Participant's service with an Employing Company, other than that described in (a) above, which had terminated, provided that the Participant had completed 1000 Hours of Service after the re-employment following such termination, and provided further that either:

(i)   the Participant had attained vesting when such prior service terminated, or

(ii)   the number of consecutive one year Breaks In Service (as Break In Service is defined in Article III(3)(c)) occurring between the termination of such prior service and subsequent re-employment does not equal or exceed the greater of five years or the aggregate number of years of Vesting Service completed prior to termination of service.

Service as an employee of a predecessor, subsidiary or affiliate of an Employing Company, including successive service with one or more such companies, individuals, partnerships or corporations, of which all or a part of the assets have been acquired by the Corporation or by an Employing Company, which service has been continuous to the service described in (a) and (b) above shall be included with the service described in (a) and (b) above but only to the extent authorized by the Board of Directors in a resolution explicitly addressing service crediting. If service prior to re-employment is not aggregated with the service subsequent to re-employment, service subsequent to re-employment will constitute a new and separate Period of Employment.

Where the Corporation's records of an Employee's service are not reasonably available, the burden of establishing eligibility to aggregate service and of providing contemporaneous records satisfactory to the Plan Administrator shall be on the Employee.

For purposes of Benefit Eligibility Service and Vesting Service only, the Period of Employment for any person who (i) was receiving long term disability benefits under a plan for former General Dynamics Space Systems employees, (ii) was not actively employed by an Employing

- 15 -

LMC 000286

Company on May 2, 1994, and (iii) returns to employment with an Employing Company within 30 days following the last day such Participant was disabled shall include all service for General Dynamics Space Systems, subject to (a) and (b) above.

Notwithstanding the foregoing, solely for purposes of determining a Participant's Final Average Pensionable Earnings, a Participant's Period of Employment shall not include any period for which such Participant was employed in a position covered by a defined benefit pension plan sponsored by any member of the Control Group if such pension plan's participants are predominately members of one or more collective bargaining units.

(2)   **HOUR OF SERVICE:**

Hours of Service shall be credited to a Participant for:

(a)   Each hour for which the Participant is either directly or indirectly paid by the Employing Company or entitled to payment:

   (i)   for duties performed during the applicable computation period, and

   (ii)   for reasons other than the performance of duties (such as but not limited to paid sick leave, paid vacation time, salary continuation), irrespective of whether the employment relationship has terminated, and

(b)   Any additional hours as if the Participant had worked on a non-overtime basis during the following periods:

   (i)   unpaid leave of absence, active status, as authorized by the Employing Company pursuant to its established leave policy or as required by federal law, and

   (ii)   for participants in the RIP Component , while receiving long-term disability benefits from an Employing Company's long-term disability group insurance plan, but only to the extent the absence due to disability began prior to July 1, 1997, and has been uninterrupted since June 30, 1997, and

(c)   Each hour for which back pay is either awarded or agreed to by the Employing Company, irrespective of mitigation of damages.

Hours of Service shall be awarded to the Participant for the computation period(s) (i) in which the duties are performed or payments are due, (ii) in which payments would have been due during a covered unpaid leave of absence, or (iii) to which the back pay award or agreement pertains. The same Hours of Service shall not be awarded under more than one part of this definition.

A person designated as a full-time Employee in the Employing Company's payroll records will be awarded with 190 Hours of Service (plus any overtime hours, as indicated on the payroll records of the Corporation or Employing Company) for each month during which such

- 16 -

LMC 000287

Employee performs a single Hour of Service or for which Hours of Service are awarded under paragraph (b).  A person designated as a part-time Employee in the Employing Company's payroll records will be awarded with actual hours worked or for which hours are otherwise creditable in accordance with the rules of Subsections (a), (b), or (c) of this Article III(2).  The awarding of Hours of Service will be determined in the manner permitted under 29 C.F.R. § 2530.200b-2(b) and (c), including any permitted limitations.

Hours of Service shall not be awarded for any purpose under the Plan for severance or vacation pay with respect to any Termination of Employment.

(3)   **VESTING SERVICE**:

   (a)   Vesting Service is that portion of a Participant's service within his Period of Employment which is counted for the purpose of determining the nonforfeitability of a Participant's benefit.

   (b)   A Vesting Computation Period shall be a calendar year.

   (c)   A one year Break in Service for vesting purposes shall be incurred if the Participant completes less than 190 Hours of Service during a Vesting Computation Period.

   Solely for purposes of determining whether a one year Break-in-Service has occurred in a Vesting Computation Period, a Participant who is absent from work for maternity or paternity reasons shall receive credit for up to 190 Hours of Service which would otherwise have been credited to such Participant but for such absence.  For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (i) by reason of the pregnancy of the Participant, (ii) by reason of a birth of a child of the Participant, (iii) by reason of the placement of a child with the Participant in connection with the adoption of such child by such Participant, or (iv) for purposes of caring for such child for a period beginning immediately following such birth or placement.  The Hours of Service credited under this paragraph shall be credited (a) in the Vesting Computation Period in which the absence begins if the crediting is necessary to prevent a Break-in-Service in that period, or (b) in all other cases, in the following Vesting Computation Period.

   (d)   Years of Vesting Service.  A Year of Vesting Service shall be a Vesting Computation Period during which the Participant has completed at least 1000 Hours of Service.  Fractional Years of Vesting Service will be credited for an Employee with 190 or more Hours of Service but less than 1000 Hours of Service in a Vesting Computation Period.  The numerator of such fraction shall be the number of Hours of Service actually earned during the Vesting Computation Period and the denominator shall be 1000.

LMC 000288

A Participant's total Vesting Service shall be the amount of the Vesting Service in the Plan as of June 30, 1997, plus the amount of Vesting Service earned after June 30, 1997 under the Plan

(i)     Notwithstanding the previous paragraph, the following rules shall apply to determine a Salaried Plan Participant's Vesting Service: For the period prior to July 1, 1997, Vesting Service shall be the greater of Continuous Service or Years of Service, as such terms were defined in the Salaried Plan on June 30, 1997.

(ii)     For the period after June 30, 1997, Vesting Service shall be Vesting Service as otherwise defined in the Plan.

(iii)     For 1997, a Participant shall not be permitted to earn more than one year of Vesting Service under clauses (i) and (ii) above.

(iv)     After applying the rules in clauses (i), (ii), and (iii) above, a Salaried Plan Participant who was a Member of the Salaried Plan on December 25, 1996 and on July 1, 1997 shall be entitled to an additional 0.24 year of Vesting Service.

(e)     For purposes of determining Vesting Service, a Participant's Period of Employment shall include service for any organization that is not an Employing Company during the period of time during which it and an Employing Company were required to be aggregated by Code Section 414(b), (c), (m) or (o), provided such service would have been Hours of Service under Article III(2) if such organization had been an Employing Company at the time such service was performed.

## (4)   CREDITED SERVICE:

(a)     Subject to the remaining provisions of this subsection 4 of Article III, the Credited Service of a Participant to be used in determining the amount of any benefit hereunder shall be the number of full years and fractional years of his Period of Employment, but excluding (i) any service for which a Participant was eligible to receive an allocation of contributions or accrue a benefit under any other defined benefit plan or profit sharing plan of the Corporation (or any subsidiary or affiliated companies or a predecessor thereof) qualified under the Code (other than the Lockheed Martin Corporation Salaried Savings Plan), and (ii) any service for which the Corporation or any of its subsidiaries or affiliated companies or a predecessor thereof, had made contributions to a multi-employer pension plan on behalf of a Participant.

(b)     Service Under a Prior Plan. In no event shall an Employee who shall become a Participant under the Plan and who shall have been eligible for coverage under any other retirement plan maintained by the Corporation or an Employing Company or by any subsidiary, predecessor or affiliate of the Corporation, have

LMC 000289

service prior to the date he becomes covered under the Plan, unless specifically provided by the Board of Directors.

(c)     Years of Credited Service.  A Participant's total Credited Service shall be the amount of Credited Service in the Plan as of June 30, 1997, plus the amount of Credited Service earned after June 30, 1997 under the Plan, provided, however, that a Participant shall not earn more than one year of Credited Service for any Plan Year.  Notwithstanding the previous sentence, for purposes of the Salaried Plan, each person who was a Member on both December 25, 1996 and July 1, 1997 shall be credited with an additional 0.12 year of Credited Service, as of July 1, 1997. Subject to the provisions of subparagraph (a) above, a Year of Credited Service shall be credited for purposes of benefit accrual upon completion of at least 2080 Hours of Service within a calendar year.

If, during a calendar year, a Participant is credited with less than a full Year of Credited Service, such Participant shall be credited with a partial Year of Credited Service.  Such partial Year of Credited Service shall be equal to a ratio, the numerator of which is the Participant's Hours of Service for such accrual period and the denominator of which is equal to 2080.

Notwithstanding any other provision of the Plan, including any provision relating to the re-hire of former employees, (i) no person who is first employed by an Employing Company on or after January 1, 2006 shall become a Participant in the Plan, and (ii) except as set forth in Article III(6)(c) (relating to certain transferred Employees who actively participate in a defined benefit plan immediately prior to the transfer), no person who is re-employed by an Employing Company on or after January 1, 2006 shall become an active Participant or earn Credited Service under the Plan with respect to any period commencing with such reemployment.

(5)     **BENEFIT ELIGIBILITY SERVICE**:

A Participant's total Benefit Eligibility Service shall be the amount of the type of service, as described below, as of June 30, 1997, plus the amount of Credited Service earned after June 30, 1997 under the Plan, plus any service under any retirement plan sponsored by a member of the Control Group, plus any service after June 30, 1997 not otherwise counted as Credited Service because such service was for a member of the Control Group that is not an Employing Company, provided, however, that a Participant shall not be entitled to earn more than one year of Benefit Eligibility Service for any Plan Year:

(a)     Salaried Plan Component:  the greatest of Credited Service, Continuous Service, and Years of Service, as such terms were defined in the Lockheed Plan on June 30, 1997, plus, for those Members on both December 25, 1996 and June 30, 1997, 0.12;

(b)     RIP Component:  Benefit Eligibility Service;

- 19 -

LMC 000290

Notwithstanding the foregoing, prior to the addition of the 0.12 years of Benefit Eligibility Service described in clause (a) above, a Participant shall not be credited with more than one year of Benefit Eligibility Service for the 1997 Plan Year.

