# EXHIBIT 2, Part 2

(viii)   all functions assigned to the Investment Fiduciary under the terms of the Plan and the Trust Agreement; and

(ix)    the exercise of all fiduciary functions concerning the investment of Plan assets provided in the Plan or the Trust Agreement, except such functions as are specifically assigned to another named fiduciary.

(c)    <u>Rules and Procedures</u>.  The Investment Fiduciary may adopt such rules to govern its own procedures as it may deem advisable, provided that such rules are not inconsistent with the provisions and purposes of the Plan or Trust Agreement.

(3)    **TRUSTEE:**

(a)    <u>In General</u>.  Any trustee of the Plan designated hereunder shall be a bank or trust company qualified under the laws of the United States or of any State to operate thereunder as a trustee.  The Trustee shall be a named fiduciary of the Plan.

(b)    <u>Responsibilities</u>.  The Trustee shall, unless otherwise directed by the Investment Fiduciary or an Investment Manager (if such has been appointed), have exclusive authority and discretion to manage and invest the assets of the trust fund, as provided in the Trust Agreement.  The Trustee shall further be responsible for the holding and disbursement of all contributions and income received by it under the Plan, as provided in the Trust Agreement, and shall have such other responsibilities as are provided in such agreement.

(4)    **PLAN ADMINISTRATOR:**

(a)    <u>In General</u>.  The Corporation is the Plan Administrator.  .  The Plan Administrator is a named fiduciary of the Plan and shall be responsible for administering the Plan and making and reviewing claim determinations.  The Corporation shall act through its Vice President, HR Services in performing its responsibilities as Plan Administrator.

(b)    <u>Responsibilities</u>.  The Plan Administrator shall be responsible for, and have the necessary authority and discretion to carry out the following:

(i)    determination of benefit eligibility and amount of benefits payable to Participants and Beneficiaries, as applicable, and certification thereof to the Trustee for payment from the trust fund;

(ii)    establishment of procedures to be followed by Participants and Beneficiaries, as applicable, for filing applications for benefits;

(iii)    appoint the committee(s) or other person(s) responsible for making and reviewing claim determinations as provided in Article X(9);

(iv)    interpretation and construction of Plan provisions;

- 57 -

LMC 000328

(v)    preparation and filing of all reports required to be filed by the Plan with any agency of Government;

(vi)    appointment, removal and replacement of third party service providers (such as, insurance companies, consultants, and advisers) including setting or agreeing to the terms of compensation for such third party service providers;

(vii)    maintenance of all records of the Plan other than those maintained by the Trustee or the Investment Fiduciary;

(viii)    compliance with all disclosure requirements imposed by state or federal law;

(ix)    establishment of a funding policy; and

(x)    all functions assigned to the Plan Administrator under the terms of the Plan or the Trust Agreement.

The Plan Administrator and its delegates shall have full discretion to construe and interpret the terms and provisions of the Plan, which interpretation or construction shall be final, conclusive and binding on all parties, including but not limited to the Corporation and any Participant or Beneficiary, except as otherwise provided by law.

(5)    **ALLOCATION OF NAMED FIDUCIARIES' RESPONSIBILITIES**:

Each Named Fiduciary is allocated the individual responsibility for the prudent execution of the functions assigned to him, and none of such responsibilities or any other responsibility shall be shared by two or more of such Named Fiduciaries unless such sharing shall be provided by a specific provision of the Plan or Trust Agreement. Whenever one Named Fiduciary is required by the Plan or Trust Agreement to follow the directions of another Named Fiduciary, the two Named Fiduciaries shall not be deemed to have been assigned a shared responsibility, but the responsibility of the Named Fiduciary giving the directions shall be deemed his sole responsibility, and the responsibility of the Named Fiduciary receiving those directions shall be to follow them insofar as such instructions are on their face proper under applicable law.

(6)    **AUTHORITY TO BIND PLAN**:

Persons dealing with the Plan may rely on the actions of the Investment Fiduciary or the Plan Administrator as duly authorized actions of the Plan with respect to matters within their respective areas of responsibility. Such persons may act upon written communications signed by the Investment Fiduciary or the Plan Administrator, as applicable.

(7)    **DELEGATION OF AUTHORITY**:

Persons dealing with the Plan may act upon the authority of any agent appointed in writing by the Investment Fiduciary or the Plan Administrator to act on their behalf, and the authority of any such agent shall be deemed to continue until revoked in writing.

LMC 000329

(8)     **INDEMNIFICATION**:

To the extent permitted by law, the Corporation shall indemnify each person who is an employee of the Investment Fiduciary or member of the Board of Directors of the Investment Fiduciary or an employee of the Corporation or any Employing Company against any and all expenses and/or liabilities arising out of service of the Plan.

(9)     **CLAIM REVIEW PROCEDURE**:

The following claim review procedure will apply to claims filed on or after January 1, 2002.

(a)     Any participant, beneficiary, surviving spouse, or contingent annuitant, or other person who is entitled to a payment of a benefit for which provision is made in this Plan shall file a written claim with the Plan Administrator or its delegate.  If a claim is wholly or partially denied, the Plan Administrator shall, within 90 days after receipt of the claim (45 days after receipt of claim, in the case of a disability benefit claim), furnish to the claimant a written notice setting forth, in a manner calculated to be understood by the claimant:  (1) the specific reason or reasons for the denial; (2) specific reference to the pertinent Plan provisions on which the denial is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (4) an explanation of the steps to be taken if the claimant wishes to have the denial reviewed as provided in paragraph (b); and (5) a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.  For claims other than disability benefit claims, the 90 day period may be extended for not more than an additional 90 days if special circumstances make such an extension necessary. For disability benefit claims, the 45 day period may be extended for not more than two additional periods of 30 days each if the Plan Administrator determines that such extension is necessary due to matters beyond the control of the Plan. Except for disability benefit claims, the Plan Administrator shall give the claimant, before the end of the initial 90 day period, a written notice of such extension, stating such special circumstances and the date by which the Plan Administrator expects to render a decision. In the case of a disability benefit claim, the Plan Administrator shall give the claimant, before the end of the initial 45 day period (or, in the case of a second extension, before the end of the first 30 day extension period), a written notice of such extension, stating the circumstances requiring an extension of time and the date by which the Plan Administrator expects to render a decision, and the notice of extension shall specifically explain the standards on which entitlement to benefits is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues. If the extension is made because the claimant must furnish additional information, the 30 day periods will begin when the additional information is received.

(b)     By a written application filed with the Plan Administrator within 60 days (in the case of a disability benefit, 180 days) after receipt by a claimant of the written notice described in paragraph (a), the claimant or his duly authorized representative may request a review of the denial of his claim.

- 59 -

LMC 000330

(c)     In connection with such review, the claimant or his duly authorized representative may submit issues, comments, documents, records and other information relating to the claim for benefits to the Plan Administrator. In addition, the claimant will be provided, upon request and free of charge, reasonable access to and copies of all documents, records and other information "relevant" to the claimant's claims for benefits. A document, record or other information is "relevant" if it: (1) was relied upon in making the benefit determination; (2) was submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record or information was relied upon in making the benefit determination; or (3) demonstrates compliance with the administrative processes and safeguards required under federal law.

(d)     The Plan will provide an impartial review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination. The review will give no deference to the original claim decision. The review will not be made by the person or persons who made the initial claim decision or by a subordinate of such person. In performing the review of an adverse benefit determination that is based in whole or part on a medical judgment, the Plan Administrator shall consult with a health care professional who has appropriate training and experience in the filed of medicine involved in the medical judgment. Such a person shall not be a person who was consulted in the initial benefit determination or a subordinate of such person. Any medical or vocational experts whose advice was obtained on behalf of the Plan in connection with an adverse benefit determination will be identified, without regard to whether the medical advice was relied on in making the benefit determination. The Plan Administrator shall make a decision and furnish such decision in writing to the claimant within 60 days (45 days, in the case of a disability benefit claim) after the receipt by the Plan Administrator of the request for review. This period may be extended to not more than 120 days (90 days, in the case of a disability benefit claim) after such receipt if special circumstances make such an extension necessary. The claimant will be notified in writing prior to the expiration of the original 60 day period (45 day period, in the case of a disability benefit claim) if such an extension is required, and such notice will include the reason for the extension and the date by which it is expected that a decision will be reached.

(e)     The decision on review shall be in writing, set forth in a manner calculated to be understood by the claimant and shall include: (1) specific reasons for the decision; (2) specific references to the pertinent Plan provisions on which the decision is based; (3) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records and other information "relevant" to the claimant's claims for benefits, as determined under (c) above; (4) in the case of a disability benefit claim, if an internal rule, guideline, protocol or similar criterion (cumulatively a "Rule") was relied on in making the adverse determination, either (i) the specific Rule or (ii) a statement that such Rule was relied upon in making the adverse benefit  determination and that a copy of the Rule will be provided free of charge to the claimant upon request; (5) a statement describing any voluntary appeal procedures and the claimant's right to obtain information about such procedures, if any;

- 60 -

and (6) a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

(f)       The decisions of the Plan Administrator on matters of denial of claims shall be final and binding on all parties for the purpose of review under the provisions of the Plan. The Plan Administrator and its delegates shall have full discretion to interpret and construe the terms and provisions of the Plan.

(g)       For purposes of this Claims Review Procedure, Plan Administrator shall mean the Plan Administrator or its delegate, including the Administrative Committee ( the Committee designated by the Plan Administrator to review claims) or such other person(s) as designated by the Plan Administrator. For purposes of this Claims Review Procedure, claimant shall include the duly authorized representative of claimant, if any. For purposes of this Claims Review Procedure, disability benefit claim will mean a claim or appeal relating to disability retirement benefits (within the meaning of CFR 2560.503-1).

LMC 000332

**ARTICLE XI**
**PLAN FINANCING**

(1)    **CONTRIBUTIONS**:

The Employing Companies shall make contributions to the Pension Fund at such times and in such amounts as the Board of Directors or their delegees shall determine and as may be necessary to keep the Pension Fund actuarially sound in accordance with the funding policy from time to time in effect.  Fund gains arising because of severance of employment before Participants become eligible for a benefit, or for any other reason, shall be applied to reduce the cost of the Plan. All contributions are conditioned upon the deductibility of the contribution for federal income tax purposes.

(2)    **PENSION FUND**:

   (a)    The Corporation has established the Pension Fund into which shall be paid the contributions made under the terms of the Plan.  The Pension Fund may comprise a trust fund held by a trustee or trustees or a group annuity contract or contracts, or other forms of insurance contracts including a deposit administration contract or contracts, or any combination thereof.

   (b)    The Pension Fund is for the exclusive benefit of Participants and Beneficiaries and may also be used to pay any reasonable expenses arising from the administration and operation of the Plan.  At no time prior to the satisfaction of all liabilities for benefits under the Plan and expenses of the Plan, to the extent such expenses are not otherwise paid, shall any part of the corpus or income of the Pension Fund of the Plan be used for, or diverted to, any other purpose. Notwithstanding the foregoing, contributions will be returned to the Employing Companies in the following circumstances:

      (i)    the contribution was made by mistake of fact; provided however, that the contribution is returned within one year after the payment of the contribution; or

      (ii)    the contribution is not deductible when made, provided however, the contribution is returned within one year after the deduction is disallowed, and the contribution is returned only to the extent the deduction is disallowed.

   (c)    No person shall have any interest in or right to the Pension Fund or any part thereof, except as expressly provided in the Plan.

   (d)    No liability for the payment of benefits under the Plan shall be imposed upon the Plan Administrator, any Employing Company, or the officers, directors or stockholders of any Employing Company, except as and only to the extent, expressly provided by law.

- 62 -

LMC 000333

(e)    No fiduciary guarantees the Pension Fund in any manner against investment loss or depreciation of asset values.

LMC 000334

# ARTICLE XII

## NON-ALIENATION OF BENEFITS;
## LIMITATIONS CONCERNING 25 HIGHEST PAID EMPLOYEES

**(1)    NON-ALIENATION OF BENEFITS**:

No benefit which shall be payable under the Plan nor any interest hereunder shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, attachment, execution, or the claims of creditors of any person having an interest hereunder except pursuant to a qualified domestic relations order, as defined in Code Section 414(p), or any domestic relations order entered before January 1, 1985 that is determined by the Plan Administrator to be consistent with the terms of the Retirement Equity Act of 1984.  If any person who shall be entitled to any benefit under the Plan shall become bankrupt or shall attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge such benefit, or if any person shall attempt to garnish, attach, execute or otherwise encumber a benefit payable or to become payable under the Plan to any Participant or any other person entitled thereto, the Plan Administrator may cause such benefit, or any part thereof, if in accordance with applicable law, to be held or applied for the benefit of such Participant or other person or his Spouse, children, or other relatives or dependents, or all or any of them, in such manner as the Plan Administrator shall determine, and any such application shall be a complete discharge of all liability with respect to such benefit.  Notwithstanding any Plan provision to the contrary, an Employee's Plan benefits shall be reduced if a court order or requirement to arises from (i) a judgment of conviction for a crime involving the Plan; (ii) a civil judgment (or consent order or decree) that is entered by a court in an action brought in connection with a breach or an alleged breach of fiduciary duty under ERISA; or (iii) a settlement agreement entered into by the Employee and either the Secretary of Labor or the Pension Benefit Guaranty Corporation in connection with a breach of fiduciary duty under the ERISA by a fiduciary or any other person. Anything herein to the contrary notwithstanding, an authorization of pension deduction for retired welfare benefits or union dues duly executed by a Participant or surviving Spouse may be implemented.

