1
2
3
4
5
6
7
8
9
10
11
12

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREW J. NALBANDIAN, JR., an individual; GREGORY M. NALBANDIAN, an individual; and THE ESTATE OF ANDREW J. NALBANDIAN, SR., deceased,<br><br>      Plaintiffs,<br><br>  v.<br><br><br>LOCKHEED MARTIN CORPORATION, a Maryland corporation, as Administrator and Fiduciary of the LOCKHEED MARTIN CORPORATION SALARIED EMPLOYEE RETIREMENT PROGRAM; LOCKHEED MARTIN CORPORATION SALARIED EMPLOYEE RETIREMENT PROGRAM, an Employee Pension Plan within the meaning of 29 U.S.C. §§ 1002(2)(a) and 1002(35); and DOES 1 through 50, inclusive,<br><br>      Defendants. | Case No.: 10-CV-1242-LHK<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

This is an action for retirement benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"). Before the Court are the parties' cross-motions for summary judgment. The Court held a hearing on the parties' motions on August 25, 2011. Having considered the parties' submissions and arguments, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment.

## I.   Background

Andrew J. Nalbandian, Sr. (Mr. Nalbandian, Sr.) was employed by Lockheed Martin Corporation (Lockheed) for forty two years. Dkt. No. 75, Declaration of Gina L. Moyles in Support of Plaintiffs' Motion (Moyles Decl.), Ex. 1, at 22-24. Mr. Nalbandian, Sr. worked well past his retirement date, and received formal recognition as an outstanding engineer via his continued employment as a "Lockheed Fellow." *Id.* Mr. Nalbandian, Sr. passed away on February 22, 2009. Dkt. No. 71, Declaration of Kathleen Roos in Support of Defendants' Motion (Roos Decl.), Ex. 1, LMC 00029 (Certificate of Death). The central dispute in this case is whether Mr. Nalbandian, Sr.'s sons, Andrew and Gregory Nalbandian, are entitled to benefits as beneficiaries of Mr. Nalbandian, Sr. under Lockheed's employee retirement plan.

### A.   The Plan

Mr. Nalbandian, Sr. participated in the Lockheed Martin Corporation Salaried Employee Retirement Program (Plan), a defined benefits program which the parties agree is governed by ERISA. The Plan is a defined benefits plan, in which a participant receives a fixed level of retirement income based on the participant's years of service and compensation. *See* Roos Decl., Ex. 2, LMC 296-99 (Art. V, "Amount of Benefit"). Unlike a defined contribution plan, the amount of the benefit does not depend on the amount of a participant's contributions. *See id.* Instead, the Plan provides certain automatic benefits for spouses of deceased participants. *See id.*, LMC 312-13 (Art. VII ("Pre-Retirement Surviving Spouse Benefits")); *id.*, LMC 301 (Art. VI(1) ("Automatic and Optional Forms of Payment – Joint and Survivor Annuity")). These benefits are required under ERISA § 205(a)(2). *See* 29 U.S.C. § 1055 (a)(2).

The Plan separately provides Participants with the option of designating non-spouse beneficiaries of their choice. *See* Roos Decl., Ex. 2, LMC 302 (Art. VI(3)("Guaranteed Payments

Case No.: 10-CV-01242-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Option"). These non-spouse beneficiaries may receive the retirement benefits of a deceased participant for either five or ten years after the participant's Benefit Commencement Date, depending on the retirement plan selected by the participant. *See id.* If an unmarried participant does not select an optional form of payment, the default form of payment is the Lifetime of the Participant Only Option. *See id.*, LMC 00303 (Art. VI(5)). The selection of a Guaranteed Option is completely within the discretion of a Plan participant. Mr. Nalbandian, Sr. selected the retirement payment option of "Life with 5 Year Guarantee," designating his sons, Andrew J. Nalbandian, Jr. and Gregory M. Nalbandian (Plaintiffs), as beneficiaries.