(6)     **TRANSFERS BETWEEN PLANS OR CLASSES:**

The principles provided below apply to benefits under the Plan components and Annexes in a manner determined by the Plan Administrator:

    (a)    <u>Transfers to Another Position Covered by the Merged Plan</u>. In the event an Employee covered by RIP, RIP II, or Salaried Plan is transferred to another class of employment covered by a different component of the Plan (or, effective for transfers after January 1, 1999, by RIP III), he shall continue to be subject to retirement under the terms of the Plan component or subcomponent covering the class of employment from which the Employee was transferred and shall not be eligible for benefits under the Plan component or subcomponent covering the class of employment to which the Employee was transferred.

    (b)    Transfers to a Position Not Covered by the Plan.

        (i)    In the event an Employee covered by the Plan is transferred to a class of employment covered by the KAPL, Inc. Pension Plan for Salaried Employees ("KAPL Plan") and is credited with 1000 hours of service within a 12-month period under the KAPL Plan, he shall cease being a Participant in the component of the Plan in which he was participating at the time of transfer of employment and shall become a participant in the KAPL Plan. Reserves and liabilities shall be transferred to the KAPL Plan with respect to such Participant's Accrued Benefit under the applicable Plan component and no benefits shall be payable to such person under the Plan. The KAPL Plan shall be deemed to incorporate the terms of the applicable Plan component with respect to such transferred persons and, although such Participants shall be KAPL Plan Participants, they shall be subject to the terms of the Plan component in which they participated at the time of transfer of employment as such terms are incorporated into the KAPL Plan.

        (ii)    In the event an Employee covered by the Plan is transferred to a class of employment covered by any other plan sponsored by a member of the Control Group, is credited with 1000 hours of service within a 12-month period under such other plan, and there is a transfer of Reserves and liabilities to the other plan in connection with the transfer of such Participant's employment, all entitlement to any benefit hereunder shall be transferred to such other plan. Upon subsequent retirement, death, or other termination of service of such a Participant under the terms of such other plan, he shall receive benefits determined by the provisions of such other plan as though the service recognized under the Plan had been under such other plan and no benefit shall be payable from the Plan. However,

- 20 -

LMC 000291

any Participant for whom such a transfer is made shall be entitled to receive, from the plan to which he was transferred, the benefit accrued under the Plan at the time of transfer in any optional form of payment available to the Participant under the Plan on the date of transfer of employment, unless such payment form is not required to be protected under Code Section 411(d)(6).

(iii)   In the event an Employee covered by the Plan is transferred to another class of employment covered by a defined benefit plan sponsored by a member of the Control Group, in which the participants are predominately members of collective bargaining units, his active participation in the Plan shall cease and he will be entitled to receive benefits under the Plan upon Termination of Employment with the Control Group at such time as he has satisfied the other requirements of the Plan for receipt of such benefits, provided however that such person may continue to earn Vesting Service and Benefit Eligibility Service under the Plan as long as such person is employed by a member of the Control Group.

(iv)   Except as specified in paragraph (a) above or in subsections (i), (ii), and (iii) of this Article III(6)(b), if a Participant is transferred to a position in the Control Group or United Space Alliance or United Launch Alliance that is not covered by the Plan, such person will continue to earn Vesting Service and Benefit Eligibility Service under the Plan as long as such person is employed by a member of the Control Group or United Space Alliance or United Launch Alliance and such person's Final Average Pensionable Earnings shall be determined by counting the person's earnings, as determined by the Plan Administrator in a manner comparable to the method of determining Pensionable Earnings under the Plan, while in such other position.

(v)   This subsection (v) shall apply only to a Participant who satisfies all of the following criteria:  (i) who on or after the Designation Date transfers directly (without any intervening termination of employment or other break) from a position covered by the Plan to a position at a Designated Business, (ii) who is actively accruing Credited Service under the Plan immediately prior to such transfer, and (iii) who is not covered by any other defined benefit plan sponsored by a member of the Control Group after such transfer.  Notwithstanding Article III(4), a Participant described in the previous sentence shall continue to participate in and earn Credited Service under the Plan, as applicable, for service with the Designated Business after the transfer on the same basis as if the Designated Business were an Employing Company.  For the purposes of this subsection (v), "Designated Business" means a business unit or operation which is specifically identified on Appendix D to the Plan, as revised from time to time, and "Designation Date" means the date set forth on Appendix D for a particular Designated Business.

- 21 -

LMC 000292

(c)     <u>Transfer in to a Position Covered by the Plan</u>.

    (i)    In the event a Participant in the KAPL Plan is transferred to a class of employment covered by the Plan, and there is a transfer of Reserves with respect to his transfer of employment, he shall cease being a Participant in the KAPL Plan in which he was participating at the time of transfer of employment and shall become a Participant in the Plan.  If Reserves and liabilities shall be transferred to the Plan with respect to such Participant's Accrued Benefit under the KAPL Plan, no benefits shall be payable to such person under the KAPL Plan.  The Plan shall be deemed to incorporate the terms of the KAPL Plan with respect to such transferred persons and, although such Participants shall be Participants in the Plan, they shall be subject to the terms of the KAPL Plan as such terms are incorporated into the Plan.

    (ii)    Except where otherwise specified in the document authorizing the transfer of Reserves, any person who transfers to a position covered by the Plan, and for whom a transfer of Reserves is made to the Plan from another plan shall be entitled to receive from the Plan benefits determined by counting all service credited for purposes of calculating accrued benefits under such other plan as Credited Service hereunder, provided that no such person's benefit shall be less than the benefit accrued under such other plan at the time of transfer; all optional forms of payment available under such other plan that are not available under the Plan shall be deemed terminated with respect to such Participant for benefits accrued after such transfer.

    (iii)    Any person who transfers from a position covered by a plan sponsored by a member of the Control Group, the participants in which are predominantly members of collective bargaining units, to a position covered by the Plan shall be treated as a new Participant on the date the person becomes an Employee, subject to the Vesting and Benefit Eligibility Service rules of Section (3)(e) of Article III.

    (iv)    With respect to transfers on or after January 1, 1999, in the event a person covered by the RIP III (or for 1999, a plan that was merged into the RIP III) is transferred to a position covered by the Plan, such person's Benefit shall continue to accrue as provided under the terms of the RIP III subcomponent from which he transferred.

    (v)    Except as provided in subsections (i), (ii), (iii), and (iv) of this Article III(6)(b), and paragraph (a) above, if a Participant is transferred to a position covered by the Plan from a position in the Control Group that is not covered by the Plan, such person shall be treated as an Employee as of the date of such transfer of employment (subject to the Vesting and Benefit Eligibility Service rules of Subsection (3)(e) of Article III) and

- 22 -

LMC 000293

subject to the fact that transfers from United Space Alliance or United Launch Alliance shall be credited with Vesting Service and Benefit Eligibility Service with respect to employment with United Space Alliance or United Launch Alliance as if such employment were a Period of Employment under the Plan. Notwithstanding the foregoing or any other provision of the Plan, for transfers occurring on or after January 1, 2006, if a person is transferred to an Employing Company from a position in the Control Group that is not covered by the Merged Plan (or for 2006, a plan that became part of the Merged Plan), or another defined benefit pension plan sponsored by the Corporation or another member of the Control Group, such person will not be treated as an Employee for purposes of the Plan and will not become a Participant in or earn Credited Service under the Plan with respect to any period after such transfer.

(d)  <u>Reserves</u>. For purposes of this Section (6), the term "Reserves" shall mean (i) the present value of the relevant Participant's accrued benefit (as defined in Code section 411(a)(7)) as of the date of the Participant's date of transfer of employment, based on the actuarial assumptions of the transferring plan, including the employee's voluntary contributions and interest accrued thereon, if any, plus (ii) the additional amount, if any, required to be transferred under Code Section 414(l).

## (7)  PERSONS RE-EMPLOYED AFTER MILITARY SERVICE:

Notwithstanding any provision of the Plan to the contrary, benefits and service credit with respect to military service will be provided in accordance with Code Section 414(u).

LMC 000294

## ARTICLE IV

## DIRECT RETIREMENT FROM ACTIVE SERVICE

(1)   **NORMAL RETIREMENT**:

The Normal Retirement Date of a Participant for benefit eligibility and vesting purposes shall be the date the Participant attains age 65.

Each Participant who retires in accordance with this Article IV(1) at or after his Normal Retirement Date, as defined above, shall thereupon become entitled to receive a normal retirement benefit determined and payable according to the terms of the Plan.

For all purposes other than benefit eligibility and vesting, the Normal Retirement Date shall be the first day of the month next succeeding the Participant's attainment of age 65.  Employment may continue thereafter.

(2)   **EARLY RETIREMENT**:

A Member who shall have attained at least age 55 but not age 65 and completed at least five years of Benefit Eligibility Service may retire from active service and receive a retirement benefit commencing either on his Normal Retirement Date or on the first day of any month after the month in which the Participant Terminates Employment, which benefit shall be determined and payable according to the terms of the Plan as it existed on the date of his Termination of Employment.

(3)   **SPECIAL RETIREMENT**:

A Member who is laid off due to a reduction in force, plant closing, or lack of work, and who either (1) has earned at least 25 years of Benefit Eligibility Service at the time of such layoff or (2) has attained age 53 and has earned at least eight years of Benefit Eligibility Service at the time of such layoff, shall be treated as retiring under Article IV(2) if such Participant begins receiving benefits on or after the first of the month after attaining age 55 and prior to attaining age 65, and shall be treated as retiring under Article IV(1) if such Participant begins receiving benefits upon or after reaching age 65.

LMC 000295

## ARTICLE V

## AMOUNT OF BENEFIT

### (1)   NORMAL RETIREMENT BENEFIT:

Subject to the remaining provisions of this Article V, and the provisions of Article VI, VIII and IX, the retirement benefit for a Participant who retires on his Normal Retirement Date, shall be an annual amount derived by multiplying (a) times (b) and then adding (c), where,

> (a)   is 1.25% of that portion of the Participant's Final Average Pensionable Earnings which is not in excess of his Social Security Covered Compensation, plus 1.500% of the Participant's Final Average Pensionable Earnings in excess of his Social Security Covered Compensation, and

> (b)   is the Participant's full and partial years of Credited Service not in excess of 35 years, and

> (c)   is 1.500% of the Participant's Final Average Pensionable Earnings times his number of full and partial years of Credited Service in excess of 35 years, if any.