**(2)    LIMITATIONS CONCERNING 25 HIGHEST PAID EMPLOYEES**:

In the event of termination of the Plan, the benefit of any highly compensated employee (as defined in Code Section 414(q) and the regulations thereunder) is limited to a benefit that is nondiscriminatory under Code Section 401(a)(4).

Benefits distributed to any of the 25 most highly compensated Employees are restricted such that the annual payments are no greater than an amount equal to the payment that would be made on behalf of the Employee under a single life annuity that is the actuarial equivalent of the sum of the Employee's accrued benefit and the Employee's other benefits under the relevant Plan.

The preceding paragraph shall not apply if:  (a) after payment of the benefit to an Employee described in the preceding paragraph, the value of Plan assets equals or exceeds 110% of the

LMC 000335

value of current liabilities, as defined in Code Section 412(l)(7), or (b) the value of the benefits for an Employee described above is less than 1% of the value of current liabilities.

For purposes of this Article, "benefit" includes any death benefits not provided for by insurance on the Employee's life.

LMC 000336

## ARTICLE XIII

## AMENDMENT AND/OR TERMINATION OF PLAN; ALLOCATION OF PLAN PENSION FUND

**(1)     RIGHT TO AMEND AND/OR TERMINATE:**

The Corporation reserves the right, subject to the applicable requirements of the Code and ERISA, to change, suspend or terminate any Plan at any time.

Any amendment, modification or alteration of the Plan shall be adopted by action of, or pursuant to authority granted by, the Board of Directors.  No such action shall adversely affect the accrued benefits of Participants, provided, however, that the Corporation may make any amendment or modification (of retroactive effect, if necessary) to establish and maintain the Plan's qualification under Code Section 401(a) and to bring the Plan into full compliance with ERISA and any successor legislation.

Any amendment may provide for the merger or consolidation of the Plan with another retirement plan and for the transfer of the assets and liabilities of the Plan to another retirement plan, provided that each Participant in the Plan would (if the Plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan had then terminated).

If the Plan's vesting schedule is amended or the Plan is amended in any way that directly or indirectly affects the computation of a Participant's nonforfeitable percentage, or if the Plan is deemed amended by an automatic change to or from a top-heavy vesting schedule, each Participant with at least three years of service with an Employing Company may elect within a reasonable period after the adoption of the amendment or change, to have his nonforfeitable percentage computed under the applicable Plan without regard to such amendment or change. The period during which the election may be made shall commence with the date the amendment is adopted or deemed to be made and shall end on the latest of:

      (a)     60 days after the amendment is adopted;

      (b)     60 days after the amendment becomes effective; or

      (c)     60 days after the Participant is issued written notice of the amendment by the Employing Company or Plan Administrator.

**(2)     TERMINATION AND ALLOCATION OF PLAN PENSION FUND:**

In the event of termination or partial termination of the Plan, each affected Participant's accrued benefit, determined in accordance with the provisions of the Plan and his participation to the date of such termination, shall become fully vested and nonforfeitable to the extent funded and shall be guaranteed by the Pension Benefit Guaranty Corporation, subject to certain limitations prescribed by ERISA.  The Pension Fund shall be used to pay or provide for benefits and other costs of the Plan in accordance with ERISA Section 4044.

- 66 -

LMC 000337

In the event that there is an amount remaining in the affected Pension Fund after provision for all benefits and expenses in accordance with the foregoing, such amount shall be returned to the Corporation, provided however, that no assets transferred from the GE Pension Plan to RIP II shall ever revert to the Corporation or to an Employing Company. Notwithstanding anything in the Plan to the contrary, the Salaried Plan shall remain subject to the "Provisions Applicable in the Event of a Change in Control" of Section 14.05 of the Plan in effect on June 30, 1997, to the extent required by such plan.

LMC 000338

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

(1)   **BOARD OF DIRECTORS**:

Wherever in the Plan any power is stated to depend on action of the Board of Directors, such action may be taken by others pursuant to a proper delegation of authority to such persons by the Board of Directors.

(2)   **GENDER AND NUMBER**:

In construing the text of the Plan, wherever applicable, the masculine shall include the feminine, and vice-versa, and the singular shall include the plural, and vice-versa, except where the context requires otherwise.

(3)   **GOVERNING LAW**:

The Plan and all provisions thereof shall be governed by the laws of the State of Maryland, except to the extent they are preempted by ERISA or by other federal law.  The Plan is intended to comply with applicable provisions of ERISA and the Code.

(4)   **APPROVAL BY U.S. TREASURY DEPARTMENT AND ERISA**:

The Corporation reserves the right to make such amendments to the Plan, with or without retroactive effect, as will enable the Plan to qualify for tax purposes under regulations of the Internal Revenue Service and comply with the requirements of ERISA and any successor legislation.

(5)   **RELATIONSHIP BETWEEN EMPLOYING COMPANIES AND EMPLOYEES**:

The adoption and maintenance of the Plan shall not be deemed to constitute or modify a contract between any Employing Company and any Employee or Participant or to be a consideration or inducement for or condition of the performance of services by any person.  Nothing herein contained shall be deemed to give to any Employee or Participant the right to continue in the service of any Employing Company, to interfere with the right of an Employing Company to discharge any Employee or Participant at any time, or to give an Employing Company the right to require an Employee or Participant to remain in its service or to interfere with his right to terminate his service at any time.

(6)   **TITLES AND HEADINGS**:

The titles and headings of the articles and sections in the Plan are placed herein for the convenience of reference only, and, in the case of any conflict between the words of the text of the Plan and the titles or headings, the text shall control.

- 68 -

LMC 000339

(7)    **SEPARABILITY**:

If any provision of the Plan is found, held, or deemed to be void, unlawful, or unenforceable under any applicable statute or other controlling law, the remainder of the Plan shall continue in full force and effect.

(8)    **EXPENSES**:

Subject to the provision of any applicable law or the Plan, all reasonable expenses related to the operation and administration of the Plan, including the compensation of the Trustee, Investment Managers, and service providers, shall be charged to the assets of the Plan in general, if not paid by an Employing Company.

(9)    **PARTICIPANTS' PROTECTED RIGHTS**:

In addition to all rights expressly provided under this document, a Participant or Beneficiary shall have such rights as are required to be provided to such person by reason of Code Section 411(d)(6). Any Plan provision in conflict with the preceding sentence shall be void to the extent of such conflict.

(10)   **PARTICIPANTS' CONSENT TO BE BOUND BY PLAN DOCUMENT**:

Each Participant, by his participation in the Plan, shall be conclusively deemed to have consented to all the terms and conditions of the Plan, as the same may be amended from time to time, and shall be bound thereby with the same force and effect as if he were a party to the Plan.

LMC 000340

## ARTICLE XV

## MEDICAL EXPENSE ACCOUNT

(1)   **ESTABLISHMENT OF MEDICAL EXPENSE ACCOUNT**:

Medical Expenses (as defined in paragraph (4) below) incurred by certain retired Participants and their dependents (referred to as "Eligible Individuals" in this Article XV) shall be payable under the Plan, to the extent provided in this Article XV. The Trustee shall maintain separate accounts in the Pension Fund known as Medical Expense Accounts for the purpose of paying Medical Expenses of Eligible Individuals in accordance with this Article XV.

(2)   **CONTRIBUTIONS TO THE MEDICAL EXPENSE ACCOUNT**:

    (a)   The Corporation may in its sole discretion make contributions from time to time to the Medical Expense Accounts. No employee contributions to a Medical Expense Account shall be required or permitted. Any contribution to the Medical Expense Accounts shall be designated by the Corporation as such and shall be accounted for separately from all other assets held in the Pension Fund.

    (b)   In no event, shall the contributions made to the Plan with respect to the Medical Expense Accounts exceed limitations on such contributions imposed by Code Section 401(h). Amounts contributed to the Medical Expense Accounts in the aggregate shall be reasonable and ascertainable. Medical Expenses paid from Medical Expense Accounts are intended to be subordinate to the Plan's retirement benefits. Accordingly, the aggregate actual contributions to the Plan made on or after the date the Medical Expense Accounts were adopted for the purpose of paying Medical Expenses, when combined with actual contributions for life insurance protection under the Plan, shall not exceed 25% of the total actual contributions to the Plan (other than contributions to fund past service credits).

    (c)   Notwithstanding anything herein to the contrary, nothing contained in the Plan shall obligate the Corporation to make any contribution to the Medical Expense Accounts, and nothing herein shall obligate the Corporation to institute or continue a plan or program for paying Medical Expenses. In the event a Participant's interest, if any, in the Medical Expense Accounts is forfeited prior to the termination of the Plan, the amount of the forfeiture shall be used as soon as practicable to reduce contributions to fund the Medical Expense Accounts.

(3)   **MEDICAL EXPENSES PAYABLE FROM MEDICAL EXPENSE ACCOUNTS**:

The amount of the Medical Expense payable from the Medical Expense Account shall be the amount payable or reimbursable with respect to such Eligible Individual under the plan or program listed in Appendix C in which he is a participant at the time the expense was incurred, less the amounts paid, if any, with respect to the expense from any voluntary employee beneficiary association under Code Section 501(c)(9) or from any other plan or arrangement providing for the payment of Medical Expenses established by any Employing Company

- 70 -

LMC 000341

(including payments made from an Employing Company's general assets). Notwithstanding the foregoing, the Pension Fund shall not have any obligation to pay any Medical Expenses in the event there are insufficient funds in a particular Medical Expense Account to pay any such Medical Expense to a Participant in the Plan.

(4)   **APPLICABILITY OF OTHER RULES**:

Neither the Medical Expense Accounts (or any part thereof) nor any amounts payable thereunder shall (a) constitute part of the accrued benefit of any individual, (b) be protected by Code Section 411(d)(6) or ERISA Section 204(g) from reduction or elimination, (c) be subject to ERISA Section 204(h), (d) be subject to Code Section 401(a)(11) or ERISA Section 205, (e) be subject to any other requirements set forth in the Code or ERISA that are not legally required to be applicable, or (f) be subject to any Plan provisions implementing any of the Code or ERISA provisions referred to in this sentence. No Participant has a nonforfeitable right to any benefit under this Article XV.

(5)   **IMPOSSIBILITY OF DIVERSION**:

Prior to the satisfaction of all liabilities for Medical Expenses payable under paragraph (3), no funds in the Medical Expense Accounts shall be used for, or diverted to, any purpose other than the payment of Medical Expenses or the payment of any necessary or appropriate expenses attributable to the administration of the Medical Expense Account.

(6)   **TERMINATION OF MEDICAL EXPENSE ACCOUNT**:

If the Medical Expense Account is terminated and the Plan remains effective or if the Plan is terminated, any surplus funds shall be returned to the Corporation, in accordance with Code Section 401(h). For this purpose, the term "surplus funds" shall mean funds in the Medical Expense Account that are not required under the terms of this Article XV (as amended as of such time) to be used to provide Medical Expenses on behalf of Eligible Individuals or to be used to pay for other liabilities arising out of the operation of the Medical Expense Account.

(7)   **401(h) REQUIREMENTS**:

This Article XV and the establishment and operation of the Medical Expense Account are intended to comply with Code Section 401(h), and all provisions of this Article XV shall be interpreted and applied in such a manner as to achieve this purpose.

(8)   **DEFINITIONS**:

(a)   Eligible Individual:

For the purpose of this Article XV, "Eligible Individual" shall mean a Participant (other than a Participant who is or has been a key employee within the meaning of Code Section 416(i)) who is (i) receiving a retirement benefit under Article IV after retiring directly from active service as a regular salaried Employee of the Corporation; (ii) who is eligible to elect and has elected medical coverage under one of the medical benefit plans listed in Appendix C (or is eligible to receive such benefits in the case of a Participant who retired

- 71 -

LMC 000342

prior to January 2, 1989), and (iii) who is not a member of a collective bargaining unit.  A spouse or dependent (within the meaning of Code Section 152) of such an Eligible Individual shall also qualify as an Eligible Individual if the spouse or dependent is eligible for coverage under one of the medical benefit plans listed in Appendix C (or in the case of a spouse or a dependent of a Participant who retired on or after January 2, 1989, has been enrolled by the Participant to receive benefits under one of the medical benefit plans included in Appendix C).  Such a spouse or dependent will remain an Eligible Individual upon the death of the Participant to the extent he or she remains eligible for benefits under the applicable plan listed in Appendix C.

(b)     Medical Expenses:

For purposes of this Article XV, Medical Expenses shall mean expenses with respect to a particular Eligible Individual for medical care as defined in Code Section 213 which are (i) subject to reimbursement or payment under the plan or program listed in Appendix C in which such Eligible Individual is a participant at the time the expense is incurred; or (ii) premiums to purchase insurance coverage to provide reimbursement or payment of expenses under the plan or program listed in Appendix C in which such Eligible Individual is a participant.