The Plan defines "Benefit Commencement Date" as "[t]he effective date on which payment of a Participant's retirement benefit commence in accordance with the terms of the Plan..." *Id.* at LMC 272 (Art. I(3)). For a Participant who continues working past his Normal Retirement Date (e.g., past 65 years old), the Plan states that the participant "shall receive his retirement benefit on the first day of the month following Termination of Employment." *Id.* at LMC 00296-97 (Art. V(3)(a)-(b)). The Plan defines "Termination of Employment" as occurring at the first of: (1) death, (2) resignation, (3) involuntary termination, or (4) eligibility for long term disability. *Id.* at 282 (Art I(28)). Here, Mr. Nalbandian, Sr. terminated his employment on February 9, 2009.

Art. V(3)(c) provides for other "benefits" paid to a Participant who continues working past age 70.5, even while the Participant continues working. *Id.* at LMC 00297. These benefits are Minimum Required Distributions, which are payable to Participants who have accumulated an interest via their employment. *See id.*, LMC 304-09 (Art. VI-A); *see also id.,* LMC 303-04 (Art. VI(6)(e)). These Minimum Required Distributions are mandated by Internal Revenue Code § 401(a)(9). The Plan provides for payment of a deceased Participant's interest in Minimum Required Distributions to a spouse or designated beneficiary. *See id.*, LMC 305 (Art. VI-A(b)(2)("Death of a Participant Before Distribution Begins"); *see also id.,* LMC 303-04 (Art. VI(6)(e)). In the case of a surviving spouse, the payment occurs after the Participant would have turned 70.5, but the Plan provides for this distribution to an heir in the absence of a surviving spouse or designated beneficiary. *See id.* ."). Here, there is no dispute that Mr. Nalbandian, Sr.

Case No.: 10-CV-01242-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

was "receiving MRD [Minimum Required Distribution] payments through the end of the February 2009." Moyles Decl. Ex. 34, p. 2-3 (final denial letter).

### B. Mr. Nalbandian, Sr.

On August 9, 2008, Mr. Nalbandian, Sr. had to take leave from work, and went on short term disability due to leukemia. Moyles Decl., Ex. 2, at 17-18, Ex. 3, NAL 00002. According to Plaintiffs, Mr. Nalbandian, Sr. could only remain on short term disability for six months, and would have to terminate his employment on or around February 9, 2009. *See* Moyles Decl., Ex. 8; Plaintiffs' Motion for Summary Judgment (Plaintiffs' MSJ) at 3.

On or about August 9, 2008, Mr. Nalbandian, Sr. told his son Andrew Nalbandian, Jr. that he wanted to retire between January 1, 2009 and the early February expiration of his short term disability. Declaration of Andrew J. Nalbandian, Jr. in Support of Motion (A. Nalbandian Decl.) ¶¶ 2-3. Mr. Nalbandian, Sr. requested retirement information from Lockheed around September 15, 2008, and thereafter, Lockheed sent him a pension estimate based upon a Benefit Commencement Date of February 1, 2009. *See* Moyles Decl., Ex. 4, LMC 938-43.

Mr. Nalbandian, Sr. contacted Lockheed by phone on January 9 and January 22, 2009, again seeking retirement information. *See* Moyles Decl., Exh. 5-6, 8. He was particularly concerned that his employee medical coverage would run out on February 9, 2009, the first of three consecutive days of scheduled chemotherapy. *See* Plaintiffs' MSJ at 3. A Lockheed employee, Dana Robinson, explained that if Mr. Nalbandian, Sr.'s last day as an employee were February 9, the earliest date that Mr. Nalbandian, Sr. could receive his retiree benefits ("benefits commencement date") was March 1, 2009. Moyles Decl., Ex. 8, at 16-17. According to Plaintiffs, Ms. Robinson did not raise the possibility of adopting a January 2009 Termination of Employment, which would have pushed up the Benefits Commencement Date. *See* Moyles Decl., Ex. 8.