### (2)   EARLY RETIREMENT BENEFIT:

Subject to the remaining provisions of this Article V, and the provisions of Articles VI, VIII and IX, the retirement benefit for a Participant who retires early as provided in Articles IV(2) and IV(3) shall be an annual amount determined as follows:

> (a)   If the Participant elects to delay commencement of receipt of benefit payments until his Normal Retirement Date, or later, an amount determined under Article V(1) based upon his Credited Service, Final Average Pensionable Earnings and Social Security Covered Compensation, determined as of the date of Termination of Employment; or

> (b)   If the retirement benefit shall commence on the first day of any month prior to his Normal Retirement Date, an amount equal to the retirement benefit described in Article V(2)(a) but reduced by 5/12ths of one percent for each complete month by which commencement of such retirement benefit precedes the first of the month following the attainment of age 60.

### (3)   LATE RETIREMENT:

> (a)   Any benefit otherwise due or payable to a Participant who remains employed by the Corporation or other member of the Control Group (hereafter the "Company") shall be payable only for the period after such Participant has ceased to be employed by the Company. The preceding sentence shall apply regardless of whether such Participant has reached his Normal Retirement Date.

LMC 000296

(b)     A Participant described in subsection (a) shall receive his retirement benefit on the first day of the month following Termination of Employment. The retirement benefit for any Participant described in subsection (a) shall be the retirement benefit determined in accordance with the provisions of Article V or the Annex, whichever is applicable (including accruals after his Normal Retirement Date).

(c)     Notwithstanding subsections (a) and (b), benefits shall become payable to a Participant, even if he is then employed by the Company, as of April 1 of the calendar year following the calendar year in which such Participant attains the age of 70 ½ in an amount that would satisfy Code section 401(a)(9) if such April 1 were treated as the Participant's required beginning date for purposes of Code section 401(a)(9). As and to the extent permitted by Code section 411(b)(1)(H)(iii)(I), the actuarial equivalent of any benefit paid during any Plan Year to a Participant under the preceding sentence while the Participant is employed by the Company shall reduce (but not below zero) the amount of benefits otherwise accrued by the Participant during such Plan Year.

(d)     Except as otherwise required by law, the benefit due or payable to a Participant described in subsection (a) during any period after such Participant has ceased to be employed by the Company shall not be actuarially increased or adjusted on account of subsections (a) or (b). As and to the extent permitted by Code section 411(b)(1)(H)(iii)(II), any actuarial increase during a Plan Year required by law with respect to any benefit not paid to a Participant pursuant to subsections (a) and (b) shall reduce (but not below zero) the amount of benefits otherwise accrued by the Participant during such Plan Year.

(4)   **REGULAR SUPPLEMENT**:

(a)     A Member who, after attaining age 60, retires from active service early in accordance with Articles IV(2) and IV(3) having earned ten or more years of Benefit Eligibility Service and whose Benefit Commencement Date is prior to age 62 shall receive, in addition to a regular pension, a supplemental payment at the rate of $100 per month ($200 per month, in the event the retirement occurs on or after January 1, 2001), plus $20 per month ($25 per month, in the event the retirement occurs on or after January 1, 2001) for each whole year of Credited Service and a proportional amount for any fractional year of Credited Service (up to a maximum of 25 years) earned by the Participant; subject to the following conditions:  the supplement shall be payable only until and including the month in which the Participant reaches age 62; and

(b)     the amount of the supplement may not exceed the smaller of $600 per month ($825 per month, in the event retirement occurs on or after January 1, 2001) or the Participant's projected Social Security Benefits at the Participant's Social Security Retirement Age.

LMC 000297

Notwithstanding the foregoing, effective as of January 1, 2011, the supplement described in this Section 4 of Article V shall not be available or payable to any Member or Participant who retires after January 1, 2011.

**(5)   MINIMUM AMOUNT OF BENEFIT:**

In no event shall the retirement benefit determined pursuant to Articles V(1), (2), or (3) be less, in the event of retirement of a Participant who was a Member of the Plan on June 30, 1997, than the amount of the respective benefit to which he would have become entitled as of June 30, 1997.

**(6)   MAXIMUM AMOUNT OF BENEFIT:**

Notwithstanding any other provision in the Plan to the contrary, benefits payable hereunder shall be limited to the maximum permitted under Code Section 415 and the regulations and IRS rulings promulgated thereunder which rules are incorporated herein by reference. Consistent with the rules under Code Section 415, the Plan Administrator may establish additional rules for applying this limit. If a Participant participated in more than one defined benefit plan maintained by the Corporation or an Employing Company, regardless of whether any such plans are terminated, the statutory maximum retirement benefit shall be determined as if there were just one defined benefit plan, but the retirement income so determined will apply on a pro rata basis between, or among, such plans. For any limitation year prior to 2000, if any Participant is or has been a participant in a defined contribution plan maintained by the Corporation or an Employing Company, regardless of whether any such plans are terminated, the rate of benefit accrual by the Participant under the Plan shall be reduced to the extent required to make the sum of the Participant's defined contribution plan fraction and defined benefit plan fractions (as such terms are defined in Code Section 415(e)) not exceed 1.0.

Effective as of the first day of the first limitation year beginning on or after January 1, 2000 (the "Effective Date"), and notwithstanding any other provision of the Plan, the accrued benefit for any participant who commenced receiving a benefit prior to the Effective Date shall be determined by applying the terms of the Plan implementing the limitations of Section of Code 415 as if the limitations of Section 415 continued to include the limitations of Section 415(e) as in effect on the day immediately prior to the Effective Date. For this purpose, the defined contribution fraction is set equal to the defined contribution fraction as of the day immediately prior to the Effective Date. Except as specified in the firs sentence of this paragraph, and to the extent permitted by the Code, any Plan provision which would have the effect of limiting a participant's benefit on account of Code Section 415(e) as in effect prior to the Effective Date will cease to be in effect for limitation years beginning on or after the Effective Date.

For purposes of applying the limits under Code Section 415, compensation for a Plan Year shall mean total compensation shown for federal income tax purposes on any and all W-2 forms completed by the Corporation (or such form or forms as may replace such W-2 forms in the future) in respect of the year specified, but determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or the services performed; provided that for Plan Years beginning after December 31, 1997, compensation for this purpose shall also include amounts of any deferral or reduction in salary or

LMC 000298

wages elected by a Participant in accordance with any Code Section 125 flexible benefits plan or 401(k) plan that the Company may have and any elective amounts that are not includible in the gross income of the Participant by reason of Code Section 132(f)(4).

For limitation years beginning after December 31, 2001, a multi-employer plan cannot be combined or aggregated with this Plan for purposes of applying the Code Section 415(b)(1)(B) compensation limit to this Plan.

Notwithstanding any other plan provisions to the contrary, for distributions with annuity starting dates on or after December 31, 2002, the Applicable Mortality Table used for the purposes of adjusting any benefit or limitation under Code Section 415(b)(2)(B), (C), or (D) as set forth in Article V(6) of the Plan (or other Section of the Plan addressing such Code sections)) and the Applicable Mortality Table used for purposes of satisfying the requirements of Code Section 417(e) as set forth in Article I (34) of the Plan (or other plan provision addressing Section 417(e)) is the table prescribed in Rev. Rul. 2001-62.

Notwithstanding anything in the Plan to the contrary, for purposes of adjusting the "annual benefit" to a straight life annuity in applying Code section 415 limits, for Plan Years ending December 31, 2004 and December 31, 2005 (and, to the extent required by law, any subsequent year), for benefits subject to Code section 417(e)(3), the term "interest rate of 5.5%" shall be substituted for the term "Applicable Interest Rate," interest rate prescribed under Code Section 417(e)(3)(A)(ii)(II) of the Code," or similar term used in the Plan in applying Code Section 415 limits.

(7)     **PRIOR PLAN**:

[RESERVED]

(8)     **CERTAIN HOURLY TRANSFERRED EMPLOYEES**

This Article V(8) shall apply only with respect to a participant who has an Hour of Service under the Plan on or after January 1, 2001 who transferred or transfers directly from employment as an hourly employee participating in a defined benefit plan sponsored by the Company to employment as a salaried employee participating in the Plan (an "Hourly Transferred Employee"). For purposes of this Article V(8), "Applicable Hourly Plan" shall mean the defined benefit pension plan sponsored by the Company in which the Hourly Transferred Employee participated prior to his transfer to a position covered by the Plan, and "Applicable Business Unit" shall mean the business unit or location at which the Hourly Transferred Employee earned his credited service under the Applicable Hourly Plan.

In the event, at the time of an Hourly Transferred Employee's retirement or other termination of employment, such Hourly Transferred Employee's Final Average Pensionable Earnings (or, to the extent benefits are determined under an Annex included in the Plan, Final Average Pensionable Earnings and such other compensation used in determining benefits as defined in and in accordance with the applicable Annex) is an amount which would result in a monthly retirement benefit hereunder (or under the applicable Annex) which would be less than if such benefit were calculated (on the basis of years of Credited Service hereunder) under the

- 28 -

LMC 000299

Applicable Hourly Plan, as in effect at the time of such retirement or other termination of employment for hourly employees at the Applicable Business Unit, the monthly retirement benefit hereunder shall be increased by the amount of such difference.

(9)     **SPECIAL PROVISIONS WITH RESPECT TO CERTAIN SANDERS PLAN PARTICIPANTS**

This Article V(9) shall only apply with respect to a Participant who meets each of the following criteria (an "LMC Sanders Participant"):

(a)     who was an employee of the Corporation or a member of its Control Group on November 26, 2000 (the "Sanders Closing Date");

(b)     who remained an active employee of the Corporation or a member of its Control Group on the day after the Closing Date:

(c)     who had an accrued benefit under the Lockheed Martin Sanders Pension Plan (the "LMC Sanders Plan") as of the Sanders Closing Date.