LMC 000343

# ARTICLE XVI

## RETROACTIVE ANNUITY STARTING DATES

This Article XVI is effective January 1, 2004, and shall apply only where a provision of the Plan (other than this Article) provides for a Retroactive Annuity Starting Date within the meaning of the Treasury regulations on retroactive annuity starting dates. This Article is only intended to supplement any existing Plan provision which provides for a Retroactive Annuity Starting Date, and does not operate to create a Retroactive Annuity Starting Date or provide for retroactive payment of benefits where not otherwise established under the Plan.

(a)  General. Benefit payments may be made retroactively under this Article where the explanation required under Code Section 417(a)(3)(A) is provided on or after the Participant's scheduled Annuity Starting Date. In this case, the Annuity Starting Date will be called a "Retroactive Annuity Starting Date", subject to modified procedures and benefit calculations as described in subsections (b) and (c) below. A Retroactive Annuity Starting Date is subject to the limitations described in subsection (d) below.

(b)  Procedures

(i)  Explanation and Election. The 90-day election period described in Code Section 417(e)(3) will end on the Participant's Actual Payment Date, rather than the Annuity Starting Date.

(ii)  Participant consent. Participant consent, in a manner prescribed by the Plan Administrator, is required for a Retroactive Annuity Starting Date.

(iii)  Spousal consent. Spousal consent is generally required for a Retroactive Annuity Starting Date. Notwithstanding the foregoing, no Spousal consent is required with respect to a Retroactive Annuity Starting Date if subsection (A) is equal to or greater than subsection (B) below.

(A)  Monthly payments to be made to the surviving Spouse under the chosen optional form of benefit, calculated as of the Retroactive Annuity Starting Date.

(B)  Monthly payments to be made to the surviving Spouse under a 50% Joint and Survivor Option calculated based on an Annuity Starting Date scheduled after the explanation required under Code Section 417(a)(3)(A) is provided.

For purposes of this subpart (iii), the Spouse is determined as of the Actual Payment Date.

- 73 -

LMC 000344

(c)     Benefit Calculations. In general, benefits commencing on the Retroactive Annuity Starting Date will be calculated using the actuarial assumptions applicable for this date (rather than the Actual Payment Date) (i.e., determinations of Actuarial Equivalence are made as of the Retroactive Annuity Starting Date). See below for special rules.

  (i)     Actuarial Assumptions. A benefit payable in a form subject to Code Section 417(e)(3) will be the greater of the amount calculated using the definition of Actuarial Equivalence applicable to the Actual Payment Date and the amount calculated using the definition of actuarial equivalence applicable to the Retroactive Annuity Starting Date.

  (ii)    Make-up Payments. Make-up payments will be provided for any missed payments due to the delay between the Retroactive Annuity Starting Date and the Actual Payment Date, with an adjustment for interest to the extent required.

  (iii)   415 Limits. In general, a benefit payable under this Section will be subject to the requirements of Code Section 415 as applicable for the year of the Retroactive Annuity Starting Date.

  Notwithstanding the foregoing, the following benefits payable under this Section will be subject to the requirements of Code Section 415 as applicable for the year of the Actual Payment Date (in lieu of the year of the Retroactive Annuity Starting Date):

    (A)     A benefit payable in the form subject to Code Section 417(e) (3).

    (B)     A benefit payable in any other form, where the Actual Payment Date is more than twelve months after the Retroactive Annuity Starting Date.

(d)     Limitations.

  (i)     Except where otherwise required under an express Plan provision, in no event will a Retroactive Annuity Starting Date be earlier than the date a Participant properly notifies the Plan Administrator in accordance with established procedures of his or her intent to commence benefits. If the Participant is no longer employed by a member of the Controlled Group, he or she will be deemed to have notified the Plan Administrator of his or her intent to commence benefits upon attaining Normal Retirement Age.

  (ii)    In no event will a Retroactive Annuity Starting Date be earlier than the Participant's termination of employment, or the date the Participant ceases to accrue Credited Service (if later).

- 74 -

LMC 000345

(e)     Definitions. For purposes of this Article, the following definitions apply:

(i)     An "Annuity Starting Date" is the first day of the month for which a retirement benefit is payable as an annuity under the terms of the Plan.

(ii)    A "Retroactive Annuity Starting Date" is an Annuity Starting Date affirmatively elected by a Participant that occurs on or before the date the written explanation under Code Section 417(a)(3)(A) is provided, subject to the limitations in subsection (d) above.

(iii)   The "Actual Payment Date" is the date benefit payments actually commence.

LMC 000346

ADDENDUM I

## SPECIAL PROVISIONS APPLICABLE TO EMPLOYEES INVOLVED IN ACQUISITIONS AND DIVESTITURES

Notwithstanding any provision in the Plan to the contrary, this Addendum I applies to the benefits of certain Participants who cease to be employed by an Employing Company or a member of the Control Group as a result of a Divestiture or certain other transactions or who become employed by an Employing Company as a result of certain acquisitions.

A.   General Provisions With Respect to Divestitures.

(1)   For the purposes of this Section A of Addendum I, the following terms shall have the following meanings:

    (a)   "Affected Participant" shall mean a Participant who is employed by an Employing Company or a member of the Control Group on the day immediately preceding the Closing Date and who is employed by the Buyer on the Closing Date.  Notwithstanding the foregoing, an Affected Participant does not include any Participant whose liabilities under the Plan are assumed by the Buyer (or a plan sponsored by the Buyer) and with respect to which the Plan makes a transfer of assets and liabilities to a plan sponsored by the Buyer.

    (b)   "Buyer" shall mean the entity that acquires the assets or subsidiary sold in a Divestiture.

    (c)   "Closing Date" shall mean the date on which the Divestiture closes, becomes effective or is consummated.

    (d)   "Divestiture" shall mean any of the following transactions:

        (i)   Sale of the Price Systems businesses which closed on June 30, 1998 and which was pursuant to the Asset Purchase Agreement dated as of June 30, 1998 (and effective as of June 28, 1998) by and among Lockheed Martin Corporation, Price Systems L.L.C. and Anthony A. DeMarco; and

        (ii)   Sale of Lockheed Martin Defense Systems (Burlington, Vt. and Pittsfield, Mass.) businesses which closed on January 1, 1997 and which was pursuant to the Asset Purchase and Sale Agreement between Lockheed Martin Corporation and General Dynamics Corporation dated as of November 6, 1996; and

        (iii)   Sale of the Sanders Machining Center to PGM of New England, LLC, which closed on or about July 31, 2000 and which is pursuant to the Purchase Agreement dated as of June 26, 2000 between Lockheed Martin Corporation and PGM of New England, LLC and Precision Grinding and Manufacturing Corporation; and

- 76 -

LMC 000347

> (iv) Sale of Lockheed Martin Energy Technologies, Inc. and Retech Services, Inc. businesses, which closed on or about November 30, 2000 and which are pursuant to the Agreements and Plan of Mergers between Lockheed Martin Corporation and Quadratech LLC, LMET LLC, Lockheed Martin Energies Technologies, Inc., Retech LLC, and Retech Services Inc; and
>
> (v) Sale of Lockheed Martin IMS Corporation, which closed on or about August 13, 2001 and which is pursuant to the Stock Purchase Agreement between Lockheed Martin Corporation, Lockheed Martin Investments, Inc. and Affiliated Computer Services, Inc; and
>
> (vi) Sale of the Commercial Systems and Services Businesses to Integrated Systems Analysis, Inc., which closed on October 29, 1999 and which is pursuant to the Purchase Agreement dated as of October 21, 1999 by and between Lockheed Martin Corporation and Integrated Systems Analysis, Inc.; and
>
> (vii) Sale of the Lockheed Martin CES Business Unit and the GM Contract Assets which is pursuant to the Asset Purchase Agreement between Lockheed Martin Services, Inc. and Affiliated Computer Services, Inc. dated as of July 31, 2003; and
>
> (viii) Sale of the ownership interest of the Corporation (and its subsidiaries) in Lockheed Khrunichev Energia International, Inc. and International Launch Services, Inc. which is pursuant to the Securities Purchase Agreement dated as of October 11, 2006 between Lockheed Martin Commercial Space Systems, Inc., Lockheed Martin Commercial Launch Systems, Inc,, Lockheed Martin Corporation and Space Transport, Inc.

(2) Unless otherwise explicitly provided in the Plan or in this Addendum I, any Affected Participant who Terminates Employment with the Buyer after the Closing Date shall be treated as retiring under Article IV(2) if such Participant begins receiving benefits on or after the first of the month after attaining age 55 and shall be treated as retiring under Article IV(1) if such Participant begins receiving benefits on or after the first of the month after attaining age 65, provided such Affected Participant, as of the Closing Date, either:

> (e) had earned at least 25 years of Benefit Eligibility Service; or
>
> (f) had attained age 50 and had earned at least five years of Benefit Eligibility Service.

(3) Unless otherwise explicitly provided in the Plan or in this Addendum I, each Affected Participant shall be 100% vested in his Accrued Benefit under the Plan as of the Closing Date.

- 77 -

LMC 000348

B.  Special Provisions For Certain Other Transactions Involving Sales of Businesses.

(1)  Real 3D, Inc.

    (a)    Section A of this Addendum I shall apply to employees who were Participants in the Plan on December 31, 1997 and who became employees of Real 3D, Inc. on December 31, 1997 ("Affected Real 3D Participants"). The term "Closing Date" when applied to employees of Real 3D, Inc. shall mean the date on which Real 3D ceased to be a member of the Control Group.

    (b)    Effective December 31, 1997, Real 3D, Inc. shall be considered an Employing Company but only with respect to Affected Real 3D Participants. Effective December 31, 1998, Affected Real 3D Participants shall cease to accrue benefits under the Plan; provided however, that if Real 3D, Inc. ceases to be a member of the Control Group prior to December 31, 1998,

        (i)    Affected Real 3D Participants shall cease to accrue benefits on the date Real 3D, Inc. ceases to be a member of the Control Group;

        (ii)    compensation earned by an Affected Real 3D Participant on or after the date Real 3D, Inc. ceases to be a member of the Control Group and before January 1, 1999 shall be treated as Pensionable Earnings under the Plan; and

        (iii)    service for Real 3D Inc. by an Affected Real 3D Participant on or after the date Real 3D, Inc. ceases to be a member of the Control Group and before January 1, 1999 shall be treated as service for all purposes under the Plan.

    (c)    Service for Real 3D, Inc. by an Affected Real 3D Participant from December 31, 1998 until such Affected Real 3D Participant incurs a termination of service from Real 3D, Inc. shall be treated as Benefit Eligibility Service.

    (d)    Any Affected Real 3D Participant who is employed by Real 3D, Inc. on December 31, 1998 shall become 100% vested in their Accrued Benefit as of that date.

    (e)    The determination of the amount of service and compensation of an Affected Real 3D Participant for purposes of this paragraph B(1) shall be made by the Plan Administrator based on the records of Real 3D, Inc.; provided however, that no benefits shall be paid under this Addendum I in respect of an Affected Real 3D Participant if such participant fails to provide information or records requested by the Plan Administrator.

LMC 000349

(2)     United Space Alliance, Inc. ("USA")

    (a)     Section A of this Addendum I shall not apply to Participants whose employment is transferred by the Corporation to USA ("USA Affected Participants"). For the purposes of this paragraph 2(a), the date on which a Participant ceased to be employed by a member of the Control Group and commenced employment with USA shall be considered the Participant's "USA Transfer Date."

    (b)     Service by a USA Affected Participant with USA from that Participant's USA Transfer Date until the earlier of

        (i)      termination of service with USA; or

        (ii)     commencement of receipt of benefits under the Plan

    shall be deemed to be Benefit Eligibility Service under the Plan. The determination of the amount of such service to be treated as Benefit Eligibility Service shall be made by the Plan Administrator based on the records of USA. For the purposes of this paragraph 2(b), such service shall be considered "USA Service." Notwithstanding anything herein to the contrary, no benefits shall be paid under this Addendum I in respect of an Affected USA Participant if such participant fails to provide information or records requested by the Plan Administrator

    (c)     Compensation earned by a USA Affected Participant during such individual's USA Service shall be considered Pensionable Earnings and shall be used to determine Final Average Pensionable Earnings for purposes of determining such Participant's Accrued Benefit. The determination of the compensation to be treated as Pensionable Earnings and Final Pensionable Earnings shall be made by the Plan Administrator based on the records of USA; provided however, that no benefits shall be paid under this Addendum I in respect of an Affected USA Participant if such participant fails to provide information or records requested by the Plan Administrator.

    (d)     Commencement of benefits under the Plan upon retirement from USA shall be considered retirement from active service from the Corporation for purposes of Article IV(1) and Article IV(2). An Affected USA Employee shall be considered to have retired from USA if he terminates service from USA, without having previously terminated service from USA, on or after attaining age 55.

(3)     Controls Systems Business

    Section A of this Addendum shall not apply to Controls Transferred Participants (as defined herein).Effective as of September 25, 2000 (the "Transaction Closing Date"), all liabilities under the Salaried Plan, RIP, or RIP II with respect to Controls Transferred Participants were spun-off, transferred to, and assumed by the BAE SYSTEMS Employees' Retirement Plan and accompanying trust (the "BAE Plan and Trust"), and

LMC 000350

no benefit with respect to a Controls Transferred Participant will be payable from the Salaried Plan, RIP, or RIP II. For purposes hereof, "Controls Transferred Participant" means a person who was an employee of the Corporation in its Controls System Business (either as an active employee or an employee on leave of absence, but not including long term disability or layoff) immediately prior to the Transaction Closing Date who participated in the Salaried Plan, RIP, or RIP II immediately prior to the Transaction Closing Date and with respect to whom assets and liabilities have been transferred to the BAE Plan and Trust.