Mr. Nalbandian, Sr. received his retirement paperwork on January 29, 2009. *See* Moyles Decl., Ex. 10. On February 5, 2009, he again contacted Lockheed to ensure that he would have medical insurance between his scheduled Termination of Employment on February 9 and his Benefit Commencement Date on March 1. *See* Moyles Decl. Exh. 11, 14. The Lockheed

Case No.: 10-CV-01242-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

employees in the Benefits Department that spoke to Mr. Nalbandian, Sr. were uncertain whether he could still obtain a February 1 Benefit Commencement Date.  One employee explained to Mr. Nalbandian, Sr. that a March 1 Benefit Commencement Date was guaranteed, while a February 1 Benefit Commencement Date was uncertain.  *See* Moyles Decl., Ex. 14, at 3-4.  The employee also explained that he thought Mr. Nalbandian, Sr. could receive medical coverage for his February 10 and 11, 2009 chemotherapy sessions.  *Id.*

   Mr. Nalbandian, Sr. signed his retirement benefits paperwork on February 9, 2009 and selected the payment option of "Life with 5 Year Guarantee," designating his sons, Andrew J. Nalbandian, Jr. and Gregory M. Nalbandian (Plaintiffs), as beneficiaries.  *See* Roos Decl., Ex. 1, LMC 00031-37 (Pension Benefit Election Form contained in the Administrative Record).  Mr. Nalbandian Sr.'s son, Andrew J. Nalbandian, Jr., helped his father complete the benefit package. A. Nalbandian Decl. ¶ 6.  Mr. Nalbandian, Sr. passed away on February 22, 2009, prior to his March 1, 2009 Benefit Commencement Date.

   On March 11, 2009, Lockheed sent Plaintiffs a tentative Benefits Summary indicating that Plaintiffs would receive survivor benefits as the beneficiaries of Mr. Nalbandian, Sr.  However, Lockheed later sent Plaintiffs a revised summary explaining that, because Mr. Nalbandian, Sr. had died before his March 1, 2009 Benefit Commencement Date, no survivor benefits were payable to Plaintiffs.  On April 7, 2009, Lockheed sent Plaintiffs an Updated Benefits Summary indicating that no survivor benefits would be paid, and instead Plaintiffs would receive $50,000 in life insurance.  *See* Moyles Decl., Exh. 21-23 (Lockheed internal correspondence and resulting Benefits Summaries); Moyles Decl., Exh. 25-27. (Lockheed internal correspondence and resulting Updated Benefits Summaries).  Lockheed denied Plaintiffs' request for benefits in April 20, 2009 letter, and denied Plaintiffs' appeal in a June 19, 2009 letter.  *See* Moyles Decl., Ex. 28 (denial of benefits request); Moyles Decl., Ex. 34 (denial of benefits appeal).  Plaintiffs timely brought this civil action against Lockheed and the Plan (Defendants), alleging claims under ERISA and equitable estoppel.  Before the Court are the parties' cross-motions for summary judgment.

## II.  Legal Standards

### A.  Standard of Review in ERISA Cases

Under ERISA § 502, a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); *see also CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1871 (2011); *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210 (2004).  A claim of denial of benefits in an ERISA case "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Montour v. Hartford Life & Acc. Ins. Co.,* 588 F.3d 623, 629 (9th Cir. 2009).  If the plan confers such discretion, then the denial is reviewed for an abuse of discretion.  *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 110–11 (2008).  The parties agree that the abuse of discretion standard is appropriate for the case at hand.

Under an abuse of discretion review, the dispositive issue is whether the denial of benefits was reasonable.  *Firestone*, 489 U.S. at 111; *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011).  A plan administrator's decision was unreasonable if it "was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts of the record."  *Salomaa*, 642 F.3d at 676.  If the Court is "left with a definite and firm conviction that [such] a mistake has been committed," it must find that the plan administrator abused its discretion.  *Id.* at 676 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)).

A plan administrator's conflict of interest is weighed as a factor when reviewing its decisions for abuse of discretion.  *Glenn,* 554 U.S. at 111–12.  Where there is a structural conflict of interest because the claim fiduciary is also the funding source for the Plan, that conflict does not lead to a less deferential standard of review; rather, like most procedural violations, the conflict is merely one additional factor to be considered in determining whether a fiduciary abused its discretion.  *Id.*; *see also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006) (holding that most violations of the ERISA procedures for processing benefits claims are merely weighed as a factor during review for abuse of discretion).