An LMC Sanders Participant shall be eligible for an "LMC Sanders Plan Benefit" payable under the Salaried Plan. Such Participant's LMC Sanders Plan Benefit shall be equal to the benefit such LMC Sanders Plan Participant had accrued under the LMC Sanders Plan, including any features associated with the LMC Sanders Plan Benefit which are protected under Code section 411(d)(6), reduced by any amount paid to such LMC Sanders Plan Participant directly from the LMC Sanders Plan or a successor thereto. The LMC Sanders Plan Benefit shall be payable at the time benefits commence under RIP, the Salaried Plan, or the RIP III, as applicable. Nothing in this Article V(9) shall cause a Participant to receive a duplicate benefit and duplicate payment with respect to Article III(6).

(10)    **SPECIAL PROVISIONS WITH RESPECT TO LM PROPERTIES PARTICIPANTS.**

Notwithstanding any Plan provision to the contrary, an LM Properties Participant shall be eligible to receive a LM Properties Benefit payable under the Plan. The LM Properties Benefit shall mean the benefit such LM Properties Participant had accrued under the former Lockheed Martin Pension Plan for Hourly Employees of the Space Systems Group (the "Harlingen Plan"), determined under the terms of the Harlingen Plan, which was transferred to the RIP Component. LM Properties Participant means a person who as of November 21, 2005 had an accrued benefit under the Harlingen Plan based on service as an hourly employee working at Lockheed Martin Properties, Inc., and whose benefit under the Harlingen Plan was transferred to this Plan. The LMC Properties Benefit shall be in lieu of any other benefit relating to the same period of service for a LM Properties Participant.

- 29 -

LMC 000300

## ARTICLE VI

## AUTOMATIC AND OPTIONAL FORMS OF PAYMENT

For Participants who Terminate Employment on or after June 1, 1997, at a time when they are eligible to receive a benefit on the first of the month immediately following such termination, and for Participants who otherwise Terminate Employment on or after July 1, 1997, the retirement benefit determined in accordance with the provisions of Article V and VIII and subject to all of the provisions and conditions of the Plan, shall be paid in one of the following forms:

(1)   **QUALIFIED JOINT AND SURVIVOR ANNUITY:**

Unless a married Participant files an election to the contrary in writing with his Spouse's Consent with the Plan Administrator within the 90-day period preceding the Benefit Commencement Date, or during the 30-day period following receipt of a written explanation of survivor benefits if such explanation is provided after the annuity starting date, if applicable, the amount of retirement benefits determined in accordance with the provisions of Article V (excluding the supplement described in Article V(4)) or VIII shall be a reduced amount of Equivalent Actuarial Value (where the Contingent Annuitant is the Spouse) payable to the Participant during his lifetime and continuing after his death at one-half rate to his surviving Spouse so long as she shall survive him, provided that she was his Spouse at the time of commencement of benefit payments to him. If the right to the qualified joint and survivor annuity is waived, the waiver may be revoked by the Participant without Spouse's Consent at any time up to his date of retirement or through the 30 day election period, as applicable. The reduction in the Participant's benefit will occur on the later of (i) the Benefit Commencement Date or (ii) the first day of the month in which the Employee and the Employee's Spouse have been married to each other for one year. If the Participant's Spouse shall die after the commencement of benefit payments under the Qualified Joint and Survivor Annuity (in the case of a Participant who retired from active service), but before the death of the Participant and before the benefit has been in pay status for five years, the Participant's monthly benefit payments shall increase to the amount that would be paid had the Participant elected a Lifetime of Participant Only Option under Article VI(5), effective on the first of the month following the month in which the Spouse dies.

(2)   **JOINT AND SURVIVOR OPTION:**

> (a)   A Participant may, subject to the conditions hereinafter set forth, elect to receive the amount of retirement benefits determined in accordance with the provisions of Article V or VIII in a reduced amount of Equivalent Actuarial Value payable during his lifetime with the provision that, if he shall die on or after the date his election becomes effective, retirement benefits at 50 percent, 75 percent, or 100 percent (according to his election) of the amount payable to the Participant, excluding the supplement (if any) described in Article V(4), will be payable to the designated Contingent Annuitant so long as such person shall survive him.

- 30 -

LMC 000301

(b)     To elect a Joint and Survivor Option (or to change the Contingent Annuitant), a Participant shall designate his Contingent Annuitant on a form provided for the purpose and shall furnish to the Plan Administrator within 90 days thereafter, but not later than the date on which he files his application for retirement benefits, proof satisfactory to the Plan Administrator of the age of the Contingent Annuitant.

(c)     If a Participant shall have elected a Joint and Survivor Option and:

(i) If his Contingent Annuitant shall die before the Benefit Commencement Date, the election shall thereupon become void;

(ii)    If a Participant shall die before the Benefit Commencement Date, the election shall thereupon become void;

(iii)   For Participants who retire from active service, if the Contingent Annuitant shall die after the commencement of benefit payments under the Joint and Survivor Option, but before the death of the Participant and before the benefit has been in pay status for five years, the Participant's monthly benefit payments shall increase to the amount that would have been paid had the Participant elected a Lifetime of Participant Only Option under Article VI(5), effective on the first of the month following the month in which the Contingent Annuitant dies.

(iv)    If the Contingent Annuitant shall die after the commencement of benefit payments under the Joint and Survivor Option and after the benefit has been in effect for five years, but before the death of the retired Participant, such Participant shall continue to receive the amount of retirement benefit payable to him in accordance with the option.

## (3)     GUARANTEED PERIOD OPTION:

A Participant may, subject to the conditions hereinafter set forth, elect to receive the amount of retirement benefit determined in accordance with the provisions of Article V or VIII in a reduced amount of Equivalent Actuarial Value payable during his lifetime with the provision that if he shall die after the Benefit Commencement Date and before 60 or 120 monthly payments have been made, as elected by the Participant, such payments (excluding the supplement, if any, described in Article V(4)) shall continue for the remainder of such 60-month or 120-month period to the Beneficiary of the Participant. The Value of any benefits payable hereunder to the estate of the Participant or Beneficiary shall be paid in one sum to the executor or administrator.

## (4)     LEVEL INCOME OPTION:

A Participant retiring early, may, subject to the conditions hereinafter set forth, elect to receive the amount of retirement benefit determined in accordance with the provisions of Article V(2) or VIII in adjusted amounts of Equivalent Actuarial Value, payable as a single life annuity in a greater amount during the period before the Participant reaches age 62 or, if the Participant so elects, age 65, and a reduced amount after the Participant reaches age 62 (or 65).

- 31 -

(5)  **LIFETIME OF PARTICIPANT ONLY OPTION:**

A Participant may, subject to the conditions hereinafter set forth, elect prior to the Benefit Commencement Date, to receive the amount of the retirement benefit determined in accordance with the provisions of Article V or VIII as payable only during the lifetime of the Participant with no further payments to anyone after his death. This shall be the automatic form of benefit for a Participant who does not have a Spouse on his Benefit Commencement Date and who does not elect another form of benefit.

(6)  **FURTHER PROVISIONS RELATIVE TO OPTIONS:**

The optional forms of payment described in this Article shall be subject to the following conditions:

(a)  If a Participant is married, any election of an optional form of payment, other than a Joint and Survivor Option with his Spouse as the survivor must include the Spouse's Consent. The Spouse's Consent shall be valid only for the option chosen. The election of a different optional form of benefit shall again require the Spouse's Consent. An election of an optional form of payment of benefit may be made any time within the 90-day period preceding the Benefit Commencement Date.

(b)  The election of an optional form shall become effective on the Participant's Benefit Commencement Date. A Participant may revoke his election of an optional form of payment of retirement benefits at any time before it shall have become effective but not thereafter.

(c)  In no event shall any election be made which would provide for the payment of benefits extending over a period longer than the life of the Participant or the lives of the Participant and his Contingent Annuitant if the Joint and Survivor Option is elected, or over a period certain extending beyond the life expectancy of the Participant if the guaranteed period option is elected.

(d)  No supplement described in Article V(4) shall be considered part of a Participant's accrued benefit, nor shall any amount of any such supplement be payable to any survivor or Beneficiary.

(e)  All automatic and optional forms of payment shall be determined and made in accordance with the Proposed Income Tax Regulations under Code Section 401(a)(9), including the minimum distribution incidental benefit requirement of Proposed Treasury Regulation Section 1.401(a)(9)-2 (or final regulations issued under Section 401(a)(9) of the Code). If the Participant dies after distribution of his or her interest has begun, the remaining portion of such interest will continue to be distributed at least as rapidly under the method of distribution being used prior to the Participant's death. If the Participant dies before distribution of his or her interest begins, distribution of the Participant's entire interest shall be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death except that:

- 32 -

LMC 000303

(i)   if any portion of the Participant's interest is payable to a designated beneficiary, distributions may be made over the life or over a period certain not greater than the life expectancy of the designated beneficiary commencing on or before December 31 of the calendar year immediately following the calendar year in which the Participant died;

(ii)  if the designated beneficiary is the Participant's Spouse the date distributions are required to begin in accordance with (i) above shall not be earlier than the later of (1) December 31 of the calendar year immediately following the calendar year in which the Participant died and (2) December 31 of the calendar year in which the participant would have attained age 70½.

This Section is intended to set forth the minimum distribution requirements of Code Section 401(a)(9) and will apply only when the Plan's terms would otherwise permit the deferral of distributions beyond the limits set forth herein. This Section is not intended to add additional benefit forms or permit the deferral of benefits beyond the dates otherwise specified.  With respect to distributions under the Plan made in calendar years beginning on or after January 1, 2002, the Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Internal Revenue Code in accordance with the regulations under Section 401(a)(9) that were proposed in January 2001 ("2001 Regulations"), notwithstanding anything in the Plan to the contrary.  This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Section 401(a)(9) or such other date as specified in guidance published by the Internal Revenue Service.  Nothing herein shall cause the commencement of a minimum distribution with respect to an active employee to be delayed beyond the date it would otherwise commence under the terms of the Plan.

(f)   The amount of payments under the optional forms of payment shall be determined in accordance with the applicable actuarial formulas described in Article I(11).

## (6-A)  MINIMUM REQUIRED DISTRIBUTIONS—POST JANUARY 1, 2006

(a)   General Rules.

(1)  Effective Date.  The provisions of this Section 6-A will apply for purposes of determining required minimum distributions for calendar years beginning with the 2006 calendar year.

(2)  Precedence.  The requirements of this Section will take precedence over any inconsistent provisions of the Plan.