(4)     AES Business

Section A of this Addendum I shall not apply to AES Transferred Participants (as defined herein). Effective as of November 27, 2000 (the "Transaction Closing Date"), all liabilities under the Salaried Plan, RIP, or RIP II with respect to AES Transferred Participants were spun-off, transferred to, and assumed by the BAE SYSTEMS Information and Electronic Systems Integration Pension Plan and accompanying trust (the "BAE IESI Plan and Trust"), and no benefit with respect to an AES Transferred Participant will be payable from the Salaried Plan, RIP, or RIP II. For purposes hereof, "AES Transferred Participant" means a person who (A) either (i) was an employee of the Corporation in its AES Business (either as an active employee or an employee on leave of absence) immediately prior to the Transaction Closing Date who had an accrued benefit under the Salaried Plan, RIP, or RIP II as of the Transaction Closing Date or (ii) had been an employee of the Corporation in the AES Business immediately before his retirement or other termination and had an accrued benefit (which remained payable in whole or part) under the Salaried Plan, RIP, or RIP II as of the Transaction Closing Date (or a beneficiary or alternate payee of such a person) and (B) with respect to whom assets and liabilities were transferred to the BAE IESI Plan and Trust.

(5)     United Launch Alliance, LLC. ("ULA")

(a)     Section (A) of this Addendum I shall not apply to Participants whose employment is transferred (without any intervening termination or break in employment) by the Corporation to ULA ("ULA Affected Participants"). For the purposes of this paragraph 5(a), the date on which a ULA Affected Participant ceased to be employed by a member of the Control Group and commenced employment with ULA shall be considered the Participant's "ULA Transfer Date."

(b)     Service by a ULA Affected Participant with ULA from that Participant's ULA Transfer Date until the earlier of:

(i)     termination of service with ULA; or

(ii)     commencement of receipt of benefits under the Plan

shall be deemed to be Benefit Eligibility Service under the Plan. The determination of the amount of such service to be treated as Benefit Eligibility

- 80 -

LMC 000351

Service shall be made by the Plan Administrator based on the records of ULA. For purposes of this paragraph 5(b), such service shall be considered "ULA Service." Notwithstanding anything herein to the contrary, no benefits shall be paid under this Addendum I in respect of a ULA Affected Participant if such participant fails to provide information or records requested by the Plan Administrator.

(c)    Compensation earned by a ULA Affected Participant during such individual's ULA Service (but prior to commencement of receipt of benefits under the Plan) shall be considered Pensionable Earnings and shall be used to determine Final Average Pensionable Earnings for purposes of determining such Participant's Accrued Benefit. The determination of the compensation to be treated as Pensionable Earnings and Final Pensionable Earnings shall be made by the Plan Administrator based on the records of ULA; provided however, that no benefits shall be paid under this Addendum I in respect of an ULA Affected Participant if such participant fails to provide information or records requested by the Plan Administrator.

(d)    Commencement of benefits under the Plan upon retirement from ULA shall be considered retirement from active service from the Corporation for purposes of Article IV(1) and Article IV(2). A ULA Affected Participant shall be considered to have retired from ULA if he terminates service from ULA, without having previously terminated service from ULA, on or after attaining age 55.

(e)    This sub-paragraph (e) shall apply only to a ULA Affected Participant who also qualifies as an "Affected GD Participant," and only where such participant also receives a payment in accordance with Section C(1) of the Addendum I. In addition to the benefit payable under the other provisions of this Plan, a Participant described in the previous sentence who receives a benefit under Article IV or Article VIII will be entitled to receive another additional payment equal to the amount, if any, by which x exceeds y, where x equals the GD Plan Benefit, but determined as if service with ULA were service with the Corporation (for purposes of determining the participant's continuous service for purposes of the Rule of 85 benefit under the GD Plan), and y equals the GD Plan Benefit. The determination of x and y shall be made by the Plan Administrator based on the records of General Dynamics; provided, however, that no benefits shall be paid under this sub-paragraph (e) in respect of a participant if such participant fails to provide information or records requested by the Plan Administrator. For the purposes of this sub-paragraph (e),

(i)    "Affected GD Participant" shall mean a Participant who became a Participant as a result of the transfer of the Participant's employment from the General Dynamics Corporation to an Employing Company in connection with the acquisition of the General Dynamics Space Systems Division pursuant to the Asset Purchase Agreement dated as of December 22, 1993 between Martin Marietta Corporation, General Dynamics

- 81 -

LMC 000352

Corporation, General Dynamics Space Services Company, and General Dynamics Commercial Launch Services, Inc.

    (ii)    "GD Acquisition" shall mean the acquisition described in (i) above.

    (iii)    "GD Plan Benefit" shall mean the benefit that is payable to the participant under the GD Pension Plan for service with GD prior to the GD acquisition.

    (iv)    "GD Pension Plan" shall mean the General Dynamics Corporation Salaried Retirement Plan as in effect on December 31, 1993.

C.    Provisions Relating to Certain Acquisitions.

(1)    General Dynamics Space Systems Divisions Acquisition

    (a)    This paragraph C(1) shall apply to any Participant or former Participant in the Plan who became a Participant as a result of the transfer of the Participant's employment from the General Dynamics Corporation to an Employing Company in connection with the acquisition of the General Dynamics Space Systems Division pursuant to the Asset Purchase Agreement dated as of December 22, 1993 between Martin Marietta Corporation, General Dynamics Corporation, General Dynamics Space Services Company, and General Dynamics Commercial Launch Services, Inc. (an "Affected GD Participant").

    (b)    In addition to the benefit payable to the Participant under the other provisions of this Plan, an Affected GD Participant who receives a benefit under Article IV or Article VIII will be entitled to receive an additional payment equal to the difference between (i) and (ii), which difference shall be further adjusted by (iii):

    (i)    the GD Adjusted Benefit, less

    (ii)    the GD Benefit, and adjusted by

    (iii)    the Historical Actuarial Equivalent Factor.

The additional amount shall be paid in the form of benefit elected by the Affected GD Participant for payment of benefits under Article VI.

    (c)    If an Affected GD Participant should die prior to the commencement of the receipt of benefits under this Plan and is survived by a Spouse, in addition to the Pre-Retirement Death Benefit payable to the Spouse under Article VII as the case may be, the Spouse will be entitled to receive an additional payment equal to the difference between (i) and (ii), which difference shall be further adjusted by (iii):

    (iv)    the GD Adjusted Benefit, less

    (v)    the GD Benefit, and adjusted by

- 82 -

LMC 000353

(vi)     the Historical Actuarial Equivalent.

The additional amount shall be paid to the Spouse in accordance with the terms of Article VII.

(d)     For the purposes of this Section C,

(i)     "GD Benefit" shall mean the benefit based on an Affected GD Participant's service with GD which is payable as a single life annuity commencing at age 65 under the GD Plan, reduced by 1/12 of 2 ½% for each whole month prior to age 62 that the GD Affected Participant would be eligible to receive benefits under the GD Plan; provided that, with respect to an Affected GD Participant who is entitled to a benefit in accordance with Article VIII(2), the reduction in the previous sentence shall be calculated pursuant to the factors in the GD Plan that apply to terminated vested participants as of such Affected GD Participant's termination of employment with GD.

(ii)     "GD Adjusted Benefit" shall mean the GD Benefit adjusted to take into account compensation that would be considered Pensionable Earnings under the Plan, reduced by 1/12 of 2 ½% for each month prior to age 62 that the GD Affected Participant would be eligible to receive benefits under the GD Plan;

(iii)    "Historical Actuarial Equivalent Factor" means the actuarial factors under the Plan at the time the Affected GD Participant commenced receiving benefits under the Plan used to convert a single life annuity to the form of benefit elected by the Participant (or the survivor portion to the benefit payable to the Spouse, in the case of the Pre-Retirement Death Benefit) for the payment of benefits under the Plan.

(iv)    "GD Plan" shall mean the General Dynamics Corporation Salaried Retirement Plan as in effect on December 31, 1993.

(e)     In determining the amount payable to an Affected GD Participant as the Regular Supplement under Article IV(4) or Section 2(b)(iii) of the Lockheed Martin Corporation Retirement Program RIP Annex, an Affected GD Participant's Credited Service shall include any whole years of service recognized under the GD Plan for benefit accrual purposes.

(f)     The determination of the GD Benefit, the GD Adjusted Benefit and service recognized under the GD Plan for benefit accrual purposes shall be made by the Plan Administrator based on the records of GD; provided however, that no benefits shall be paid under this Addendum I in respect of an Affected GD Participant if such participant fails to provide information or records requested by the Plan Administrator.

- 83 -

LMC 000354

D.    Provisions Relating to Certain Former GD Hourly Employees

(1)    This Section D shall apply to any Participant (or former Participant in the Plan who retired directly from active service on or after May 2, 1994) who has an Hour of service on or after May 2, 1994 and who satisfies all of the following criteria: (i) was a Participant in the General Dynamics Corporation Hourly Employees Retirement Plan (the "GD Hourly Plan") prior to May 2, 1994, (ii) ceased participation in the GD Hourly Plan prior to May 2, 1994 on account of a transfer to salaried status with General Dynamics, and (iii) became a participant in this Plan as a result of the transfer of Participant's employment from the General Dynamics Corporation to an Employing Company in connection with the acquisition of the General Dynamics Space Systems Division pursuant to the Asset Purchase Agreement dated as of December 22, 1993 between Martin Marietta Corporation, General Dynamics Corporation, General Dynamics Space Services Company, and General Dynamics Commercial Launch Services, Inc. (a "Pre-1994 Transferee").

(2)    In addition to the retirement benefit payable to the Participant under the other provisions of this Plan, but subject to the last paragraph of this Section D(2), a Pre-1994 Transferee who receives a benefit under Article IV or Article VIII will be entitled to receive an additional monthly payment equal to the difference between (i) and (ii):

   (i)    An amount equal to the Pre-1994 Transferee's service credited for benefit accrual purposes under the GD hourly Plan ("GD Hourly Credited Service") multiplied by the applicable GD Hourly Benefit Factor, less

   (ii)   An amount equal to the Pre-1994 Transferee's GD Hourly Credited Service multiplied by thirty-four dollars ($34.00).

          The additional amount shall be paid in the form of benefit elected by the Pre-1994 Transferee for payment of benefits under Article VI, and shall be adjusted in accordance with Article VI for payment in a form other than a single life annuity payable at normal retirement age, and shall be subject to reduction in accordance with Article IV (2) and Article VIII (2).

(3)    The additional benefit set forth in 2 above (adjusted in accordance with the plan for commencement prior to age 65) will be included in determining the Pre-Retirement Death Benefit Payable to the Spouse under Article VII.

(4)    For the purposes of this Section D, "GD Hourly Benefit Factor" shall mean the dollar rate (as of the date the Pre-1994 Transferee terminates employment) in effect under Section 4.1 of the Lockheed Martin Retirement Plan for Employees in the Bargaining Units of the Space Systems Group (the "Space Systems Plan") with respect to a Member of the Space Systems Plan in the bargaining unit in which the Pre-1994 Transferee last worked as an hourly employee.

LMC 000355

(5)    The determination of GD Hourly Credited Service shall be made by the Plan Administrator based on the records of General Dynamics Corporation; provided, however, that no benefits shall be paid under this Addendum I (D) in respect of a Pre-1994 Transferee if such participant fails to provide information or records requested by the Plan Administrator.

E.    Special Layoff Provision Relating to Certain Former GD Employees.

(1)    This Section E shall apply to an Affected GD Participant (as defined in Section C (1) above) who is laid off from an Employing Unit after May 2, 1994 due to a reduction in force, plant closing, or lack of work, and who either (i) has earned at least 25 years of Benefit Eligibility Service at the tie of such layoff or (ii) has attained age 53 and has earned at least eight years of Benefit Eligibility Service at the time of such layoff (a "GD Laid-Off Participant"). In addition to the benefit payable to the participant under this Plan equal to the amount, if any, by which x exceeds y, where x equals the benefit payable to the Participant under the GD Plan, but determined using the applicable early retirement reduction factors under the GD Plan for an employee who retired from active service, and y equals the benefit payable to the participant under the GD Plan.

- 85 -

LMC 000356

IN WITNESS WHEREOF Lockheed Martin Corporation has caused this Lockheed Martin Corporation Salaried Plan/RIP Master Document, including its Appendices, to be executed this _28_ day of _January_, 2008.

LOCKHEED MARTIN CORPORATION

BY: _____

Kenneth J. Disken
Senior Vice President Human Resources

WITNESS:

- 86 -

LMC 000357

## APPENDIX A
## PARTICIPATING BARGAINING UNITS

**I.**     **Lockheed Martin Corporation Retirement Income Plan**

None

**II.**    **Lockheed Martin Corporation Retirement Plan for Certain Salaried Employees**

Engineering and Scientists Guild, Palmdale and Ontario, Ca.