United States District Court
For the Northern District of California

### B.  Summary Judgment Standard of Review.

Summary judgment should be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  Material facts are those which may affect the outcome of the case, and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "[T]he district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559–560 (2006).

In ERISA actions, however, where the plaintiff is challenging the plan administrator's denial of benefits and the district court has already determined that the review is for abuse of discretion, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply."  *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 942 (9th Cir.1999), *overruled in part on other grounds by Abatie,* 458 F.3d at 966–69; *see also Nolan v. Heald College,* 551 F.3d 1148, 1154-55 (9th Cir.2009).  Thus, a summary judgment motion resting on the administrative record is not a typical summary judgment, but rather, is a procedural vehicle for determining whether benefits were properly granted or denied.  On the other hand, the traditional rules of summary judgment do apply to evidence outside of the administrative record, including the requirement that the evidence must be viewed in the light most favorable to the non-moving party.[1]  *Nolan,* 551 F.3d at 1150.

---

[1]  The Court notes that expert reports prepared for litigation are not part of the administrative record.  *See* Moyles Decl., Exh. 37-39 (Report of Mark Johnson).  To the extent that extrinsic evidence is admissible regarding the claims at issue, the Court notes that Plaintiffs' expert has submitted a report largely limited to a review the factual record and legal conclusions regarding interpretation of the Plan, functioning at best as supplemental briefing for the Plaintiffs.  *See id.*  At the August 25, 2011, counsel for Plaintiffs conceded that Mr. Johnson's report contained little more than legal conclusions and a summary of the record already in evidence.  Thus, the Court will not rely upon the expert reports in its abuse of discretion review.

Case No.: 10-CV-01242-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Thus, in evaluating Plaintiffs' equitable estoppel claim the Court will apply standard Rule 56 analysis. Similarly, the Court will apply standard Rule 56 analysis when it determines the degree of skepticism to apply to its ultimate abuse of discretion analysis by reviewing extrinsic evidence on structural conflict of interest and evidence of bias. *See Nolan*, 511 F.3d at 1154-55. However, the Court will decide abuse of discretion by weighing evidence in the administrative record, including evidence of procedural violations. *Id.*

### III. Discussion

#### A. Standard of Review for Plaintiffs' Claims

The parties agree that, because Lockheed both funds and administers the Plan, a structural conflict of interest exists. A structural conflict of interest without further evidence of bias, however, only slightly increases the Court's level of skepticism during review for abuse of discretion. *See Ramos v. Bank of Am.*, Case No. C 08-1375 PJH, 2011 WL 900365 at *19 (N.D. Cal., Mar. 15, 2011). There is little, if any, evidence of actual bias in the claims review process. There were, however, potential procedural errors that suggest a slightly higher degree of skepticism. *Abatie*, 458 F.3d at 972 (procedural violations are factors "to be weighed in deciding whether an administrator's decision was an abuse of discretion.").

ERISA requires plan administrators to follow certain practices when processing and deciding plan participants' claims. *See* 29 C.F.R. § 2560.503–1; *Abatie*, 458 F.3d at 971. As explained by the Ninth Circuit in *Mitchell v. CB Richard Ellis Long Term Disability Plan*, "[not] requiring that plan administrators provide a participant with specific reasons for denial would allow claimants, who are entitled to sue once a claim had been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced." 611 F.3d 1192, 1199 n. 2 (9th Cir. 2010) (quoting *Jebian*, 349 F.3d at 1104). Mitchell was confronted with a new argument during district court proceedings: that he had submitted his benefits request to the wrong institution. *Mitchell*, 611 F.3d at 1197. Had this argument been accurate and timely raised during administrative review, Mitchell likely could have taken corrective action by submitting a benefits request to the correct institution. Thus, like *Abatie*, *Mitchell* addressed a plan administrator who untimely raised an entirely new rationale for denial and thereby blocked potential substantive

8

Case No.: 10-CV-01242-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

responses that would otherwise have been available to the beneficiary. *Mitchell*, 611 F.3d at 1197; *Abatie*, 458 F.3d at 974.