(3)  Requirements of Treasury Regulations Incorporated.  All distributions required under this Section will be determined and made in accordance

LMC 000304

with the Treasury regulations under Section 401(a)(9) of the Internal Revenue Code.

(4)   **TEFRA Section 242(b)(2) Elections**. Notwithstanding the other provisions of this article, other than (a)(3) above, distributions may be made under a designation made before January 1, 1984, in accordance with Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act (TEFRA) and the provisions of the Plan that relate to Section 242(b)(2) of TEFRA.

(b)   **Time and Manner of Distribution**.

(1)   **Required Beginning Date**. The Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

(2)   **Death of Participant Before Distributions Begin**. If the Participant dies before distributions begin, the Participant entire interest will be distributed, or begin to be distributed, no later than as follows:

(A)   If the Participant's Surviving Spouse is the Participant's sole Designated Beneficiary, then distributions to the Surviving Spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70 1/2, if later;

(B)   If the Participant's Surviving Spouse is not the Participant's sole Designated Beneficiary, then distributions to the Designated Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died;

(C)   If there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death;

(D)   If the Participant's Surviving Spouse is the Participant's sole Designated Beneficiary and the Surviving Spouse dies after the participant but before distributions to the Surviving Spouse begin, this Section (b)(2), other than Section (b)(2)(A), will apply as if the Surviving Spouse were the Participant.

For purposes of this Section (6-A)(b)(2) and Section (6-A)(e), distributions are considered to begin on the Participant's Required Beginning Date (or, if Section (6-A)(b)(2)(D) applies, the date distributions are required to begin to the

- 34 -

LMC 000305

Surviving Spouse under Section (6-A)(b)(2)(A). If annuity payments irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's Surviving Spouse before the date distributions are required to begin to the Surviving Spouse under Section (6-A)(b)(2)(A)), the date distributions are considered to begin is the date distributions actually commence.

(3)     Form of Distribution. Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first Distribution Calendar Year distributions will be made in accordance with Sections (6-A)(c), (d), and (e) below. If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Section 401(a)(9) of the Code and the Treasury regulations. Any part of the Participant's interest which is in the form of an individual account described in Section 414(k) of the Code will be distributed in a manner satisfying the requirements of Section 401(a)(9) of the Code and the Treasury regulations that apply to individual accounts.

(c)     Determination of Amount to be Distributed Each Year.

(1)     General Annuity Requirements. If the Participant's interest is paid in the form of annuity distributions under the plan, payments under the annuity will satisfy the following requirements:

(A)     the annuity distributions will be paid in periodic payments made at intervals not longer than one year;

(B)     the distribution period will be over a life (or lives) or over a period certain not longer than the period described in Section (6-A)(d) or (e);

(C)     once payments have begun over a period certain, the period certain will not be changed even if the period certain is shorter than the maximum permitted;

(D)     payments will either be nonincreasing or increase only as follows:

(i)     by an annual percentage increase that does not exceed the annual percentage increase in a cost-of-living index that is based on prices of all items and issued by the Bureau of Labor Statistics;

(ii)     to the extent of the reduction in the amount of the Participant's payments to provide for a survivor benefit upon death, but only if the beneficiary whose life was being used to determine the distribution period described in

- 35 -

LMC 000306

Section (6-A)(d) dies or is no longer the Participant's beneficiary pursuant to a qualified domestic relations order within the meaning of Section 414(p);

(iii)    to provide cash refunds of employee contributions upon the Participant's death; or

(iv)    to pay increased benefits that result from a Plan amendment.

(2)    <u>Amount Required to be Distributed by Required Beginning Date</u>. The amount that must be distributed on or before the Participant's Required Beginning Date (or, if the Participant dies before distributions begin, the date distributions are required to begin under Section (6-A)(b)(2)(A) or (B)) is the payment that is required for one payment interval. The second payment need not be made until the end of the next payment interval even if that payment interval ends in the next calendar year. Payment intervals are the periods for which payments are received, *e.g.*, bi-monthly, monthly, semi-annually, or annually. All of the Participant's benefit accruals as of the last day of the first Distribution Calendar Year will be included in the calculation of the amount of the annuity payments for payment intervals ending on or after the Participant's Required Beginning Date.

(3)    <u>Additional Accruals After First Distribution Calendar Year</u>. Any additional benefits accruing to the Participant in a calendar year after the first Distribution Calendar Year will be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.

(d)    <u>Requirements For Annuity Distributions That Commence During Participant's Lifetime</u>.

(1)    <u>Joint Life Annuities Where the Beneficiary Is Not the Participant's Spouse</u>. If the Participant's interest is being distributed in the form of a joint and survivor annuity for the joint lives of the Participant and a nonspouse beneficiary, annuity payments to be made on or after the Participant's Required Beginning Date to the Designated Beneficiary after the Participant's death must not at any time exceed the applicable percentage of the annuity payment for such period that would have been payable to the Participant using the table set forth in Q&A-2 of Section 1.401(a)(9)-6 of the Treasury regulations. If the form of distribution combines a joint and survivor annuity for the joint lives of the Participant and a nonspouse beneficiary and a period certain annuity, the requirement in the preceding sentence will apply to annuity payments to be made to the Designated Beneficiary after the expiration of the period certain.

- 36 -

LMC 000307

(2)    Period Certain Annuities. Unless the Participant's Spouse is the sole Designated Beneficiary and the form of distribution is a period certain and no life annuity, the period certain for an annuity distribution commencing during the Participant's lifetime may not exceed the applicable distribution period for the Participant under the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury regulations for the calendar year that contains the Annuity Starting Date. If the Annuity Starting Date precedes the year in which the Participant reaches age 70, the applicable distribution period for the Participant is the distribution period for age 70 under the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury regulations plus the excess of 70 over the age of the Participant as of the Participant's birthday in the year that contains the Annuity Starting Date. If the Participant's Spouse is the Participant's sole Designated Beneficiary and the form of distribution is a period certain and no life annuity, the period certain may not exceed the longer of the Participant's applicable distribution period, as determined under this Section 8.9(d)(2), or the joint life and last survivor expectancy of the participant and the Participant's Spouse as determined under the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the calendar year that contains the Annuity Starting Date.

(e)    Requirements For Minimum Distributions Where Participant Dies Before Date Distributions Begin.

(1)    Participant Survived by Designated Beneficiary. If the Participant dies before the date distribution of his or her interest begins and there is a Designated Beneficiary, the Participant's entire interest will be distributed, beginning no later than the time described in Section (6-A)(b)(2)(A) or (B), over the life of the Designated Beneficiary or over a period certain not exceeding:

(A)    unless the Annuity Starting Date is before the first Distribution Calendar Year, the Life Expectancy of the Designated Beneficiary determined using the Designated Beneficiary's age as of the Designated Beneficiary's birthday in the calendar year immediately following the calendar year of the Participant's death; or

(B)    if the Annuity Starting Date is before the first Distribution Calendar Year, the Life Expectancy of the Designated Beneficiary determined using the Designated Beneficiary's age as of the Designated Beneficiary's birthday in the calendar year that contains the Annuity Starting Date.

LMC 000308

(2)    No Designated Beneficiary. If the Participant dies before the date distributions begin and there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(3)    Death of Surviving Spouse Before Distributions to Surviving Spouse Begin. If the Participant dies before the date distribution of his or her interest begins, the Participant's Surviving Spouse is the Participant's sole Designated Beneficiary, and the Surviving Spouse dies before distributions to the Surviving Spouse begin, this Section (6-A)(e) will apply as if the Surviving Spouse were the Participant, except that the time by which distributions must begin will be determined without regard to Section (6-A)(b)(2)(A).

(f)    Definitions.

(1)    "Designated Beneficiary". The individual who is designated as the Beneficiary under Article I of the Plan and is the designated beneficiary under Section 401(a)(9) of the Internal Revenue Code and Section 1.401(a)(9)-1, Q&A-4, of the Treasury regulations.

(2)    "Distribution Calendar Year". A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first Distribution Calendar Year is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date. For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin pursuant to Section (6-A)(b)(2).

(3)    "Life Expectancy". Life expectancy as computed by use of the Single Life Table in Section 1.401(a)(9)-9 of the Treasury regulations.

(4)    "Required Beginning Date". The date specified in Article VI(10) of the Plan.

## (7)    PAYMENT OF SMALL BENEFITS

(a)    For purposes of any benefit payable under the Plan, in the event that a benefit has a Value at the time of Termination of Employment and at the time of payment of $5,000 or less, such benefit will be paid in a lump-sum settlement in full discharge of all liability with respect to such benefit. If the Value of the benefit is $5,000 or less at the time of Termination of Employment, but greater than $5,000 at the time of payment, the benefit will be paid as a lump sum, subject to the Participant's consent and, if the Participant is married, to Spouse's Consent.

- 38 -

LMC 000309

(b) In the event of a mandatory distribution to a Participant greater than $1,000 in accordance with the provisions of the first sentence of Section 7(a), if the Participant does not elect to have such distribution paid directly to an Eligible Retirement Plan specified by the Participant in a Direct Rollover or to receive the distribution directly to an Eligible Retirement Plan specified by the Participant in a Direct Rollover or to receive the distribution directly as permitted under the Plan; the Plan Administrator will pay the distribution in a direct rollover to an individual retirement plan designated by LMIMC. The provisions of this Section (7)(b) shall apply only to mandatory distributions made on or after March 28, 2005.

(8) **NOTICE TO PARTICIPANTS:**

The Plan Administrator will provide each Participant no more than 90 days prior to the Benefit Commencement Date, a written explanation of:

(a) the terms and conditions of the qualified joint and survivor annuity form of payment,

(b) the Participant's right to make, and the effect of, an election to waive the qualified joint and survivor annuity form of payment,

(c) the rights of the Participant's Spouse,

(d) the right to make, and the effect of, a revocation of an election under (b), and

(e) the relative values of the various optional forms of payment under the Plan.

(f) in the event that such a written explanation regarding a qualified joint and survivor annuity is provided after the annuity start date, a Participant may waive the 30 day period for making an election if the benefits commence more than 7 days subsequent to the date the written explanation is provided.