LMC 000358

1/1/2008

## APPENDIX B

## LOCKHEED MARTIN CORPORATION RETIREMENT INCOME PLAN
## Participating Business Units

Subject to all provisions of the Plan, including Articles I (9), II (3), III (4), and III (6), salaried employees actively participating in the Lockheed Martin Corporation Retirement Income Plan ("RIP") as of December 31, 2005 are eligible to continue to participate in RIP. As of January 1, 2008, the following participating business units (but excluding any subsidiary not specifically listed as included) maintain RIP with respect to certain eligible Employees who were hired before January 1, 2006. (Except for certain transfers who at the time of transfer are actively accruing service under a defined benefit pension plan maintained by the Corporation or a member of the Control Group, no person who is not an active participant accruing Credited Service in the Plan on December 31, 2005 may become a participant in or accrue Credited Service under the Plan with respect to the period after January 1, 2006). (No business acquired after January 1, 2006 is a participating unit).

Participating Business Units:

Lockheed Martin Aerostructures-Pinellas, excluding employees hired on or
    after January 1, 2001.
Lockheed Martin Advanced Environmental Systems, Inc. (former Martin Marietta
    facilities)
Lockheed Martin Corporate Headquarters, including business area headquarters
    employees permanently located at that facility
Lockheed Martin Corporate Shared Services (excluding Owego)
Lockheed Martin Electronics Systems, excluding employees of MS2 (Akron), MS2
(Eagen), MS2 (Manassas), MS2 (Mitchel Field), Lockheed Martin Distribution
Technologies Systems, Inc., Sandia, or Lockheed Martin Sippican, Inc. (or other business
unit, operation or facility that was formerly part of Sippican, Inc. or a subsidiary or
affiliate thereof) and including the following groups:
    Lockheed Martin Advanced Technology Labs
    Lockheed Martin Simulation, Training and Support, including Logistics
    Technology-Regular, Orlando, (but excluding Huntsville,
    RAMAC, Logistics Technology-Special, HIPS, HITS Special, and Training
    Solutions-ATARS)
    Lockheed Martin Maritime Systems & Sensors (MS2)
        MS2 - Marine Systems (Baltimore)
        MS2 Radar Systems (Syracuse)
        MS2 Undersea Systems (Syracuse)
        MS2 Surface Systems (Moorestown)
    Lockheed Martin Missiles & Fire Control, including Orlando, Ocala,

- 88 -

LMC 000359

and, with respect to periods beginning on or after January 1, 2005
Pike County Operations, but excluding Archbald, Dallas/Camden/
Lufkin and, with respect to periods prior to January 1, 2005, Pike
County Operations
Perry Technologies

Lockheed Martin Commercial Enterprise Solutions-Regular (excluding
CES-Special)
Lockheed Martin Enterprise Information Systems, excluding Owego, Marietta, Palmdale,
Sunnyvale, Fort Worth, Akron, Eagan, Marion, MA (or other operation or facility that is
or was part of Lockheed Martin Sippican, Inc.) and including:
Denver
Orlando
Syracuse
Valley Forge
Lockheed Martin Global, Inc. (former Martin Marietta or
General Electric facilities)
Lockheed Martin Global Telecommunications, effective January 1, 2002
Businesses which on February 1, 2007 were part of the former Lockheed Martin
Integrated Systems & Solutions (ISS), excluding Mission Systems (Manassas),
employees transferring from Orincon Corp. Intl. in conjunction with the June 26, 2003
transaction, and employees at LM Stasys Consulting, Inc. (or other business unit or
operation that was formerly part of Stasys Consulting, Inc. or a parent, subsidiary, or
other affiliate thereof) and including:
Lockheed Martin Management & Data Systems (Valley Forge)
Corporate Advanced Concepts
Lockheed Martin International Inc.
Lockheed Martin Investment Co. (former Martin Marietta facilities)
Lockheed Martin Investments, Inc.
Lockheed Martin Investment Management Co.
Lockheed Martin Millimeter Technologies
Lockheed Martin Overseas Corporation (former General Electric or Martin
Marietta facilities)
Lockheed Martin Overseas Services Corporation
LMC Properties, Inc.(with respect to former hourly employees,
effective April 1, 2000.
Lockheed Martin Space Systems (Denver, Vandenberg AFB, Cape Canaveral,
Michoud, CPC, East Windsor, Valley Forge, Special Programs/Denver, excluding
Sunnyvale, Ontario, Palmdale)
Lockheed Martin International Launch Services
Lockheed Martin Commercial Space Systems
Lockheed Martin Services, Inc.
Lockheed Martin Integrated Systems, Inc.
Orlando Central Park, Inc.

- 89 -

LMC 000360

1/1/2008

## APPENDIX B

### Lockheed Martin Corporation Retirement Income Plan II
### Participating Business Units

All non-bargaining Employees of Transferred GE Operations who were eligible to participate in the GE Pension Plan on April 4, 1993, and became Employees of Martin Marietta Corporation on April 4, 1993 (excluding employees in Puerto Rico), or who were eligible to participate in the Martin Marietta Pension Plan for Employees of Transferred GE Operations on December 31, 1994, or who were Employees of GE Aircraft Controls in Fort Wayne, IN. upon its acquisition on January 1, 1996, were eligible to participate in this Plan.

Effective December 31, 1997, this plan was merged with the Lockheed Martin Retirement Income Plan

LMC 000361

1/1/2008

## APPENDIX B

### Lockheed Martin Corporation Retirement Plan for Certain Salaried Employees Participating Business Units

Subject to all provisions of the Plan, including Articles I (9), II (3), III (4), and III (6), salaried employees actively participating in the Lockheed Martin Retirement Plan for Certain Salaried Employees (the "Salaried Plan") as of December 31, 2005 are eligible to continue to participate in RIP. As of January 1, 2008, the following participating business units (but excluding any subsidiary not specifically listed as included) maintain the Salaried Plan with respect to certain eligible Employees who were hired before January 1, 2006. (Except for certain transfers who at the time of transfer are actively accruing service under a defined benefit pension plan maintained by the Corporation or a member of the Control Group, no person who is not an active Participant accruing Credited Service under the Plan on December 31, 2005 may become a participant in or accrue Credited Service under the Plan with respect the period after January 1, 2006). (No business acquired after January 1, 2006 is a participating unit).

## Participating Business Units

Lockheed Martin Advanced Environmental Systems, Inc. (former Lockheed facilities)

Lockheed Martin Aircraft & Logistics Centers Dryden CLS (but only with respect to employees who are covered by the Plan as employees of Lockheed Martin Skunkworks on December 31, 2000, and who transferred to Lockheed Martin Field Technical Operations, Dryden ER on January 1, 2001("Field Technical Operations, Dryden ER Grandfathered").
Lockheed Martin Aeronautics Services Intl., Inc.
Lockheed Martin Aircraft Argentina, SA De CV

Lockheed Martin Aeronautics Company at Ft. Worth, Palmdale, or Marietta, excluding Aeroparts, Aerostructures-Pinellas and including:
      Lockheed Martin Aeronautics Materials Management Center
      Lockheed Martin Aeronautical Systems Support Company
      Lockheed Martin Aircraft Australia (LAUS)
      Lockheed Martin Aircraft Services International
Lockheed Martin Commercial Systems Group
Lockheed Employment Services, Inc.
Lockheed Martin Enterprise Information Systems, excluding Owego, Akron, Eagan, Denver, Orlando, Syracuse, Valley Forge, Marion, MA (or other facility that is or was part of Lockheed Martin Sippican, Inc.) and including:
      Fort Worth
      Marietta, Ga.
      Palmdale, Ca.
      Sunnyvale, Ca.

- 91 -

LMC 000362

Lockheed Martin Finance Corporation
Lockheed Martin Global, Inc. (former Lockheed facilities)

Lockheed Martin International, SA (LMISA)
Lockheed Martin International GmBH
Lockheed Martin International Limited
Lockheed Martin Information Systems - Ft. Worth
Lockheed Martin Technical Operations Company

Lockheed Martin Space Systems at Ontario, Palmdale, Sunnyvale, excluding Denver,
Vandenberg AFB, Cape Canaveral, Michoud, CPC, East Windsor, Valley Forge,
Special Programs/Denver

Lockheed Martin Middle East Services (Regular)
LMALC (L-1011 Product Support) (but only with respect to employees who are covered by the
Plan as of June 18, 1998 and who transferred to LMALC (L-1011 Product Support)
as part of the transfer of the L-1011 Product Support Program to LMALC in 1998 ("LMALC-
1011

Businesses which on February 1, 2007 were part of Lockheed Martin Integrated Systems and
Solutions, but only with respect to Orincon Corp. (effective January 1, 2004) or with respect sites
which are heritage Lockheed sites covered by the Salaried Plan, and excluding employees at LM
Stasys Consulting, Inc. (or other business unit or operation that was formerly a part of Stasys
Consulting, Inc. or a parent, subsidiary, or other affiliate thereof).

LMC 000363

# APPENDIX C

## MEDICAL BENEFITS PLAN

## LOCKHEED MARTIN CORPORATION
## SALARIED EMPLOYEE RETIREMENT PROGRAM

## SALARIED PLAN AND RIP COMPONENTS

**Lockheed Martin Corporation Group Insurance Plan for Retired Employees**

LMC 000364

## APPENDIX D

### Designated Units

| Designated Unit | Designation Date |
|---|---|
| Lockheed Martin Coherent Technologies, Inc. | June 12, 2006 |
| Lockheed Martin Sippican, Inc. (or successor operation at the Marion, MA facility) | April 30, 2007 |

- 94 -

LMC 000365

ANNEXES

ANNEX A—RIP ANNEX

ANNEX B—SALARIED ANNEX

ANNEX C—RIP II ANNEX

LMC 000366

# LOCKHEED MARTIN CORPORATION RETIREMENT PROGRAM
## RIP ANNEX

This Annex is included in the Plan in order to allow certain employees of the Corporation to continue after June 30, 1997 to accrue certain benefits under terms similar to those of the Plan in effect on June 30, 1997. The portion of the Plan other than this Annex shall apply to all RIP Participants, and Sections (1) through (5) of this Annex shall apply to Transition RIP Participants (as defined below) only to the extent those sections differ from the remainder of the Plan, and Section (6) of this Annex shall apply to certain persons who retired from active service after December 1, 1996 and prior to July 1, 1997 only to the extent such section differs from the remainder of the Plan. Nothing in this Annex shall cause any Participant to receive duplicate credit for the same period of service or to receive duplicate benefits with respect to the same period of time. All references in this Annex to a "Section" shall be a reference to a Section in this Annex, unless specifically indicated otherwise, and all references in this Annex to an "Article" shall be a reference to an Article in the Plan document other than this Annex.

(1)   **DEFINITIONS**

(a)   CORE ACTIVE EARLY RETIREMENT FACTOR:

A reduction of the amount of the retirement benefit of a Participant who retires from active service prior to his Normal Retirement Date equal to 5/12ths of one percent for each complete month by which commencement of a Participant's retirement benefit precedes the first of the month following the attainment of age 60.

(b)   CORE FINAL AVERAGE PENSIONABLE EARNINGS:

Final Average Pensionable Earnings as defined in Article I(13).

(c)   CORE FORMULA:

The benefit accrual formula described in Article V(1) and using Core Final Average Pensionable Earnings.

(d)   CORE PENSIONABLE EARNINGS:

Pensionable Earnings as defined in Article I(18).

(e)   CORE TERMINATED EARLY RETIREMENT FACTOR:

A reduction of the amount of the retirement benefit of a Participant who Terminates Employment (other than by death) prior to being eligible to receive retirement benefits and who later retires prior to his Normal Retirement Date

LMC 000367

equal to the factors in the table below, based on the Participant's age on the Benefit Commencement Date, with proportionate reduction for non-integer commencement ages:

| Commencement Age | Reduction | Commencement Age | Reduction |
|---|---|---|---|
| 65 | 0% | 59 | 48.6% |
| 64 | 10.1% | 58 | 53.9% |
| 63 | 19.4% | 57 | 58.4% |
| 62 | 27.9% | 56 | 62.1% |
| 61 | 35.6% | 55 | 65.0% |
| 60 | 42.5% | | |

(f)  RIP FORMULA:

For purposes of the Annex, the RIP Formula shall be the same as the formula in Article V(1), except that 1.165% shall be substituted for 1.25% in Article V(1)(a) and Transition Final Average Pensionable Earnings shall be substituted for Final Average Pensionable Earnings in Article V(1)(a) and (c).

(g)  TRANSITION ACTIVE EARLY RETIREMENT FACTOR:

A reduction of the amount of the retirement benefit of a Participant who retires from active service prior to his Normal Retirement Date equal to 7/12ths of one percent for each complete month by which commencement of a Participant's retirement benefit precedes the first of the month following the Participant's attainment of age 60. This 7/12ths-percent shall be reduced by 0.14/12ths of one percent for each complete year of Benefit Eligibility Service in excess of five at early retirement, but shall not become less than 3.5/12ths of one percent.