Here, Plaintiffs have correctly noted Defendants' failure to fully comply with 29 C.F.R. § 2560.503–1 (g), which provides that when rejecting a claim for benefits, the plan administrator must provide "(i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."

Defendants complied with some provisions of 29 C.F.R. § 2560.503–1 (g). For example, Plaintiffs do not dispute that Defendants complied with (g)(iii) and (g)(iv). Furthermore, the Court finds that Defendants complied with (g)(i) by consistently explaining to Plaintiffs that because Mr. Nalbandian, Sr. was unmarried and passed away before his March 1, 2009 Benefits Commencement Date, no benefits were payable to the sons under the Plan. *See* Moyles Decl., Ex. 28, p. 2 (initial denial letter, as quoted in Plaintiffs' Motion of Summary Judgment at 13) ("Given that Mr. Nalbandian passed away prior to his BCD [Benefit Commencement Date] . . . [and] is not survived by a Spouse at the time of his death, no benefits are payable from the Plan."); Moyles Decl. Ex. 34, p. 2-3 (final denial letter) ("In summary, Mr. Nalbandian, Sr. was receiving MRD [Minimum Required Distribution] payments through the end of the February 2009. Following his Termination of Employment on February 10, 2009 he elected to retire on a Benefit Commencement Date of March 1, 2009, but died on February 22, 2009 prior to commencing his retirement benefits. Since Mr. Nalbandian, Sr. died prior to March 1, 2009 and was unmarried, there are no benefits payable to any surviving beneficiaries. Therefore, the Committee has denied Mr. Nalbandian Jr.'s claim on appeal in accordance with Article IX(2)(a).").

Plaintiffs note that Defendants' denial letters did not reference all of the Plan provisions that support the stated basis for denial. *See* Plaintiff's Reply at 5-6. These provisions, discussed

9

below, are within Article VI ("Automatic and Optional Forms of Payment"). *Id.* at 6.  Defendants did point out other Plan provisions which they contend support their denial, like Article IX(2)(a). *See* Moyles Decl., Ex. 28, p. 1; Moyles Decl., Ex. 34, p. 1 (both denial letters quoting Article IX(2)(a)) ("the retirement benefit payable hereunder to a Participant shall be payable in monthly installments commencing, if he shall be living, as of the first day of the month following the latest of (i) [his] actual retirement date . . . (ii) the date specified in the application . . . as the date [his] retirement shall commence, or (iii) the date on which [he] shall have furnished the Plan Administrator the information necessary to determine his benefit and make payment."). Defendants' failure to cite to all of the provisions in the Plan that support denial could be viewed as a procedural violation.

The Court, however, disagrees and finds that Defendants substantially complied with 29 C.F.R. § 2560.503–1 (g) by citing provisions supporting the determination that survivor benefits were not payable to Mr. Nalbandian, Sr.'s sons.  Plaintiffs rely heavily on the Ninth Circuit's decision in *Mitchell*, which, as discussed above, emphasized the need to prevent administrators from "sandbagging" claimants with untimely disclosed rationales for denial.  *Mitchell*, 611 F.3d at 1199 n. 2.  Despite Plaintiffs' protests to the contrary, Plaintiffs have clearly not been sandbagged. The denial of benefits has always rested upon two facts:  (1) Mr. Nalbandian, Sr.'s Termination of Employment was February 10, 2009, resulting in a March 1, 2009 Benefit Commencement Date; (2) he passed away February 22, 2009, prior to the March 1, 2009 Benefit Commencement Date. *See* Roos Decl. Ex. 1, LMC 00029, 00037-38 (evidence of Mr. Nalbandian, Sr.'s termination of employment and of his passing, contained in the administrative record).  Plaintiffs have repeatedly been put on notice that they could rebut Defendants' rationale for denial by challenging these facts. *See* Moyles Decl., Ex. 28, p. 2; Moyles Decl., Ex. 34, p. 2-3 (as quoted above).  Indeed, Plaintiffs argued against a March 1, 2009 Benefit Commencement Date in their initial appeal of denial.  *See* Roos Decl. Ex. 1, LMC 00003 (letter from Plaintiffs' attorney appealing denial of benefits, including a section entitled "Mr. Nalbandian, Sr. Died after his Benefit Commencement Date"). Defendants repeatedly cited Article IX(2)(a) as supporting their rationale and to the extent that