(9) **RESTRICTIONS ON IMMEDIATE DISTRIBUTIONS:**

If the Value of a Participant's vested benefit exceeds (or at the time of any prior distribution exceeded) $5,000, and the accrued benefit is immediately distributable, the Participant and the Participant's Spouse (or where either the Participant or the Spouse has died, the survivor) must consent to any distribution of such benefit. The consent of the Participant and the Participant's Spouse shall be obtained in writing within the 90-day period ending on the Benefit Commencement Date. The Plan Administrator shall notify the Participant and the Participant's Spouse of the right to defer any distribution until the Participant's benefit is no longer immediately distributable. Such notification shall include a general description of the material features, and an explanation of the relative values of, the optional forms of payment available under the Plan in a manner that would satisfy the notice requirements of Code Section 417(a)(3), and shall be provided no less than 30 days and no more than 90 days prior to the Benefit Commencement Date. Notwithstanding the foregoing, only the Participant need consent to the commencement of a distribution in the form of a qualified joint and survivor annuity while the

- 39 -

LMC 000310

benefit is immediately distributable.  Neither the consent of the Participant nor the Participant's Spouse shall be required to the extent that a distribution is required to satisfy Code Section 401(a)(9) or 415.

(10)   **COMMENCEMENT OF BENEFITS**:

Unless the Participant elects otherwise, distribution of benefits will begin no later than the 60th day after the later of the close of the Plan Year in which:

      (a)      the Participant attains age 65; or

      (b)      the Participant Terminates Employment with an Employing Company.

Notwithstanding the foregoing, the failure of a Participant and Spouse to consent to a distribution while a benefit is immediately distributable, within the meaning of Article VI(9), shall be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy this Article.

The entire interest of a Participant must be distributed or begin to be distributed no later than the Participant's required beginning date under Code Section 401(a)(9).

LMC 000311

# ARTICLE VII

## PRE-RETIREMENT SURVIVING SPOUSE BENEFIT

(1)    **PRE-RETIREMENT SURVIVING SPOUSE BENEFIT: ACTIVE EMPLOYEES**:

If a Participant should die after he shall have become vested in a retirement benefit and prior to his Benefit Commencement Date, and either prior to his Termination of Employment, if he was eligible to retire from active service under Article IV at such time, or after his Termination of Employment, and is survived by a Spouse, such designated Spouse will be automatically eligible for a benefit.

    (a)    If the Participant had attained age 55 at the time of his death, the benefit for which the surviving Spouse will be eligible will be the amount she as Contingent Annuitant would receive assuming the Participant had retired at his own initiative on the first of the month following the date of his death with a Joint and Survivor Option, 100 percent continuation, effective on the date of such retirement. The early retirement reduction factor shall be determined under Article V(2)(b). The benefit shall be payable in accordance with the provisions of Article IX.

    (b)    If the Participant had not yet attained age 55 at the time of his death, the benefit for which the surviving Spouse will be eligible shall be as set forth in the preceding paragraph (a) except that (i) payment of the benefit shall not commence until the first of the month next following the date on which the Participant would have attained age 55 if he had lived and then retired with a Joint and Survivor Option, 100 percent continuation and (ii) the early retirement reduction factor shall be determined under Article V(2)(b). The benefit shall be payable in accordance with the provisions of Article IX.

## (2)    PRE-RETIREMENT SURVIVING SPOUSE BENEFIT: TERMINATED EMPLOYEES:

If a Participant should terminate his employment after becoming vested in a retirement benefit but before becoming eligible to retire from active service under Article IV and should die prior to his Benefit Commencement Date, and is survived by a Spouse, such Spouse will be eligible for a benefit.

    (a)    If the Participant attained age 55 at the time of his death, the benefit for which the surviving Spouse will be eligible will be the amount she as Contingent Annuitant would receive assuming the Participant had retired at his own initiative on the first day of the month in which his death occurred with a Joint and Survivor Option, 100 percent continuation, effective on the date of such retirement. The early retirement reduction factor shall be determined under Article VIII(2)(b) and the benefit shall be payable in accordance with the provisions of Article IX.

LMC 000312

(b)     If the Participant had not yet attained age 55 at the time of his death, the benefit for which the surviving Spouse will be eligible shall be as set forth in the preceding paragraph (a) except that payment of the benefit shall not commence until the first of the month next following the date on which the Participant would have attained age 55 if he had lived and then retired with a Joint and Survivor Option, 100 percent continuation. The early retirement reduction factor shall be determined under Article VIII(2)(b). The benefit shall be payable in accordance with the provisions of Article IX.

LMC 000313

# ARTICLE VIII

## VESTING; TERMINATION OF EMPLOYMENT

(1)    **VESTING:**

A Participant shall attain 100% vesting upon the earlier of:

(a)    the completion of five years of Vesting Service, as defined in Article III(3), or

(b)    the Participant's Normal Retirement Date if he is employed on or after his Normal Retirement Date.

(2)    **VESTED BENEFIT ON TERMINATION OF EMPLOYMENT:**

(a)    Subject to the remaining provisions of this Article VIII and the provisions of Article VI and IX, an Employee whose service terminates after attaining vesting, for any reason other than death or retirement shall be entitled to a retirement benefit commencing on his Normal Retirement Date in an annual amount determined as described in Article V(1) based upon his Credited Service up to his Termination of Employment.

(b)    A terminated Participant, described in (a) above, who shall have five years of Benefit Eligibility Service as of his Termination of Employment may elect to receive in lieu thereof, a retirement benefit commencing on the first of the month next following his 55th birthday, or commencing on the first of any later month prior to Normal Retirement Date, equal to the retirement benefit otherwise payable at Normal Retirement Date reduced by the percentage in the table below based on the Participant's age on the Benefit Commencement Date, with proportionate reduction for non-integer commencement ages.

| Commencement Age | Reduction | Commencement Age | Reduction |
|---|---|---|---|
| 65 | 0% | 59 | 48.6% |
| 64 | 10.1% | 58 | 53.9% |
| 63 | 19.4% | 57 | 58.4% |
| 62 | 27.9% | 56 | 62.1% |
| 61 | 35.6% | 55 | 65.0% |
| 60 | 42.5% | | |

(c)    Except as otherwise provided herein, a Participant whose service is terminated shall have his benefits determined in accordance with the provisions of the Plan as it existed on the Participant's date of Termination of Employment.

(d)    A Participant whose service is terminated for any reason other than death while otherwise entitled to retire early shall be entitled to a retirement benefit determined in accordance with the provisions of Article V(2).

- 43 -

LMC 000314

(3)    **MINIMUM VESTED BENEFIT**:

In no event shall the vested retirement benefit determined in accordance with the provisions of this Article VIII for a Participant who was a Participant in the Plan on June 30, 1997 be less than the amount of the respective benefit to which he would have become entitled as of June 30, 1997.

(4)    **MAXIMUM VESTED BENEFIT**:

In no event shall the annual amount of retirement benefit as determined by the provisions of this Article VIII with respect to a Participant exceed the amounts set forth in Article V(6).

(5)    **RE-EMPLOYMENT OF A TERMINEE**:

    (a)    In the event a former Participant who received a lump-sum settlement in accordance with Article VI(7) is re-employed by an Employing Company, then:

        (i)    the Participant's prior service upon which the lump-sum settlement was determined shall be aggregated with his service subsequent to re-employment, and

        (ii)    the Participant's subsequent Accrued Benefit will be determined in accordance with the provisions of Article V, based on the Participant's aggregated Credited Service but reduced by the Accrued Benefit on which the lump sum settlement was determined.

    (b)    If a former Participant is deemed to receive a distribution pursuant to Article VIII(7), and the person resumes employment covered under the Plan, upon re-employment of such Participant, subject to the break-in-service rules of Article III(3)(c)), the employer-derived Accrued Benefit will be restored to the amount of such Accrued Benefit on the date of the deemed distribution.

(6)    **RE-EMPLOYMENT OF A TERMINATED PARTICIPANT WHO HAD MADE EMPLOYEE CONTRIBUTIONS**:

    (a)    In the event a Plan Participant who received a refund of Employee contributions in accordance with the Annex, is re-employed by an Employing Company, repays any required contributions and interest paid to him, then

        (i)  the Participant's prior service upon which the lump-sum settlement was determined shall be aggregated with his service subsequent to re-employment, and

        (ii)  the Participant's subsequent benefit will be determined in accordance with the provisions of the Plan, based on the Participant's aggregated Credited Service.

LMC 000315

(b)     The time for repayment of any required contributions and interest shall continue for five years following the date of re-employment.

(c)     If the Participant has received a distribution of his required contributions plus interest and does not repay such contributions plus interest as provided in paragraph (b), the following shall be deducted in such future computation of his Accrued Benefit:

(i)   the Accrued Benefit derived from required contributions plus interest computed in accordance with the Annex as of the date of withdrawal, and

(ii)  the amount of reduction, if any, in Accrued Benefit determined in accordance with the Annex to provide a pre-retirement death benefit.

## (7)    NON-VESTED TERMINATION OF EMPLOYMENT:

A Participant whose employment terminated before he had acquired vesting as provided in this Article VIII shall be entitled to no benefits under the Plan, except with respect to benefits attributable to employee contributions, if any.  If a Participant is not vested in any portion of his benefit (other than amounts attributable to his own contributions) at the time of his Termination of Employment, he shall be treated as immediately receiving a distribution of the Value of his benefit under the Plan and his Accrued Benefit shall be deemed forfeited.  Subject to Article III, if such Participant is re-employed by a member of the Control Group, his Accrued Benefit shall be restored.

## (8)    TOP-HEAVY PROVISION:

The following provisions shall become effective in any Plan Year in which the Plan is a Top-Heavy Plan.

(a)     <u>Top-Heavy Plan Status</u>.  The Plan will be a Top-Heavy Plan for a given Plan Year if as of the last day of the preceding Plan Year either of the following situations occur:

(i)   The ratio of the Present Value of the Accrued Benefits of Participants in the Plan who are Key Employees to the Present Value of the Accrued Benefits for all Participants in the Plan exceeds .60, or

(ii)  The Plan is part of a Required Aggregation Group, and the ratio of the Present Value of Accrued Benefits of Participants in any of the aggregated plans who are Key Employees to the Present Value of the Accrued Benefits of all Participants in the aggregated plans exceeds .60.