(h)  TRANSITION FINAL AVERAGE PENSIONABLE EARNINGS:

The average amount of Transition Pensionable Earnings determined by taking the amount of Transition Pensionable Earnings of an Employee during the three calendar years selected from the most recent ten calendar years of his Period of Employment as defined in Article III(1) in respect of which he shall have the greatest aggregate amount of Transition Pensionable Earnings, and dividing such amount by three. For purposes of this paragraph, the term "calendar years" shall exclude (i) any period during which such Employee received benefits under the Corporation's Long Term Disability Plan and (ii) the year during which such Employee terminated service, unless such termination occurs on December 31 of such year. In the case of an Employee whose Period of Employment shall not include three calendar years, or in the case where Transition Pensionable Earnings of a Participant for a calendar year are not available or there is an insufficiency of information to properly determine the Transition Final Average Pensionable

LMC 000368

Earnings, then the Transition Final Average Pensionable Earnings for such Participant shall be as determined in a non-discriminatory manner by the Plan Administrator based upon such information as is available.

(i)     TRANSITION PENSIONABLE EARNINGS:

Total compensation paid by an Employing Company during each calendar year, *including* overtime, shift differential, commissions and other variable compensation plan payments, payments awarded during such calendar year under the Lockheed Martin Corporation Management Incentive Compensation Plan, lump-sum merit payments in lieu of a salary increase, spot awards, supplemental incentive compensation, and any contributions made by the Employing Company to the Lockheed Martin Corporation Salaried Savings Plan pursuant to the employee's deferral election, but *excluding* retention bonuses, rate guarantees, field service pay, sickness and accident benefits, discretionary incentive compensation, compensation in lieu of vacation time, severance pay, payments for education allowance, relocation allowance, overseas or domestic allowance, rental allowance, rental assistance, travel allowance, vacation allowance, mortgage allowance, imputed income, Employing Company contributions to this Plan or to any other benefit plan (other than before-tax elective deferrals or contributions under a plan subject to Code section 125), and those types of payments normally made only to highly compensated employees (as defined in Code Section 414(q)), including, but not limited to, completion bonuses and payments from long term incentive compensation plans. Transition Pensionable Earnings shall include any amount which is contributed by an Employing Company pursuant to a salary reduction agreement and which is not includible in the gross income of the Employee under Code Section 125 and, for years beginning on or after January 1, 1998, elective amounts that are not included in the gross income of the Participant by reason of code section 132(f).

In addition to other applicable limitations set forth above, and notwithstanding any other provision of the Plan to the contrary for Plan Years beginning on or after January 1, 1994, the Transitional Pensionable Earnings of each Employee taken into account under the Plan shall not exceed the OBRA '93 annual compensation limit. The OBRA '93 annual compensation limit is $150,000, as adjusted by the Secretary of the Treasury for increases in the cost of living in accordance with Section 401(a)(17)(B) of the Code. The cost-of-living adjustment in effect for a calendar year applies to any period, not exceeding 12 months, over which compensation is determined (the "determination period") beginning in such calendar year. If a determination period consists of fewer than 12 months, the OBRA '93 annual compensation limit will be multiplied by a fraction, the numerator of which is the number of months in the determination period, and the denominator of which is 12.

LMC 000369

For Plan Years after 1993, any reference in this Plan to the limitation under Section 401(a)(17) of the Code shall mean the OBRA '93 annual compensation limit set forth in this provision.

Notwithstanding the above, beginning December 25, 2002, Transition Pensionable Earnings shall mean Core Pensionable Earnings for all periods on or after that date, while it will continue to mean Transition Pensionable Earnings as described above for all periods prior to that date.

(j)    TRANSITION PERIOD:

The five-year period of time beginning on July 1, 1997 and ending on June 30, 2002.

(k)    TRANSITION RIP PARTICIPANT:

Any person who is an active Participant in RIP on or after July 1, 1997 and whose Credited Service is attributable in part to a period prior to July 1, 1997 or whose retirement from active service under RIP becomes effective July 1, 1997.

(l)    TRANSITION TERMINATED EARLY RETIREMENT FACTOR:

A reduction of the amount of the retirement benefit of a Participant who Terminates Employment (other than by death) prior to being eligible to receive retirement benefits and who later retires prior to his Normal Retirement Date equal to 5/12ths of one percent for each complete month by which commencement of a Participant's retirement benefit precedes the first of the month following the Participant's attainment of age 65. This 5/12ths-percent shall be reduced by 0.1/12ths of one percent for each complete year of Benefit Eligibility Service in excess of five, but shall not become less than 2.5/12ths of one percent. This factor is only used where specifically indicated.

(2)    **AMOUNT OF BENEFIT FOR TRANSITION RIP PARTICIPANTS WHO RETIRE FROM ACTIVE SERVICE**

(a)    Normal Retirement Benefit.

(i)    <u>Transition Period</u>. During the Transition Period, the retirement benefit of a Transition RIP Participant who retires from active service on or after his Normal Retirement Date shall be the greater of the amount in (A) or (B) below:

(A)    The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings.

LMC 000370

(B)    The amount determined using the RIP Formula applied to such Participant's Credited Service and using Transition Final Average Pensionable Earnings.

(ii)    <u>Post Transition Period</u>.  After the end of the Transition Period, the retirement benefit of a Transition RIP Participant who retires from active service on or after his Normal Retirement Date shall be the greater of the amount in (A) or (B) below:

(A)    The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings.

(B)    The amount determined by adding I plus II below:

I.    The amount determined by applying the RIP Formula to such Participant's Credited Service through June 30, 2002 using Transition Final Average Pensionable Earnings.

II.    The amount determined by applying the Core Formula to such Participant's Credited Service after June 30, 2002 using Core Final Average Pensionable Earnings.

(iii)    <u>Pre-ERISA Formula for Retirement from Active Service</u>: Notwithstanding the foregoing and subject to paragraph (iv) below, the benefit for an Employee who was a Participant in RIP as of September 30, 1975 (or who was a Participant in RIP for at least 12 consecutive months at any time prior to October 1, 1975) and who retires from active service on or after his Normal Retirement Date, shall be the amount in paragraph (i) or (ii) above, as applicable, or, if greater, the amount determined by multiplying (A) times (B) times (C) and then adding (D) and then multiplying the result by (E), where

(A)    is the greater of (I) the Participant's Transition Final Average Pensionable Earnings less 1/5 of the Participant's Social Security Covered Compensation or (II) 4/5 of the Participant's Transition Final Average Pensionable Earnings;

(B)    is the average annual accrual rate determined as

I.    the sum of the following percentages:

1.    55% times the Participant's actual and projected Credited Service from age 25 to age 35 and,

LMC 000371

2.      1.10% times the Participant's actual and projected Credited Service from age 35 to age 45 and,

3.      2.20% times the Participant's actual and projected Credited Service from age 45 to age 65,

II.     divided by the lesser of 40 or the Participant's Credited Service (projected to age 65);

(C)     is the Participant's Credited Service (actual and projected to Normal Retirement Date or, if later, Termination of Employment) not in excess of 35 years; and

(D)     is the Participant's Credited Service (actual and projected to Normal Retirement Date or, if later, Termination of Employment) in excess of 35 years times the accrual rate determined under (B) above times his Transition Final Average Pensionable Earnings.

(E)     is a fraction, the numerator of which is the Participant's actual Credited Service, and the denominator of which is the Participant's Credited Service which he would have at Normal Retirement Date if his employment continued without interruption until Normal Retirement Date (but not to exceed 1.0).

(iv)    <u>Pre-ERISA Formula for Certain Highly Compensated Employees Retiring from Active Service</u>. Notwithstanding the foregoing, the benefit for any Transition RIP Participant who retires from active service on or after his Normal Retirement Date, was a highly compensated employee (as defined in Code Section 414(q)) as of December 31, 1990, and was either (I) a Participant in this Plan as of September 30, 1975 or (II) a Participant in this Plan for at least 12 consecutive months at any time prior to October 1, 1975, shall be the amount in paragraph (i) or (ii) above, as applicable, or, if greater an amount determined using the formula described in Section 2(a)(iii) for all Credited Service prior to January 1, 1991, determined as if such Participant had Terminated Employment on December 31, 1990, plus an amount determined using the formula described in Section 2(a)(i) or, if, applicable, Section 2(a)(ii) for such Participant's Credited Service after December 31, 1990.  In no event shall the benefit payable under the Plan to any such Highly Compensated Employee be less than the benefit accrued by such Employee as of February 28, 1991, determined in accordance with paragraph (iii) above.

(b)     <u>Early Retirement from Active Service</u>.

LMC 000372

(i) <u>Transition Period</u>. The amount payable to a Transition RIP Participant who retires from active service during the Transition Period at age 55 or older with at least five years of Benefit Eligibility Service, but prior to his Normal Retirement Date, shall be the greatest of the amount in (A), (B), (C), or (D) below:

(A)   The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings, reduced by the Core Active Early Retirement Factor.

(B)   The amount determined using the RIP Formula applied to such Participant's Credited Service and using Transition Final Average Pensionable Earnings and reduced by the Transition Active Early Retirement Factor.

(C)   Only with respect to Transition RIP Participants who are described in Section 2(a)(iii), the amount determined using the formula described in Section 2(a)(iii) and reduced by the Transition Active Early Retirement Factor.

(D)   Only with respect to Transition RIP Participants who are described in Section 2(a)(iv), the amount determined using the formula described in (C) above for Credited Service prior to January 1, 1991, determined as if such Participant had Terminated Employment on December 31, 1990 (recognizing all of the Participant's Benefit Eligibility Service to determine the level of the Transition Active Early Retirement Factor), plus the greater of the amount determined using the formula described in (B) above (recognizing all of the Participant's Benefit Eligibility Service to determine the level of the Transition Active Early Retirement Factor) or (A) above for Credited Service after December 31, 1990.

(ii) <u>Post Transition Period</u>.  The amount payable to a Transition RIP Participant who retires from active service after the end of the Transition Period at age 55 or older with at least five years of Benefit Eligibility Service, but prior to his Normal Retirement Date, shall be the greatest of the amount in (A), (B), (C), or (D) below:

(A)   The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings, reduced by the Core Active Early Retirement Factor.

LMC 000373

(B)   The amount determined by adding I plus II below

    I.   The amount determined by applying the RIP Formula to such Participant's Credited Service through June 30, 2002 using Transition Final Average Pensionable Earnings and reduced by the Transition Active Early Retirement Factor.

    II.   The amount determined by applying the Core Formula to such Participant's Credited Service after June 30, 2002 using Core Final Average Pensionable Earnings and reduced by the Core Active Early Retirement Factor.

(C)   Only with respect to Transition RIP Participants described in Section 2(a)(iii), the amount equal to I plus II below:

    I.   The amount determined using the formula described in Section 2(a)(iii) for Credited Service prior to July 1, 2002, reduced by the Transition Active Early Retirement Factor (using all of the Participant's Benefit Eligibility Service in determining the level of the Transition Active Early Retirement Factor).

    II.   The amount determined using the formula described in Section 2(a)(iii) for Credited Service after June 30, 2002, reduced by the Core Active Early Retirement Factor.

(D)   Only with respect to Transition RIP Participants described in Section 2(a)(iv), the amount determined by adding I to the greater of II or III below:

    I.   The amount determined using the formula described in Section 2(a)(iii) for Credited Service prior to January 1, 1991, determined as if such Participant had Terminated Employment on December 31, 1990, reduced by the Transition Active Early Retirement Factor (using all of the Participant's Benefit Eligibility Service in determining the level of the Transition Active Early Retirement Factor).

    II.   The amount determined by applying the Core Formula to such Participant's Credited Service after December 31, 1990 using Core Final Average Pensionable Earnings and reduced by the Core Active Early Retirement Factor.

    III.   The amount determined by adding 1 and 2 below:

LMC 000374

1.      The amount determined by applying the RIP Formula to such Participant's Credited Service after December 31, 1990 and before July 1, 2002 using Transition Final Average Pensionable Earnings and reduced by the Transition Active Early Retirement Factor (using all of the Participant's Benefit Eligibility Service in determining the level of the Transition Active Early Retirement Factor).

2.      The amount determined by applying the Core Formula to such Participant's Credited Service after June 30, 2002 using Core Final Average Pensionable Earnings and reduced by the Core Active Early Retirement Factor.

(iii)      <u>Supplement</u>. A Transition RIP Participant who, after attaining age 55, retires from active service and commences his benefit on or before July 1, 2002 with ten or more years of Benefit Eligibility Service shall be entitled to a regular supplement in accordance with Article V(4) (at the level in effect prior to January 1, 2001) except that such supplement shall be reduced by 1¼ percent for each complete month the Participant's Benefit Commencement Date precedes the first of the month following the Participant's attainment of age 60.

(c)      Special Layoff Provision

A Transition RIP Participant who (i) is laid off due to a reduction in force, plant closing, or lack of work, (ii) has earned at least 25 years of Benefit Eligibility Service, (iii) attained the age of 50 at the time of such layoff, and (iv) is not rehired prior to age 55, shall be treated as retiring under Section 2(b) if such Participant begins receiving benefits on or after the first of the month after attaining age 55 and shall be treated as retiring under Section 2(a) if such Participant begins receiving benefits on his Normal Retirement Date.