1   Defendants now specifically reference additional supporting provisions did not prevent Plaintiffs

2   from perfecting their claim for benefits.

3       In sum, the Court will apply an abuse of discretion standard, with only a slight increase in

4   the level of skepticism.

5           **B.  Defendants' denial of survivor benefits was not unreasonable.**

6       Article VI sets forth Plan participants' "Automatic and Optional Forms of Payment."

7   Article VI(5) explains that "for a Participant who does not have a Spouse on his Benefit

8   Commencement Date" the "Lifetime of Participant Only Option" (Lifetime Only Option) is the

9   "automatic form of payment." *See* Roos Decl., Exh. 3, at LMC 00302.  The Lifetime Only Option

10  provides that "retirement benefit[s are]... payable only during the lifetime of the Participant with no

11  further payments to anyone after his death." *Id.*

12      Mr. Nalbandian, Sr. selected the 5-Year Guaranteed Option set forth in Article VI(3);

13  however Article VI(6)(b) provides that "[t]he election of an option form [of payment] shall become

14  effective on the Participant's Benefit Commencement Date." *See* Roos Decl., Ex. 1, LMC 00031-

15  37 (Pension Benefit Election Form contained in the Administrative Record); Roos Decl., Ex. 3, at

16  LMC 00302 (Art. VI(6)(b)).  Thus, under the terms of the Plan, Mr. Nalbandian, Sr.'s selection of

17  the Guaranteed Option had not "become effective" when he passed away prior to his March 1,

18  2009 Benefit Commencement Date.  Rather, as Defendants contend, Mr. Nalbandian was still

19  covered by the automatic Life Only Option.

20      Plaintiffs argue that Mr. Nalbandian, Sr.'s actual Benefit Commencement Date occurred

21  before his death, because he had begun receiving benefits under Article V(3)(c).  The Plan defines

22  "Benefit Commencement Date" as "[t]he effective date on which payment of a Participant's

23  retirement benefit commence in accordance with the terms of the Plan..." *Id.* at LMC 272 (Art.

24  I(3)).  For a Participant like Mr. Nalbandian, Sr. who continues working past his Normal

25  Retirement Date (e.g., age 65), the Plan states that he "shall receive his retirement benefit on the

26  first day of the month following Termination of Employment."  *Id.* at LMC 00296-97 (Art.

27  V(3)(a)-(b)).  The Plan defines "Termination of Employment" as occurring at the first of: (1) death,

28  (2) resignation, (3) involuntary termination, or (4) eligibility for long term disability.  *Id.* at 282

11

(Art I(28)).  It is undisputed that Mr. Nalbandian, Sr.'s Termination of Employment occurred by resignation on February 9, 2009.  As such, Mr. Nalbandian, Sr.'s Benefit Commencement Date was March 1, 2009.

The Plan provision setting forth the Guaranteed Option supports the already unambiguous determination that no payments can be due under the Guaranteed Option when a Participant passes away prior to his Benefit Commencement Date.  Article VI(3) states, "[a] Participant may . . . elect to receive [an actuarially reduced] retirement benefit . . . payable during his lifetime with the provision that *if he shall die after the Benefit Commencement Date* and before 60 or 120 monthly payments have been made . . . such payments . . . shall continue for the remainder of such 60-month or 120-month period to the Beneficiary of the Participant."  *Id.* at LMC 00301 (Art. VI(3)) (emphasis added).  Article VI(6)(b) provides that "[t]he election of an option form [of payment] shall become effective on the Participant's Benefit Commencement Date."   Under these two provisions, non-spouse beneficiaries of a participant that dies before his Benefit Commencement Date are not entitled to survivor retirement benefits.  *Id.*  Thus, Article VI(3) set forth the same unambiguous rule as Article VI(5) and VI(6)(2): no payments are due to the non-spouse beneficiaries under the Guaranteed Option if a Plan participant dies prior to his Benefit Commencement Date.