Notwithstanding anything in (a) to the contrary, the Plan shall not be a Top-Heavy Plan in any Plan Year in which the Plan is part of a Required or Permissive Aggregation Group which is not top-heavy.  Neither shall the Plan be a Top-Heavy Plan if it is part of a Permissive Aggregation Group which is top-heavy but the Plan is not required to be part of a Required Aggregation Group.

- 45 -

LMC 000316

Top-heavy status shall be determined in accordance with Code Section 416(g) and the regulations issued under it. With respect to years beginning on or before December 31, 2001, for purposes of determining whether this Plan is top-heavy, the aggregated distributions (without interest thereon) made under the Plan to a Participant other than a former Key Employee during the five-year period ending on the determination date shall be taken into account. Deductible (IRA-type) contributions, or rollovers (or similar transfers) initiated by a Participant shall be ignored in determining whether this Plan is top-heavy, except as otherwise provided in applicable regulations. Distributions made within the five Plan Years ending on the determination date from a terminated and liquidated plan shall be included in the aggregation group had the plan not terminated. For purposes of satisfying the minimum benefit requirements of Code Section 416(c)(1) and the Plan, in determining years of service with the employer, any service with the employer shall be disregarded to the extent that such service occurs during a Plan Year when the Plan benefits (within the meaning of Code Section 410(b)) no Key Employee or former Key Employee.

For the purposes of determining whether the Plan is top-heavy, accounts under a defined contribution plan and accrued benefits under a defined benefit plan shall be valued as of the most recent valuation date which is within a 12-month period ending on the determination date except as provided in Code Section 416 and the regulations thereunder for the first and second plan years of a defined benefit plan. The valuation date shall be the same as the valuation date used in computing Plan costs for minimum funding, regardless of whether a valuation is performed for that year.

For purposes of computing the top-heavy ratio, the accrued benefit of a Participant who is not a Key Employee shall be determined under the method that uniformly applies for accrual purposes for all plans of the Corporation, or if there is no such method, then as if benefits had accrued not more rapidly than the slowest accrual rate permitted under Code Section 411(b)(1)(c).

(b)     Definitions.

Key Employee. A Key Employee is a Key Employee as defined in Code Section 416(i). In determining who is a Key Employee, compensation shall mean for any relevant Plan Year an Employee's 416 Compensation, increased to include salary deferrals under Code Sections 125, 402(e)(3), and 402(h)(1)(B) and effective for limitation years beginning on or after January 1, 1998, elective amounts that are not includible in the gross income of the participant by reason of code section 132(f) 4.

416 Compensation.    For any Plan Year, annual compensation as used in determining satisfaction of the Code Section 415 limits described in Article V(6).

Accrued Benefit. The Accrued Benefit is the yearly retirement benefit commencing on the Participant's Normal Retirement Date determined in accordance with Article V and VIII as if the Participant's Termination of Employment had occurred on the last day of the preceding Plan Year referred to in (a). If any individual has not received any compensation from any Employing Company (other than benefits under the Plan) at any

- 46 -

LMC 000317

time during the five-year period ending on the last day of the preceding Plan Year, any accrued benefit for such individual shall not be taken into account.

Present Value. Present Value shall be based on the actuarial assumptions used by the Plan's actuary in the actuarial valuation of the Plan made as of the first day of the preceding Plan Year referred to in (a). If the Plan is part of a Required or Permissive Aggregation Group, the actuarial assumptions shall be the same for all plans within the Group.

Required Aggregation Group. The term Required Aggregation Group means all of the plans of the Control Group which cover a Key Employee, or which are necessary for a plan which covers a Key Employee to satisfy the requirements of Code Sections 401(a)(4) or 410.

Permissive Aggregation Group. The term Permissive Aggregation Group means all of the plans of the Control Group which are included in the Required Aggregation Group plus any plans of the Control Group which are not included in the Required Aggregation Group, but which satisfy the requirements of Code Sections 401(a)(4) and 410 when considered together with the Required Aggregation Group.

(c)     Minimum Retirement Income Benefit. The yearly amount of retirement income for a Participant with respect to Plan Years during which the Plan is Top-Heavy, commencing on his Normal Retirement Date, shall be equal to 3% of the average of the Participant's 416 Compensation during the Participant's five highest-paid consecutive calendar years in which he earned a year of vesting service multiplied by the number of the Participant's years of Credited Service after December 31, 1983 in which the Plan is a Top-Heavy Plan, up to a maximum of 10 years.

If a Participant is covered under the Plan and a defined contribution plan maintained by an Employing Company, the minimum retirement income benefit previously described shall not be provided hereunder if the benefits provided under such defined contribution plan are at least equal in value to such Minimum Retirement Income Benefit.

(d)     Minimum Vesting Percentage. Notwithstanding any other vesting provision hereof to the contrary, the Participant's Vesting Percentage to be applied to the Participant's accrued retirement income once the Plan becomes a Top-Heavy Plan shall be determined as follows:

| Years of Service | Percentage |
|---|---|
| If he has less than 2 years: | 0% |
| If he has 2 years: | 20% |
| If he has 3 years: | 40% |
| If he has 4 years: | 60% |
| If he has 5 years: | 100% |

(e)     Compensation Limitation. For any Plan Year in which this is a Top-Heavy Plan, the compensation limitation described in Code Section 416(d) shall apply.

- 47 -

LMC 000318

(f)     Excessively Top-Heavy Plan. In the event the ratio described in paragraph (a) of this

(g)     Article VIII(8) exceeds .90, then the percentage described in the minimum retirement income benefit provision of paragraph (c) shall be 4% in lieu of 3% indicated therein.

## (8)-A  MODIFICATION OF TOP-HEAVY RULES -- EGTRRA

(a)     Effective date. This section shall apply for purposes of determining whether the plan is top-heavy plan under Code Section 416(g) for plan years beginning after December 31, 2001, and whether the plan satisfies the minimum benefits requirements of Code Section 416(c) for such years. This section amends section (8) of Article VIII of the Plan to the extent inconsistent herewith, and shall apply in any year in which the Plan is a top-heavy plan, provided it shall apply only to the extent required by law.

(b)     Determination of Top-Heavy Status

   (i)     Key employee. Key employee means any employee or former employee (including any deceased employee) who at any time during the plan year that includes the determination date was an officer of the employer having annual compensation greater than $130,000 (as adjusted under Code section 416(i)(1) for plan years beginning after December 31, 2002), a 5-percent owner of the employer, or a 1-percent owner of the employer having annual compensation of more than $150,000. For this purpose, annual compensation means compensation within the meaning of Code Section 415(c)(3) . The determination of who is a key employee will be made in accordance with Code Section 416(i)(1) and the applicable regulations and other guidance of general applicability issued thereunder.

   (ii)    Determination of present values and amounts. This section (ii) shall apply for purposes of determining the present values of accrued benefits and the amounts of account balances of employees as of the determination date.

          a)    Distributions during year ending on the determination date. The present values of accrued benefits and the amounts of account balances of an employee as of the determination date shall be increased by the distributions made with respect to the employee under the plan and any plan aggregated with the plan under Code Section 416(g)(2) during the 1-year period ending on the determination date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the plan under Code Section 416(g)(2)(A)(i). In the case of a distribution made for a reason other than separation from service, death, or disability, this

- 48 -

provision shall be applied by substituting 5-year period for 1-year period.

b)      Employees not performing services during year ending on the determination date.  The accrued benefits and accounts of any individual who has not performed services for the employer during the 1-year period ending on the determination date shall not be taken into account.

(c)      Minimum benefits.  For purposes of satisfying the minimum benefit requirements of Code Section 416(c)(1) and the plan, in determining years of service with the employer, any service with the employer shall be disregarded to the extent that such service occurs during a plan year when the plan benefits (within the meaning of Code Section 410(b)  no key employee or former key employee.

LMC 000320

# ARTICLE IX

## PAYMENT OF BENEFITS

(1)    **ONLY AUTHORIZED NET BENEFIT PAYABLE**:

    (a)    No payment shall be made under the Plan unless it shall have been authorized by the Plan Administrator acting in accordance with the provisions hereof. If a Participant continues employment beyond Normal Retirement Date, no benefits shall be payable until his actual retirement, except as provided below.

    (b)    Notwithstanding (a) above, the retirement benefit of a Participant who continues in employment after his Normal Retirement Date shall commence not later than the April 1 following the year in which he attains age 70½.

    (c)    Only the net amount of any benefit, after making any adjustments or deductions which are applicable, shall be payable from a Pension Fund.

(2)    **DATE AND DURATION OF PAYMENT**:

    (a)    The retirement benefit payable hereunder to a Participant shall be payable in monthly installments commencing, if he shall then be living, as of the first day of the month next following the latest of:

        (i) The actual retirement date of the Participant if this is in accordance with the provisions of Article IV or VIII,

        (ii) The date specified in an application, if this is in accordance with the provisions of the Plan, as the date upon which such retirement shall commence, or

        (iii) The date on which the Participant shall have furnished the Plan Administrator the information necessary to determine his benefit and make payment.

Notwithstanding the foregoing, benefits shall be payable no later than the first day of the month following the Participant's 65th birthday if the Participant has Terminated Employment and no later than the April 1 following the Participant's attainment of age 70½ if the Participant has not yet Terminated Employment.

    (b)    The retirement benefit shall be payable to the retired Participant as of the first day of each month thereafter during his lifetime, and in the event that any automatic or optional form of payment shall have become effective, payments shall continue on the first day of each month following the Participant's death in accordance with the provisions of such other form of payment. In the case of a guaranteed period option, any such payment shall be paid:

- 50 -

LMC 000321

(i)     to the Beneficiary most recently named to receive such benefits, or

(ii)    in the event no Beneficiary is living at the time of the Participant's death, to the Participant's estate, or

(iii)   in the event a Beneficiary is living at the time of the Participant's death but such Beneficiary dies prior to receipt of all guaranteed payments, the remaining guaranteed payments to the Beneficiary's estate.

(c)    The Pre-Retirement Surviving Spouse Benefit payable hereunder to an eligible surviving Spouse shall be payable in monthly installments commencing, if the Spouse shall then be living, as of the first day of the month next following the latest of:

(i)     The date of death of the Participant,

(ii)    The date the Participant would have attained age 55 had he lived, or

(iii)   The date on which the Spouse shall have furnished the Plan Administrator the information necessary to determine the benefit and make payment,

and shall be payable as of the first day of each month thereafter during the Spouse's lifetime.