(3)      **AMOUNT OF BENEFIT FOR TRANSITION RIP PARTICIPANTS WHO RETIRE FROM TERMINATED VESTED STATUS**

(a)      Normal Retirement Benefit.

(i)      <u>Transition Period</u>. The retirement benefit of a Transition RIP Participant who Terminates Employment during the Transition Period with a vested benefit and retires from terminated vested status on his Normal Retirement Date shall be the greater of the amount in (A) or (B) below:

LMC 000375

(A)     The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings.

(B)     The amount determined using the RIP Formula applied to such Participant's Credited Service and using Transition Final Average Pensionable Earnings.

(ii)     <u>Post Transition Period</u>.  The retirement benefit of a Transition RIP Participant who Terminates Employment after the Transition Period with a vested benefit and retires from terminated vested status on his Normal Retirement Date shall be the greater of the amount in (A) or (B) below:

(A)     The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings.

(B)     The amount determined by adding I plus II below:

I.      The amount determined by applying the RIP Formula to such Participant's Credited Service through June 30, 2002 using Transition Final Average Pensionable Earnings.

II.     The amount determined by applying the Core Formula to such Participant's Credited Service after June 30, 2002 using Core Final Average Pensionable Earnings.

(iii)    <u>Pre-ERISA Formula for Retirement from Terminated Vested Status</u>: Notwithstanding the foregoing and subject to subsection (iv) below, the benefit for an Employee who was a Participant in RIP as of September 30, 1975 (or who was a Participant in RIP for at least 12 consecutive months at any time prior to October 1, 1975) and who retires from terminated vested status on his Normal Retirement Date, shall be the amount in paragraph (i) or (ii) above, as applicable, or, if greater, the sum of (A) and (B) below:

(A)     For service prior to October 1, 1975 the amount determined by multiplying I times II times III, or, if greater, the amount determined in (IV), where

I.      is an earnings amount which is the greater of (i) the Participant's Transition Final Average Pensionable Earnings less 1/5 of his Social Security Covered Compensation or (ii) 4/5 of his Transition Final Average Pensionable Earnings,

LMC 000376

II.     is the sum of the Participant's annual accrual rates (described in 1, 2, and 3 below) for his Credited Service between age 25 and October 1, 1975:

    1.     55% times the Participant's Credited Service from age 25 to age 35;

    2.     1.10% times the Participant's Credited Service from age 35 to age 45;

    3.     2.20% times the Participant's Credited Service from age 45 to age 65.

III.    is the ratio of the Participant's actual Credited Service prior to October 1, 1975 (including Credited Service prior to age 25) to the Participant's Credited Service between age 25 and October 1, 1975.

IV.    In any event, a Participant's accrued benefit for service during the period prior to October 1, 1975 shall not be less than 50% of the benefit which would have accrued using the formula for determining the benefits immediately after September 30, 1975.

(B)   For service after September 30, 1975, a Participant's benefit will be determined by multiplying I times II times III and then adding (IV) and then multiplying the result by (V), where:

I.     is the greater of (i) the Participant's Transition Final Average Pensionable Earnings less 1/5 of his Social Security Covered Compensation or (ii) 4/5 of the Participant's Transition Final Average Pensionable Earnings;

II.    is the sum of the Participant's annual accrual rates (described in 1, 2, and 3 below) for his actual and projected Credited Service from October 1, 1975 to age 65, divided by the lesser of 40 or the Participant's projected Credited Service from October 1, 1975 to age 65:

    1.     55% times the Participant's Credited Service from age 25 to age 35;

    2.     1.10% times the Participant's Credited Service from age 35 to age 45;

LMC 000377

3.      20% times the Participant's Credited Service from
        Age 45 to age 65.

III.    is the Participant's actual and projected Credited Service
        from October 1, 1975 to his Normal Retirement Date,
        including service before age 25, but not in excess of 35
        years.

IV.     is the Participant's actual and projected Credited Service
        from October 1, 1975 to Normal Retirement Date, in excess
        of 35 years time the accrual rate in II above times
        Transition Final Average Pensionable Earnings.

V.      is a fraction, the numerator of which is the Participant's
        actual Credited Service earned after October 1, 1975, and
        the denominator of which is the Credited Service after
        October 1, 1975, which he would have had at Normal
        Retirement Date if his employment had continued without
        interruption until Normal Retirement Date.

(iv)    <u>Pre-ERISA Formula for Certain Highly Compensated Participants
        Retiring from Terminated Vested Status</u>.  Notwithstanding the foregoing,
        the benefit for any Transition RIP Participant who retires from terminated
        vested status on his Normal Retirement Date, was a Highly Compensated
        Employee as of December 31, 1990, and was either (I) a Participant in this
        Plan as of September 30, 1975 or (II) a Participant in this Plan for at least
        12 consecutive months at any time prior to October 1, 1975, shall be
        determined as the greater of the following two amounts:

        (A)     the amount determined using the formula described in Section
                3(a)(i) or, if applicable, Section 3(a)(ii) for all Credited Service, or

        (B)     the amount determined under Section 3(a)(iii) for all Credited
                Service prior to January 1, 1991, determined as if such Participant
                had Terminated Employment on December 31, 1990, plus the
                amount determined using the formula described in Section 3(a)(i)
                or, if applicable, Section 3(a)(ii) for such Participant's Credited
                Service after December 31, 1990.

In no event shall the benefit payable under the Plan to any such Highly
Compensated Employee be less than the benefit accrued by such Employee as of
February 28, 1991, determined in accordance with paragraph (iii) above.

(b)     Early Retirement Benefit

LMC 000378

(i)    The amount payable to a Transition RIP Participant who Terminates Employment with a vested benefit in the Plan but prior to being eligible to receive retirement benefits beginning on the first of the month following such Termination of Employment and who later retires from terminated vested status prior to his Normal Retirement Date but after attaining age 55 and five years of Benefit Eligibility Service shall be the amount determined under Section 3(a), reduced by the applicable Core Terminated Early Retirement Factor, provided, however, that the reduction factor for the portion of the benefit calculated using the RIP Formula for a Participant who has five years of Benefit Eligibility Service and is laid off due to a reduction in force, plant closing, or lack of work during the Transition Period (and who does not return to work prior to commencing receipt of benefits) shall be the applicable Transition Terminated Early Retirement Factor (using all of the Participant's Benefit Eligibility Service in determining the level of the Transition Terminated Early Retirement Factor).

(ii)   Notwithstanding the above, the amount payable to a Participant retiring from terminated vested status prior to his Normal Retirement Date but after attaining age 55 and five years of Benefit Eligibility Service shall not be less than the benefit earned prior to July 1, 1997 determined under all of the provisions of the Plan in effect on June 30, 1997, including, but not limited to, the early retirement reduction factors then in effect for terminated vested Participants.

(4)    **PROTECTED RIP FORMS OF BENEFIT**

(a)    Modified Option.  Subject to the conditions set out in Article VI and only for benefits accrued under RIP prior to January 1, 1995, a Transition RIP Participant may elect, in lieu of any of the optional forms of benefit in Article VI, to receive 25 percent of his benefit as a 50 Percent Joint and Survivor Option (as described in Article VI(2), with the Transition RIP Participant's Spouse as the Contingent Annuitant and the remaining 75 percent of the benefit paid as a Guaranteed Period Option (as described in Article VI(3)) or as a Lifetime of Participant Only Option (as described in Article VI(5)).  In calculating the amount of payments available under the modified option, the Equivalent Actuarial Value shall be determined under Article II(10) of the Plan as in effect on June 30, 1997.

(b)    25 Percent Joint and Survivor Option.  Subject to the conditions set out in Article VI and only for benefits accrued under RIP prior to July 1, 1997, a Transition RIP Participant may elect, in lieu of any of the optional forms of benefit in Article VI, to receive his benefit as a 25 percent Joint and Survivor Option as described in the Plan as of June 30, 1997. In calculating the amount of payments available under

LMC 000379

the 25 percent Joint and Survivor Option, the Equivalent Actuarial Value shall be determined under Article II(10) of the Plan as in effect on June 30, 1997.

(c)   Special Provision for Determining Payments under the Level Income to Age 62 Option. In calculating the amount of payments available under the level income to age 62 option described in Article VI(4), the Equivalent Actuarial Value shall be determined under Article II(10) of the Plan as in effect on June 30, 1997.

(5)   PRE-RETIREMENT DEATH BENEFIT

(a)   Lump Sum Death Benefit. Upon the death of a Transition RIP Participant prior to the end of the Transition Period while he shall be an Employee, other than an Employee receiving or who is eligible to receive long-term disability benefits from the Employing Company's long-term disability group insurance plan, a single sum shall be paid to his Beneficiary equal to the "applicable percentage" of the annualized amount of his base rate earnings (up to the amount applicable under Code Section 401(a)(17)) calculated on the basis of his most recent rate of earnings in effect immediately prior to his date of death, provided, however, that the cost of all death benefits provided under the Plan does not exceed 25 percent of the total cost of the Plan; and provided further that, in any year in which the cost of death benefits is determined to be greater than 25 percent of the total cost of the Plan, the level of benefits provided under this Section 5 shall be reduced for all participants in a nondiscriminatory manner so that such 25-percent limit shall not be exceeded. For purposes of the previous sentence the "applicable percentage" shall be determined according to the Participant's year of death, as follows:

| Year of Death | Applicable Percentage |
|---|---|
| 1997 | 100% |
| 1998 | 80% |
| 1999 | 60% |
| 2000 | 40% |
| 2001 | 20% |
| 2002 | 10% |
| 2003 and after | 0% |

(b) '  Pre-Retirement Surviving Spouse Benefit. The amount of the pre-retirement surviving Spouse benefit to which a Spouse of a Transition RIP Participant is entitled under Article VII shall be based upon the rules in this Annex for determining the Participant's benefit. However, the rules in Article VII with respect to determining the appropriate early retirement factor based on the status of the Participant at the time of death shall apply. For example, if the Participant had not yet Terminated Employment and had satisfied the requirements for early retirement at the time of his death, the Spouse will be entitled to an amount she as Contingent Annuitant would receive assuming the Participant had retired at his own initiative on the first of the month following the date of

LMC 000380

his death with a Joint and Survivor Option, 100 percent continuation, with the Participant's benefit determined under Section 2 of this Annex.

## (6)    INCREASE IN BENEFITS FOR CERTAIN RETIREES

This Section (6) applies only to persons who terminated service under the Plan before June 1, 1997 and after November 30, 1996, provided such Participant was eligible and elected to start receiving benefits under the Plan on the first of the month following termination of service.  Effective July 1, 1997, such Participants' retirement benefit shall be increased by an amount, if any, equal to the excess of (A) over (B), where (A) equals:

>    the greater of the amount in (i) or (ii) below:

>    (i)    the amount determined using the Core Formula and Core Final Average Pensionable Earnings applied to the Participant's Credited Service as if the Core Formula had been effective on the date such Participant retired from active service, which amount shall be adjusted to reflect the form and starting date of the benefit being paid using the reduction factors described in Article I(11) for form and the adjustment factors in Article V for starting date;

>    (ii)    the benefit determined using the RIP Formula (or, if applicable and greater, the pre-ERISA formula described in Section (2)(iii) or (2)(iv)) adjusted to reflect the form and starting date of the benefit being paid using the reduction factors described in Article I(11) for form and the adjustment factors in Section 2(b) of this Annex for starting date.

and (B) equals:

>    The benefit the Participant was eligible to receive as of the date such Participant retired from active service, in the form in which it was paid on such date.

Such increase, if any, shall be payable in the same form of payment as originally elected by the Participant.

LMC 000381

IN WITNESS WHEREOF, Lockheed Martin Corporation has caused this instrument to be executed on this _19_ day of _F¹BₐᵤₐₐY_ 2002.

**LOCKHEED MARTIN CORPORATION**

By: _Terry F Powell_
    Terry F. Powell
    Senior Vice President, Human Resources

WITNESS:

LMC 000382

# LOCKHEED MARTIN CORPORATION RETIREMENT PROGRAM
## SALARIED PLAN ANNEX

This Annex is included in the Plan in order to allow certain employees of the Corporation to continue after June 30, 1997 to accrue certain benefits under terms similar to those of the Plan in effect on June 30, 1997. The portion of the Plan other than this Annex shall apply to all Salaried Plan Participants, and Sections (1) through (8) of this Annex shall apply to Transition Salaried Participants (as defined below) only to the extent those sections differ from the remainder of the Plan, and Section (9) of this Annex shall apply to certain Salaried Plan Participants who retired from active service after December 1, 1996 and prior to July 1, 1997 only to the extent such section differs from the remainder of the Plan. Nothing in this Annex shall cause any Participant to receive duplicate credit for the same period of service or to receive duplicate benefits with respect to the same period of time. All references in this Annex to a "Section" shall be a reference to a Section in this Annex, unless specifically indicated otherwise, and all references in this Annex to an "Article" shall be a reference to an Article in the Plan document other than this Annex.

(1)     **DEFINITIONS**

(a)     <u>CORE ACTIVE EARLY RETIREMENT FACTOR</u>:

A reduction of the amount of the retirement benefit of a Participant who retires from active service prior to his Normal Retirement Date equal to 5/12ths of one percent for each complete month by which commencement of a Participant's retirement benefit precedes the first of the month following the attainment of age 60.