A recent case, *Matlock v. Pitney-Bowes, Inc.*, 751 F. Supp. 2d 823 (M.D.N.C. 2010), involved nearly identical factual circumstances.  In *Matlock*, an employee undergoing cancer treatment received disability payments up until September 2006.  In September 2006, the employee filed papers terminating his employment, but passed away prior to his October 1 retirement / annuity commencement date.  The *Matlock* Plan provided that no benefits were payable to an employee if he were unmarried and passed away before his benefit commencement date.  In *Matlock*, the court found that the employee's estate was not entitled to the lump sum benefit he had selected because the employee passed away prior to October 1, 2006, the date his benefits were set to commence.

Here, as in *Matlock*, the Plan participant "simply misjudged how long he could continue to remain an active employee and receive these benefits before making his retirement election

12

effective." *Id.* at 833.  However, as described above, the Plan terms are clear: Mr. Nalbandian, Sr.'s election of the "Life with 5 Year Guarantee" Option did not become effective because Mr. Nalbandian, Sr. died before his Benefit Commencement Date.  Defendants' decision denying benefits was not illogical, unreasonable, or without support from facts in the record.  Indeed, as discussed previously, the relevant facts are clear in the administrative record: (1) Mr. Nalbandian, Sr.'s termination of employment was February 10, 2009; (2) he passed away February 22, 2009, prior to his March 1, 2009 Benefit Commencement Date.  *See* Roos Decl. Ex. 1, LMC 00029, 00037-38.

The rationale for a defined benefits plan, such as the "Life with 5 year Guarantee" Option chosen by Mr. Nalbandian, Sr., is to provide stable retirement benefits to retired employees, and pursuant to federal statute, to the spouses of those retired employees.  This contrasts with defined contribution plans, which provide retirement benefits based upon an employee's deposits during active employment.  Further, an employee who works for enough years accrues an entitlement to Minimum Required Distributions from the pension fund.  These Minimum Required Distributions are calculated and timed as mandated by Internal Revenue Code § 401(a)(9), which is designed to prevent participants' retirement benefits from accumulating unpaid.  The parties do not dispute that Mr. Nalbandian, Sr. received these payments of Minimum Required Distributions.  Nor do the parties dispute Plaintiffs' entitlement to $50,000 in life insurance proceeds.

In sum, Defendants' decision to deny survivor benefits was not unreasonable in light of the Plan terms and retirement option selected by Mr. Nalbandian, Sr.  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim for Plan benefits under ERISA § 502(a).

### C.  Plaintiffs equitable estoppel claim.

A claim for equitable estoppel for violation of ERISA has five elements:  (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, (3) extraordinary circumstances, (4) that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect, and (5) that representations were made involving an oral interpretation of the plan.  *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir. 1997).  Consistent with this rule, the Supreme Court has held that equitable estoppel

Case No.: 10-CV-01242-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

claims brought under ERISA § 502 (a)(3) require a showing of detrimental reliance. *Amara*, 131

S.Ct. at 1881. Further, *Amara* suggested that all estoppel claims require a showing of detrimental

reliance. *Id.* ("when equity courts used the remedy of estoppel, they insisted upon a showing akin

to detrimental reliance . . . although this showing is not always necessary for other equitable

remedies"). As the Court explained above, the terms of the Plan are not ambiguous and are in

favor of Defendants. For this reason alone, Plaintiffs cannot satisfy an essential element of an

equitable estoppel claim, and Defendants are entitled to summary judgment.[2]

Moreover, Plaintiffs' references to alleged inconsistencies in the Summary Plan Description

("SPD") are unavailing. Under the U.S. Supreme Court's recent decision in *Amara*, the SPD is not

part of the Plan. *See Amara*, 131 S.Ct. at 1877-78. In any event, the SPD here is not actually

inconsistent with the Plan. For example, a section of the SPD on "Late Retirement" reads, "If you

continue to work after age 65, your pension benefit will be deferred to the first of the month after

the date you actually retire. However, even if you are still working, the Plan requires that you

begin to receive your pension benefits by April 1 after the year in which your reach age 70-1/2."