The Plan Administrator will determine the amount of benefit based on information readily available to it.

## (3)    RE-EMPLOYMENT OF A RETIRED PARTICIPANT:

(a)    The retirement benefit otherwise payable hereunder to any Participant who previously retired or otherwise had a Termination of Employment (other than any full payment of the Personal Pension Account Annuity or Voluntary Pension Account Annuity accounts) shall cease as of the first of the month following or coinciding with the date of such Participant's re-employment with the Corporation or member of the Control Group (hereafter the "Company") if such Participant is regularly scheduled to work more than 32 hours per week or more than 999 hours in any consecutive 12- month period and shall be recalculated and resumed as of the first day of the month following subsequent retirement or other Termination of Employment.  In the event a re-employed Participant is not regularly scheduled to work more than 32 hours per week or more than 999 hours in any consecutive 12-month period , but actually does work more than 32 hours per week on a regular basis or does work more than 999 hours in any consecutive 12-month period (as determined by the Plan Administrator at least one time per Plan Year), such Participant will be treated, as of the first of the month after such determination by the Plan Administrator, as if he was regularly scheduled to work more than 32 hours per week or more than 999 hours in a consecutive 12-month period. Notwithstanding any other provision of this subsection (a), no retirement benefit will cease pursuant to this subsection (a) solely on account of re-

- 51 -

LMC 000322

employment of a Participant by a Company that, as of the date of such Participant's re-employment, is not in the Control Group.

(b)     In any case where the payment of a retirement benefit ceases under subsection (a) on account of re-employment, the amount of the retirement benefit to be paid on subsequent retirement or other Termination of Employment will be equal to the retirement benefit determined in accordance with the provisions of Article V or the Annex, whichever is applicable, based on the Participant's aggregated Credited Service (including Credited Service after his Normal Retirement Date) with a reduction, as and to the extent permitted by Code section 411(b)(1)(H)(iii)(I), for the Equivalent Actuarial Value of benefits paid after re-employment but prior to the actual cessation of benefits in accordance with paragraph (a) above, a reduction for the amount of employee contributions distributed under the Plan that have not been repaid, and a reduction for the Equivalent Actuarial Value of benefits previously paid as a lump sum.

(c)     Notwithstanding subsections (a) and (b), benefits shall become payable to a Participant, even if he is then employed by the Company, as of April 1 of the calendar year following the calendar year in which such participant attains the age of 70 1/2 in an amount that would satisfy Code section 401(a)(9) if such April 1 were treated as the Participant's required beginning date for purposes of 401(a)(9). As and to the extent permitted by Code section 411(b)(1)(H)(iii)(I)), the actuarial equivalent of any benefit paid during a Plan Year to a Participant under the preceding sentence while the Participant is employed by the Company shall reduce (but not below zero) the amount of benefits otherwise accrued by the Participant during such Plan Year.

(d)     Except as otherwise required by law, any benefit due or payable to a Participant described in subsection (a) during any period after the Participant has ceased to be employed by the Company shall not be actuarially increased or adjusted on account of subsections (a) or (b). As and to the extent permitted by Code section 411(b)(1)(H)(iii)(II), any actuarial increase during a Plan Year required by law with respect to any benefit not paid to a Participant pursuant to subsections (a) or (b) shall reduce (but not below zero) the amount of benefits otherwise accrued by the Participant during such Plan Year.

(e)     When a benefit of a Participant ceases under subsections (a) and (b), any prior benefit elections of such Participant shall automatically expire and the pre-retirement death benefit provisions of Article VII shall again become applicable as if the Participant's benefit had not previously commenced (except to the extent the amount payable is reduced under this section on account of pre-cessation benefit payments). When benefits resume after having ceased , the Plan's benefit form election rules shall again apply as if benefits had never before been payable with respect to the Participant (except to the extent the amount payable is reduced under this section on account of pre-cessation benefit payments). This subsection shall override any contrary Plan provision.

- 52 -

LMC 000323

(f)     In any case where the payment of a retirement benefit does not cease under subsections (a) and (b) for a re-employed Participant, the amount of the retirement benefit to be paid on subsequent Termination of Employment will be equal to the retirement benefit determined in accordance with Article V or the Annex, whichever is applicable, based on the Participant's aggregated Credited Service (including Credited Service after his re-employment, if any) with a reduction, as and to the extent permitted by Code section 411(b)(1)(H)(iii)(I), for the Equivalent Actuarial Value of benefits paid during re-employment, a reduction for the amount of employee contributions distributed under the Plan that have not been repaid, and a reduction for the Equivalent Actuarial Value of benefits previously paid as a lump sum.

(4)     **INCOMPETENCE OF PAYEE:**

In the event any benefit is payable to a minor or incompetent, to a person otherwise under legal disability, or to a person who, in the sole judgment of the Plan Administrator, is by reason of advanced age, illness, or other physical or mental incapacity, incapable of handling the disposition of his property, the Plan Administrator may direct the Trustee to apply the whole, or any part, of such benefit directly to the care, comfort, maintenance, support, education, or use of such person, or pay or distribute the whole, or any part, of such benefit to (a) the parent of such person, (b) the guardian, committee, or such other legal representative, wherever appointed, of such person, (c) the person with whom such person resides, (d) any person having the care and control of such person, or (e) such person personally. The receipt by the person to whom any such payment or distribution is so made shall constitute a full and complete discharge of the rights of affected Participants, former Participants, and Beneficiaries under the Plan.

(5)     **MISSTATEMENT IN APPLICATION FOR BENEFIT:**

If a Participant or surviving Spouse or Contingent Annuitant in furnishing information or in response to any request of the Employing Company or the Plan Administrator for information, makes any statement which is erroneous or omits any material fact or fails to correct any information that was previously incorrectly furnished to the Employing Company or the Plan Administrator for its records, the amount of benefit payable shall be adjusted retroactively on the basis of the correct facts and the amount of any overpayment or underpayment theretofore made to such Participant shall be deducted from or added to the next succeeding payments as the Plan Administrator shall direct.

(6)     **INABILITY TO LOCATE PAYEE:**

Anything to the contrary herein notwithstanding, if the Plan Administrator is unable, after a reasonable effort, to locate any Participant or Beneficiary to whom an amount is distributable hereunder, such amount shall be forfeited. Notwithstanding the foregoing, however, such amount shall be reinstated if and when a valid claim for the forfeited amount is subsequently made by such Participant or Beneficiary or if the Plan Administrator receives proof of death of such person, satisfactory to the Plan Administrator; in such case, payment of the reinstated amount shall be made in accordance with the provisions of the Plan. Any benefits lost by reason

- 53 -

LMC 000324

of applicable state law relating to escheat or abandoned property shall be considered forfeited and shall not be subject to reinstatement.

(7)    **ROLLOVERS TO OTHER PLANS**:

    (a)    Notwithstanding any contrary provision hereof, a Distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

    (b)    The special capitalized terms used only in this Article shall have the meanings specified below:

        (i)    "Eligible Rollover Distribution" means any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include:  (1) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of ten years or more; (2) any distribution to the extent such distribution is required under Code Section 401(a)(9); and (3) the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

            With respect to distributions made after December 31, 2001, for purposes of the direct rollover provisions this section (7), a portion of a distribution shall not fail to be an Eligible Rollover Distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income.  However, such portion may be transferred only to an individual retirement account or annuity described in Code Section 408(a) or (b), or to a qualified defined contribution plan described in Code Section 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

        (ii)    "Eligible Retirement Plan" means an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Code Section 403(a), or a qualified trust described in Code Section 401(a), that accepts the Distributee's Eligible Rollover Distribution.  However, in the case of an Eligible Rollover Distribution to a surviving Spouse, only an individual retirement account or individual retirement annuity shall be an Eligible Retirement Plan.

- 54 -

LMC 000325

With respect to distributions made after December 31, 2001, for purposes of the direct rollover provisions in this section 7, an Eligible Retirement Plan shall also mean an annuity contract described in Code Section 403(b) and an eligible plan under Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relation order, as defined in Code Section 414(p).

(iii)  "Distributee" means an Employee or former Employee. In addition, the Employee's or former Employee's surviving Spouse and the Employee's or former Employee's Spouse or former Spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p), are Distributees with regard to the interest of the Spouse or former Spouse.

(iv)  "Direct Rollover" means a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

(c)  The provisions of this Article IX(7) shall apply only to distributions made after December 31, 1992 and only to the extent required by the plan qualification rules of Code Section 401(a).

- 55 -

LMC 000326

## ARTICLE X

## ADMINISTRATION

(1)   **CORPORATION**:

The Corporation shall have the authority for:

(a)   the design of the Plan and Trust Agreement, including the right to amend the Plan and the Trust Agreement; and

(b)   the qualification of the Plan under applicable law.

(2)   **INVESTMENT FIDUCIARY**:

(a)   <u>In General</u>.  The Investment Fiduciary is a Named Fiduciary of the Plan and shall be responsible for Plan investments and the appointment, removal and replacement of Investment Managers and the Trustee. Effective October 15, 1997, the Investment Fiduciary shall be Lockheed Martin Investment Management Company.  Prior to October 15, 1997, the Investment Fiduciary is a Benefit Plan Committee appointed in accordance with the provisions of the Plan as set forth in the Plan documents preceding this amendment and restatement of the Plan.

(b)   <u>Responsibilities</u>.  The Investment Fiduciary shall be responsible for, and have the necessary authority and discretion to carry out, the following:

(i)   appointment, removal and replacement of the Trustee;

(ii)   appointment, removal and replacement of one or more Investment Managers (as defined in Section 3(38) of ERISA), which shall be responsible for managing such portion of the Trust Fund as the Investment Fiduciary shall specify;

(iii)   establishment of investment policies;

(iv)   internal management and investment of such portion of the trust fund as the Investment Fiduciary shall specify;

(v)   setting strategic asset allocation guidelines, including the establishment of asset categories in which the Plan invests;

(vi)   appointment, removal and replacement of third party service providers (such as, insurance companies, consultants, and advisers) including setting or agreeing to the terms of compensation for such third party service providers;

(vii)   to the extent permitted by ERISA and the Code, paying reasonable expenses of administering the Plan from Plan assets;

LMC 000327