(b) <u>CORE FINAL AVERAGE PENSIONABLE EARNINGS</u>:

Final Average Pensionable Earnings as defined in Article I(13).

(c) <u>CORE FORMULA</u>:

The benefit accrual formula described in Article V(1) using Core Final Average Pensionable Earnings.

(d) <u>CORE TERMINATED EARLY RETIREMENT FACTOR</u>:

A reduction of the amount of the retirement benefit of a Participant who Terminates Employment (other than by death) prior to being eligible to receive retirement benefits and who later retires prior to his Normal Retirement Date equal to the factors in the table below based on the Participant's age on the Benefit Commencement Date, with proportionate reduction for non-integer commencement ages:

B-1

LMC 000383

| Commencement Age | Reduction | Commencement Age | Reduction |
|---|---|---|---|
| 65 | 0% | 59 | 48.6% |
| 64 | 10.1% | 58 | 53.9% |
| 63 | 19.4% | 57 | 58.4% |
| 62 | 27.9% | 56 | 62.1% |
| 61 | 35.6% | 55 | 65.0% |
| 60 | 42.5% | | |

(e) <u>RULE OF 85 SERVICE</u>:

The amount of Credited Service, plus other service for a member of the Control Group (as determined by the Plan Administrator on a nondiscriminatory, consistent basis) of a Transition Salaried Participant since such Participant's most recent Break in Service, as defined in Article III(3)(C).

(f) <u>SALARIED PLAN FORMULA</u>:

For purposes of the Annex (subject to provisions applicable to certain groups, described in Section 6), the Salaried Plan Formula shall be:

(i)     the amount obtained by multiplying $195 by Credited Service not in excess of 35 years and adding thereto the amount obtained by multiplying 1.5% of Transition Average Excess Pensionable Earnings by Credited Service not in excess of 35 years, plus

(ii)    the amount obtained by multiplying 1.5% of Transition Final Average Pensionable Earnings by Credited Service beyond 35 years but not in excess of 40 years, plus

(iii)   the excess, if any, of A over B, where

(A)    the amount of the unadjusted benefit calculated (on the basis of Credited Service hereunder) that the Participant would have received under the Lockheed Martin Corporation Retirement Plan for Certain Hourly Employees, as in effect for hourly employees at the time of a Member's Termination of Employment at the location from which the Member is terminating, and

(B)    the sum of the amounts determined under paragraphs (i) and (ii) above.

WDC/160204.1

LMC 000384

(g) <u>TRANSITION ACTIVE EARLY RETIREMENT FACTOR:</u>

A reduction of the amount of the retirement benefit of a Participant who retires from active service prior to his Normal Retirement Date equal to 2.5/12 of one percent times the lesser of:

(i)     each month, if any, by which the total of such Participant's age as of the commencement of benefit and Rule of 85 Service is less than the number 85, or

(ii)    each month by which such Participant is, at the time of commencement of benefit, under the age of 65.

(h) <u>TRANSITION AVERAGE EXCESS PENSIONABLE EARNINGS:</u>

The amount of Transition Final Average Pensionable Earnings in excess of $15,600.

(i)  <u>TRANSITION FINAL AVERAGE PENSIONABLE EARNINGS:</u>

The amount determined by taking the amount of Pensionable Earnings of an Employee during the five consecutive calendar years selected from the most recent ten calendar years of his Period of Employment as defined in Article III(1) in respect of which he shall have the greatest aggregate amount of Pensionable Earnings, and dividing such amount by five. In the case of an Employee whose Period of Employment shall not include five calendar years, or in the case where Pensionable Earnings of a Participant for a calendar year are not available or there is an insufficiency of information to properly determine the Transition Final Average Pensionable Earnings, then the Transition Final Average Pensionable Earnings for such Participant shall be as determined in a non-discriminatory manner by the Plan Administrator based upon such information as is available. For Transferred Individuals (as defined in Section (6)(f)(i) below), Pensionable Earnings for purposes of determining Transition Final Average Pensionable Earnings shall be the amount of compensation determined under the Prior Plan (as defined in Section (6)(f)(i) below).

(j) <u>TRANSITION PERIOD:</u>

The five-year period of time beginning on July 1, 1997 and ending on June 30, 2002.

(k) <u>TRANSITION SALARIED PARTICIPANT:</u>

Any person who is an active Participant in the Salaried Plan on or after July 1, 1997 and whose Credited Service is attributable in part to a period prior to July 1,

WDC/160204.1

LMC 000385

1997 or whose retirement from active service under the Salaried Plan becomes effective July 1, 1997.

(l) <u>TRANSITION TERMINATED EARLY RETIREMENT FACTOR:</u>

A reduction of the amount of the retirement benefit of a Participant who Terminates Employment (other than by death) prior to being eligible to receive retirement benefits and who later retires prior to his Normal Retirement Date equal to the factors in the table below based on the Participant's age on the Benefit Commencement Date, with proportionate reduction for non-integer commencement ages:

| Commencement Age | Reduction | Commencement Age | Reduction |
|---|---|---|---|
| 65 | 0% | 59 | 48.8% |
| 64 | 11.1% | 58 | 53.9% |
| 63 | 20.8% | 57 | 58.7% |
| 62 | 29.2% | 56 | 62.4% |
| 61 | 36.6% | 55 | 66.0% |
| 60 | 43.1% | | |

(m) <u>YEAR OF SERVICE:</u>

A Year of Service, as such term was defined in the Plan on June 30, 1997.

(2)   **AMOUNT OF BENEFIT FOR TRANSITION SALARIED PARTICIPANTS WHO RETIRE FROM ACTIVE SERVICE**

Except as modified by Section (6) with respect to Transferred Employees (as defined therein), the retirement benefit of a Salaried Plan Participant shall be:

(a) <u>NORMAL RETIREMENT BENEFIT.</u>

(i)    <u>Transition Period</u>. During the Transition Period, the retirement benefit of a Transition Salaried Participant who retires from active service on or after his Normal Retirement Date shall be the greater of the amount in (A) or (B) below:

(A)    The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings.

(B)    The amount determined using the Salaried Plan Formula applied to such Participant's Credited Service and using Transition Average Excess Pensionable Earnings.

LMC 000386

     (ii)    <u>Post Transition Period</u>. After the end of the Transition Period, the retirement benefit of a Transition Salaried Participant who retires from active service on or after his Normal Retirement Date shall be the greater of the amount in (A) or (B) below:

         (A)    The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings.

         (B)    The amount determined by adding I plus II below:

             I.    The amount determined by applying the Salaried Plan Formula to such Participant's Credited Service through June 30, 2002 using Transition Average Excess Pensionable Earnings.

             II.    The amount determined by applying the Core Formula to such Participant's Credited Service after June 30, 2002 using Core Final Average Pensionable Earnings.

(b) <u>EARLY RETIREMENT FROM ACTIVE SERVICE.</u>

     (i)    <u>Transition Period</u>. The amount payable to a Transition Salaried Participant who retires from active service during the Transition Period at age 55 or older with at least ten years of Benefit Eligibility Service, but prior to his Normal Retirement Date, shall be the greater of the amount in (A) or (B) below:

         (A)    The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings, reduced by the Core Active Early Retirement Factor.

         (B)    The amount determined using the Salaried Plan Formula applied to such Participant's Credited Service and using Transition Average Excess Pensionable Earnings and reduced by the Transition Active Early Retirement Factor.

     (ii)    <u>Post Transition Period</u>. The amount payable to a Transition Salaried Participant who retires from active service after the end of the Transition Period at age 55 or older with at least ten years of Benefit Eligibility Service, but prior to his Normal Retirement Date, shall be the greater of the amount in (A) or (B) below:

LMC 000387

(A)     The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings, reduced by the Core Active Early Retirement Factor.

(B)     The amount determined by adding I plus II below:

      I.     The amount determined by applying the Salaried Plan Formula to such Participant's Credited Service through June 30, 2002 using Transition Average Excess Pensionable Earnings and reduced by the Transition Active Early Retirement Factor.

      II.     The amount determined by applying the Core Formula to such Participant's Credited Service after June 30, 2002 using Core Final Average Pensionable Earnings and reduced by the Core Active Early Retirement Factor.

(iii)     <u>Supplement</u>.  Transition Salaried Participants who retire early shall be entitled to the supplement provided under Article V(4) in addition to the benefit provided in paragraph (i) or (ii) above, provided such Participant is eligible to receive such supplement under the terms of Article V(4).

(iv)     <u>Layoffs</u>.  Notwithstanding the foregoing, a Transition Salaried Participant who is laid off due to a reduction in force, plant closing, or lack of work and who either (1) has earned at least 25 years of Benefit Eligibility Service at the time of such layoff or (2) has attained age 53 and has earned at least eight years of Benefit Eligibility Service at the time of such layoff, shall be treated as if he retired from active service and have his benefit determined in accordance with this Section 2(b)(i) if such Participant begins receiving benefits on or after the first of the month after attaining age 55 and prior to attaining age 65 and shall be treated as retiring under Section 2(a) if such Participant begins receiving benefits on his Normal Retirement Date.  In the case of a Transition Salaried Participant who, at the time of such layoff, had 25 years of Benefit Eligibility Service but had not met the requirements of clause (2) above, such Participant's Rule of 85 Service shall include up to 24 months of such period of layoff if the Participant did not lose seniority as a result of a refusal of recall for employment by the Corporation from such layoff.

WDC/160204.1

LMC 000388

**(3)     AMOUNT OF BENEFIT FOR TRANSITION SALARIED PARTICIPANTS WHO RETIRE FROM TERMINATED VESTED STATUS**

(a) <u>NORMAL RETIREMENT BENEFIT.</u>

(i)     <u>Transition Period</u>.  The retirement benefit of a Transition Salaried Participant who Terminates Employment during the Transition Period with a vested benefit and retires from terminated vested status (as determined under this Annex) on his Normal Retirement Date shall be the greater of the amount in (A) or (B) below:

   (A)     The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings.

   (B)     The amount determined using the Salaried Plan Formula applied to such Participant's Credited Service and using Transition Average Excess Pensionable Earnings.

(ii)     <u>Post Transition Period</u>.  The retirement benefit of a Transition Salaried Participant who Terminates Employment after the end of the Transition Period with a vested benefit and retires from terminated vested status on his Normal Retirement Date shall be the greater of the amount in (A) or (B) below:

   (A)     The amount determined using the Core Formula applied to such Participant's Credited Service and using Core Final Average Pensionable Earnings.

   (B)     The amount determined by adding I plus II below:

      I.     The amount determined by applying the Salaried Plan Formula to such Participant's Credited Service through June 30, 2002 using Transition Average Excess Pensionable Earnings.

      II.     The amount determined by applying the Core Formula to such Participant's Credited Service after June 30, 2002 using Core Final Average Pensionable Earnings.

(b) <u>EARLY RETIREMENT BENEFIT</u>

The amount payable to a Transition Salaried Participant who Terminates Employment with a vested benefit in the Plan but prior to being eligible to receive retirement benefits beginning on the first of the month following such

B-7

LMC 000389

Termination of Employment (and not eligible for special layoff benefits described in Section (2)(b)(iv) above) and who later retires from terminated vested status prior to his Normal Retirement Date but after attaining age 55 and ten years of Benefit Eligibility Service shall be the amount determined under Section 3(a), reduced by the applicable Core Terminated Early Retirement Factor.

**(4)     DISABILITY RETIREMENT BENEFIT.**

(a) <u>General Eligibility Rule</u>.  A Transition Salaried Participant who:

     (i)     has ten or more years of Benefit Eligibility Service (excluding any service for General Dynamics Corporation) as of June 30, 1997, and

     (ii)    has not reached 65 years of age, and

     (iii)   has been totally and permanently disabled, as defined in Section 3(b), for a period of six consecutive months immediately prior to Termination of Employment and such disability commences prior to July 1, 2002, and

     (iv)   submits a written application for disability retirement benefits, and

     (v)    at the time he becomes totally and permanently disabled is not receiving monthly retirement benefits under the Plan or under a defined benefit plan sponsored by a member of the Control Group,

shall be eligible for disability retirement benefits in the amount and subject to the conditions set forth herein.

(b) <u>Total and Permanent Disability.</u>  A Transition Salaried Participant shall be deemed to be totally and permanently disabled, when, on the basis of medical evidence satisfactory to the Plan Administrator, the Plan Administrator finds that he is wholly and permanently prevented from engaging in any occupation or employment for wage or profit as the result of bodily injury or disease, either occupational or non-occupational in cause, except such employment as is found by the Plan Administrator to be so irregular as to time and nature that it should be excepted, or is found by the Plan Administrator to be for purposes of rehabilitation.  A Transition Salaried Participant shall not be deemed totally and permanently disabled if, on the basis of proof satisfactory to the Plan Administrator, the Plan Administrator finds that the Participant's incapacity (1) is due to, or results from, an intentionally self-inflicted injury; (2) is due to, or results from, an injury incurred while engaged in a felonious enterprise; or (3) resulted from service in the armed forces of any country.

(c) <u>Medical Examination</u>.  A Transition Salaried Participant applying for disability retirement benefits or receiving disability retirement benefits may be required to submit to medical examination at any time, but not more often than semi-annually, to determine

WDC/160204.1

LMC 000390