Moyles Decl., Ex. 36, LMC 12. This language is perfectly consistent with the Plan terms for a

Benefit Commencement Date on the first of the month after a participant's termination of

employment, even if some participants could be confused by the distinction between pension-

funded retirement benefits and pension-funded Minimum Required Distributions. *See id.*, Ex. 36,

LMC 00467; Roos Decl., Ex. 2, LMC 00296-97 (Art. V(3)); Roos Decl., Ex. 2, LMC 00303-09

(Art. VI(6)(e), Art. VI-A).

Plaintiffs' claim for equitable estoppel also faces other challenges. It does not appear that

Mr. Nalbandian, Sr. reasonably and detrimentally relied on any misrepresentation when selecting a

February 9, 2009 termination of employment and a March 1, 2009 Benefit Commencement Date.

During Mr. Nalbandian, Sr.'s phone calls with the Lockheed's benefits department, he was largely

concerned with maintaining his medical insurance and still considered coming back to work. For

example, during a January 22, 2009 call, Mr. Nalbandian, Sr. stated, "You know, I wasn't planning

---

[2] At the August 25, 2011 hearing, counsel for Plaintiffs conceded that if the Court
determines that the Plan provisions are not ambiguous, Plaintiffs' equitable estoppel claim
necessarily fails as well.

Case No.: 10-CV-01242-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1    on taking medical retirement - or retirement.  I wanted to come back to work.  If I can get over this

2    chemo and I feel good, then I'd like to come back to work for a while and then retire."  Moyles

3    Decl., Ex. 14, at 4-5.  Defendants informed Mr. Nalbandian, Sr. that, as an employee with 42 years

4    of service, Mr. Nalbandian, Sr. would be entitled to retiree medical benefits.  *See* Moyles Decl., Ex.

5    8, at 2.  Also on January 22, 2009, Lockheed Benefits employee Dana Robinson simply stated that

6    given a February 9, 2009 termination of employment, Mr. Nalbandian, Sr. would begin receiving

7    retirement benefits on March 1, 2009.  *See id.* at 16-17.  Pursuant to the Plan terms, that statement

8    was accurate.  Similarly, the alleged February 5, 2009 misrepresentation that a request for a

9    February 1, 2009 Benefit Commencement Date was unlikely to succeed is not inaccurate – under

10   the retirement plan he selected, Mr. Nalbandian, Sr. could not commence receiving retirement

11   benefits on a date that had already passed.  *See* Moyles Decl., Ex. 14, at 3-4.

12          Thus, on the record before the Court, Mr. Nalbandian, Sr. was not misled into a delayed

13   termination of employment date.  Mr. Nalbandian explicitly chose a February 9, 2009 termination

14   of employment date for his own personal reasons, and was told that he would have retiree medical

15   benefits if he had selected an earlier termination of employment.  Accordingly, Defendants are also

16   entitled to summary judgment on Plaintiffs' equitable estoppel claim.

### IV. Conclusion

18          Because Defendants did not abuse their discretion by denying retirement benefits to

19   Plaintiffs, and because no genuine issue of material fact exists regarding Plaintiffs' equitable

20   estoppel claim, the Court GRANTS Defendants' motion for summary judgment and DENIES

21   Plaintiffs' motion for summary judgment.  The Clerk shall close the file.

22   **IT IS SO ORDERED.**

24   Dated:  September 1, 2011

                                    *Lucy H. Koh*
                                    LUCY H. KOH
25                                  United States District Judge

Case No.: 10-CV-01242-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

*United States District Court*
For the Northern District of California